



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD ALDERFER AND ALL THOSE SIMILARLY SITUATED CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN, TRUST A, PARTICIPANTS<br><br>Plaintiffs<br><br>v.<br><br>CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003;<br><br>THE TRUSTEES OF THE CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003;<br><br>THE TRUSTEES OF TRUST A OF THE CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN;<br><br>JACK CLEMENS;<br><br>ROBERT DERSTINE;<br><br>ROBERT M. LAVIN;<br><br>GERALD R. SPENCER;<br><br>and,<br><br>DOUGLAS C. MOYER<br><br>Defendants | Civil Action No. _____<br><br><br><br>10   4423<br><br> |

**PLAINTIFF'S COMPLAINT**

1

Plaintiffs, Gerald Alderfer, and all those similarly situated participants in Trust A of the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003 (a 401(k) or defined contribution plan) herein file this civil action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., as amended ("ERISA"), to address and rectify breaches of fiduciary duty and in support thereof aver as follows:

## INTRODUCTION

1. Gerald Alderfer and other participants in Trust A of the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003 held their employer, Clemens Markets, Inc.'s stock as an investment of their retirement savings and, due to various breaches of fiduciary duties by trustees and administrators, including conflicts of interest, the value of that company stock held in Trust A and, thus, their retirement savings have and continues to decline and decrease.

## PARTIES

2. Plaintiff, Gerald Alderfer ("Mr. Alderfer") is an adult individual who is a citizen of the Commonwealth of Pennsylvania and who resides at 105 East Broad Street, Telford, Pennsylvania 18969.

3. At all times material hereto, Mr. Alderfer was and still remains a participant in the Plan and, specifically, in Trust A of that Plan, who has held Clemens Markets, Inc. stock as a component of his investments in this Plan since 1980.

4. Defendant, the Clemens Market, Inc. Retirement Savings and Profit Sharing Plan 003 ("Plan"), is a 401(k) or defined contribution profit sharing plan, which is a component of the employee welfare benefit plan for employees and former employees of Clemens Markets, Inc. ("CMI") and which has a registered address at 1555 Bustard Road, Kulpsville, Pennsylvania 19443.

5. The Plan is sponsored by CMI, was and continues to be administered by Douglas C. Moyer for CMI, was governed and operated by the Trustees of the Clemens Market, Inc. Retirement Savings and Profit Sharing Plan, and is subject to and governed by ERISA.

6. Defendant, the Trustees of the Clemens Market, Inc. Retirement Savings and Profit Sharing Plan ("Trustees") is the board of persons appointed to serve as Trustees to operate, monitor, oversee, and govern the Plan and which entity and persons, collectively and individually, are ERISA fiduciaries over the Plan.

7. Defendant, the Trustees of Trust A of the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan is the board of persons appointed in September 2006 to serve as Trustees to administer, monitor, oversee, control, and govern the investments held by Plan participants in Trust A, which fund held CMI company stock and is known and also referred to as the "Company Stock Fund," and which entity and persons, collectively and individually, are ERISA fiduciaries over Trust A or the Company Stock Fund of the Plan.

8. Upon information and belief, at all times pertinent hereto, the Trustees of the Plan were also the Trustees of Trust A of the Plan, or the Company Stock Fund, and they include: Jack Clemens, Robert Derstine, Robert M. Lavin, and Gerald R. Spencer.

9. Defendant, Jack Clemens is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, a Trustee over Trust A or the Company Stock Fund, is an ERISA fiduciary, and is the President of CMI with a principle place of business at 1555 Bustard Road, Kulpsville, Pennsylvania 19443.

10. Defendant, Robert Derstine is an adult individual who resides at Moyer Road, Souderton, Pennsylvania 18964 and, who at all times pertinent hereto, was a duly appointed

3

Trustee of the Plan, a Trustee over Trust A or the Company Stock Fund, and is an ERISA fiduciary.

11.  Defendant, Robert M. Lavin is an adult individual who resides at 518 Blooming Glenn Road, Perkasie, Pennsylvania 18944 and, who at all times pertinent hereto, was a duly appointed Trustee of the Plan, a Trustee over Trust A or the Company Stock Fund, and is an ERISA fiduciary.

12.  Defendant, Gerald R. Spencer is an adult individual who resides at 611 Creamery Road, Telford, Pennsylvania 18969 and, who at all times pertinent hereto, was a duly appointed Trustee of the Plan, a Trustee over Trust A or the Company Stock Fund, and is an ERISA fiduciary.

13.  Defendant, Douglas C. Moyer is an adult individual who resides at 148 Hopewell Lane, Telford, Pennsylvania 18924 and, who at all times pertinent hereto, served as the Plan Administrator over the Plan, was also a Trustee over Trust A or the Company Stock Fund, and was and remains Secretary, Treasurer, and Chief Financial Officer for CMI.

## JURISDICTION AND VENUE

14.  Inasmuch as this action presents claims arising under ERISA, this Court has federal question jurisdiction under and pursuant to 28 U.S.C. §1331, 29 U.S.C. §1132(e) (ERISA), and in accordance with the Doctrine of Complete Preemption.

15.  Venue is proper in this Court under and pursuant to 28 U.S.C. § 1391(c) inasmuch as plaintiffs and defendants are either citizens of, located in, and/or conduct business in the Commonwealth of Pennsylvania. Indeed, the Plan's registered address in Kulpsville, Pennsylvania is within the boundaries of this Court.

## TRUSTEES' FIDUCIARY DUTIES UNDER ERISA

16. At all times pertinent hereto, Mr. (Jack) Clemens, Mr. Derstine, Mr. Lavin, Mr. Spencer, and Mr. Moyer were and remain ERISA fiduciaries over the Plan, both as a result of their status as named Trustees of the Plan and Trust A and based upon their responsibilities and duties in handling and overseeing the Plan and Trust A.

17. At all times pertinent hereto, the Trustees of the Plan and Trust A, collectively and individually, owed fiduciary duties to the Plan participants, including the participants in Trust A, to operate, administer, oversee, monitor, control, and govern the Plan and Trust A in the sole and exclusive interest of the participants, including Mr. Alderfer, prudently and loyally, inter alia.

## TERMS OF THE ERISA 401(k) PLAN

18. On or prior to May 1, 1998, CMI converted its traditional pension plan (also known as a defined benefit plan) for its employees into a 401(k) profit sharing plan (or a defined contribution plan) governed under and by ERISA, which Plan has been amended and restated on several occasions since 1998.

19. CMI offered and provided the Plan to its eligible employees to help them "save for retirement" (2010 SPD at p. 1) and the Plan itself was "designed to help you meet your financial needs during your retirement years." (2002 SPD at Introduction, p. 2.)

20. The Plan, as set forth in the "9/2001 Vanguard Fiduciary Trust Company Prototype Basic Plan Document (as amended and restated for GUST)" ("2001 Plan") and consistent with ERISA, defines the position of "fiduciary" as a "person who exercises discretionary authority or control respecting management of the Plan, renders investment advice

as defined in Section 3(21) of ERISA, or has any discretionary authority or responsibility as to the Plan." 2001 Plan at Definitions Section.

21. Further, under the 2001 Plan, a "fiduciary" is also identified as the: "[E]mployer and such other individuals either appointed by the Employer or deemed to be fiduciaries as a result of their actions shall serve as Fiduciaries under the Plan and fulfill the fiduciary responsibilities described in Part 4, Title 1 of ERISA (or 29 U.S.C. §1102 et seq.)." Id.

22. Under the 2001 Plan, the Plan Administrator "shall have the authority to control and manage the operation and administration of the Plan" and "shall administer the Plan for the exclusive benefits of the Participants and their Beneficiaries in accordance with the specific terms of the Plan." 2001 Plan at §7.03 B.

23. Under the 2001 Plan, "[E]ach named fiduciary identified in the Adoption Agreement, including the Trustees, the Employer, and the Plan Administrator shall discharge its assigned duties and responsibilities under this Agreement and the Plan solely in the interest of the Participants and their Beneficiaries in the following manner:

(a) for the exclusive purpose of providing benefits to the Participants and their Beneficiaries and defraying reasonable expenses of administering the Plan;

(b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c) by diversifying the available investments under the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly not prudent to do so; and,

(d) in accordance with the provisions of the Plan and this Trust Agreement insofar as they are consistent with ERISA."

2001 Plan at §8.02 D1(a-d).

24. Effective January 1, 2002, CMI amended the Plan and issued an SPD ("2002 SPD"), which likewise, provided that "[T]he people who operate your Plan, called 'fiduciaries" of the Plan, have a duty to do so prudently and in the interests of you and other Plan Participants and Beneficiaries." 2002 SPD at p. 16, entitled Prudent Action by Plan Fiduciaries.

25. Pertinent hereto, on or about September 1, 2006, the Plan was restated and amended, in part, to establish two (2) separate trusts with different Trustees for each of these trust accounts:

> There are presently two trusts which have been established by the Employer for the purpose of funding benefits under the Plan, Trust A and Trust B, both of which are for the exclusive benefit of the Participants in the Plan and their Beneficiaries. Trust A holds the assets invested in the Clemens Market Company Stock Fund, and Trust B holds the remaining plan assets. The Employer has appointed individuals (identified below) to serve as the Trustee(s) for Trust A (and Vanguard is Trustee for Trust B which consists of other remaining non company stock assets).

See Attachment to Adoption Agreement for Safe Harbor 401(k) Plan signed September 1, 2006.

26. Effective September 1, 2006, the newly appointed Trustees of Trust A, identified as Mr. (Jack) Clemens, Mr. Derstine, Mr. Lavin, Mr. Moyer, and Mr. Spencer, and not Vanguard, became the fiduciaries as to and over the Plan's assets held in Trust A, the Clemens Stock Fund.

27. Upon information and belief, this September 1, 2006 amendment to the Plan and, in particular, the creation of a Trust A to hold the Clemens Stock Fund, was not specifically disclosed or communicated to the Plan participants.

28. Further, upon information and belief, it was not disclosed or communicated to Mr. Alderfer and other Plan participants that Vanguard was replaced by the Trustees of Trust A as the investment fiduciary over the Clemens Stock Fund held in Trust A; though, Vanguard

retained its custodian status as to the assets held in Trust A and its custodian status and investment fiduciary roles over the assets of the assets of the Plan held in Trust B.

29. Per counsel for the Plan and CMI itself, William Wanger, Esquire, as denoted in his letter dated March 6, 2010, Vanguard did not provide a new SPD ("2010 SPD") outlining the 2006 Plan with amendments, including the EGTERRA requirements effective January 1, 2009, until after January 6, 2010.

30. The 2010 SPD for the Plan provides as follows:

> ***Prudent Actions by Plan Fiduciaries***
> In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants and beneficiaries.

2010 SPD at p. 25.

31. The 2010 SPD also provided the following information with respect to Plan investments:

> **Information About the Investment Options Available in the Plan**
> When you are eligible to participate in the Plan, you will be provided with comprehensive information about the investment options available in the Plan, including an explanation of the investment objectives and policies, risk and return characteristics, past and current investment performance (net of expenses), operating expenses, and the type and diversification of assets comprising the portfolio of each fund. *You will also receive ongoing updates of this information in the form of prospectuses and shareholder reports for each of the investment options that you have selected for the investment of your Plan contributions.*

2010 SPD at p. 13. (Emphasis supplied)

32. However, outside of providing boilerplate, generic language on company stock holdings and the ability to vote such stock, the 2010 SPD does not in any way reference or mention the dual trusts, Trust A and Trust B, at all, the Trustees over Trust A, and other aspects

of this component of the Plan, even though the 2010 SPD was supposed to "summarize the important features of the Plan."

33. At all times pertinent hereto, including to this date, the 2006 Plan as amended and allegedly summarized in the 2010 SPD remains in full force and effect with and for Plan participants, including Mr. Alderfer.

## BACKGROUND FACTS

34. Since inception of the Plan, CMI employees, including Mr. Alderfer, were eligible to, did become, and today remain participants in the Plan.

35. Indeed, Mr. Alderfer has been a Plan participant since 1975.

36. CMI was engaged in business of operating family-owned supermarkets in Eastern Pennsylvania until the Fall of 2006 when CMI decided to sell and then, in late 2006, did effect the sale of substantially all of the assets of CMI to other corporations.

37. As above, in this same period, effective September 1, 2006, CMI amended the Plan to include a separate "Clemens Stock Fund" or Trust A (hereinafter identified interchangeably as either "Trust A" or the "Clemens Stock Fund") to be administered, monitored, overseen, controlled, and governed by a newly appointed Board of Trustees, not Vanguard (though Vanguard did remained a custodian of the Trust A account), which Board of Trustees appears to have been the same Board of Trustees, except for Mr. Moyer, over the Plan itself.

38. In or about September 1, 2006, the Trustees of Trust A of the Plan accepted and assumed responsibility for the evaluation, monitoring, and handling of the investments in Trust A.

39. Indeed, the September 1, 2006 Plan amendment of "Section Eight, Trustee and Custodian, Individual Trustees" of the Plan, in addition to noting the two Trusts A and B, specifically relieved Vanguard of any responsibility or liability for Trust A by providing as follows:

> It is understood that Trust B is a separate trust from any trusts which may be held by the Individual Trustee appointed by the Employer for certain assets of the Plan and that the Financial Organization Trustee shall not be responsible for any assets of the Plan that are held in any such separate trusts held by the Individual Trustee. The Financial Organization Trustee (Vanguard) is hereby expressly relieved of an responsibility or liability, whether co-fiduciary or otherwise, in accordance with Section 405(b)(3)(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), for any losses resulting to the Plan arising from any acts or omissions on the part of the Individual Trustee for the Plan.

See Attachment to Adoption Agreement for Safe Harbor 401(k) Plan signed September 1, 2006.

40. In accordance with the sale of substantially all of CMI's assets, in or about October 2006, upon information and belief, a document was transmitted to Plan participants entitled "Important Information Regarding Your Clemens Markets, Inc. Profit Sharing & Retirement Plan Account" along with a "Sarbanes Oxley Notice" regarding a blackout of the Clemens Stock Fund, which notices never clearly identified or differentiated between the Plan assets in Trust A and Trust B.

41. This "Important Information" piece provided that the Plan "will be terminated," that the assets in the plan are expected to be completely distributed by early 2009, and that due to "this corporate action" a participant needed to "decide what to do with the savings" accumulated in the Plan, which options were listed as leave "your money in the plan until early 2009 when the plan is expected to have all assets distributed," directly rollover the savings to an "IRA or employer's eligible plan," or take your savings in cash.

42. The October 8, 2006 Sarbanes Oxley Notice provided by Vanguard related that as a result of the CMI sale, "the Clemens Stock Fund will be liquidated and converted to cash (which will be available for reinvestment and disbursement in accordance with the terms of the plan) over a period of time" and that periodic payments for the stock would be made "until the Fund is liquidated."

43. The October 8, 2006 Sarbanes Oxley Notice also advised that because of the changes, the participant would be unable to take a distribution, withdrawal, loan, or diversify investments in the Clemens Stock Fund, that this "blackout period" would "begin immediately and is expected to end in early 2009," and because of the suddenness of the sale, a thirty (30) day notice period could not be provided but that given this, "it is very important that you review and consider the appropriateness of your current investments in light of your inability to direct or diversify the Clemens Stock Fund investments during the blackout period."

44. Neither the "Important Information" or the October 8, 2006 Sarbanes Oxley Notice mentioned that the Clemens Stock Fund or Trust A investment contained or was in any way dependent upon CMI's real estate holdings.

45. In an undated letter, Mr. Moyer as Chief Financial Officer of CMI, advised "Plan Participants" as follows:

> The purpose of this letter is to advise you of certain matters with respect to your holdings in the Clemens Stock Fund (the "Stock Fund") of the [Plan].
>
> In the Sarbanes-Oxley Notice dated October 8, 2006, you were notified that as a result of the sale of the assets of Clemens Markets, Inc., periodic payments for the stock held by the Plan would be made over a period of time. Periodic payments will be made until the fund is liquidated, which is expected to occur in early 2009.
>
> The first periodic payment is scheduled to be made in early February, 2007... as the periodic payments are received the market value of the Fund will be adjusted. You will be able to direct or diversify the payments once they are credited to the Federal Money Market Fund.

> Future payments will occur over the next two years and follow similar procedures. Notice will NOT be sent for each payment.
>
> If you have any questions concerning this matter you should contact Clemens Markets, Inc. at 215-361-9000 or you may call and speak with a Vanguard Participant Service associate at ...

46. Albeit, given the very limited and confusing information provided and short deadline for rendering such an important decision, Mr. Alderfer and other Plan participants maintained their holdings in the Plan.

47. On or about December 21, 2006, the Board of Directors and voting shareholders of CMI approved a "Plan of Complete Liquidation of Clemens Markets, Inc.," which apparently outlined the receipt and distribution of the "net proceeds of the sale of substantially all assets" of CMI and periodic payments thereon and, further, noted that CMI and its affiliates owned "certain real property, and the building and improvements thereon erected (together the 'Corporate Center Land and Building, etc.')" and that the Board "projected" that this real property "will be sold during calendar year 2007 or 2008."

48. Upon information and belief, the "Plan of Complete Liquidation of Clemens Markets, Inc." was not disclosed or in any way presented to the Plan participants in Trust A, or those who maintained CMI company stock as an investment in the 401k Plan.

49. The Plan participants in Trust A, or the Clemens Stock Fund of the Plan, were not told or otherwise aware when considering and making a decision to change or maintain that investment that this investment included and was dependent upon the value and sale of CMI's real estate.

50. A component of the real estate owned by CMI was its Corporate Center, known as One Towamencin Center, located at 1555 Bustard Road, Kulpsville, Pennsylvania ("CMI Corporate Center").

51. Upon information and belief in early 2007, CMI's Corporate Center was offered and listed for sale in the commercial real estate market with a valuation in the millions.

52. Upon information and belief, in 2007, Mr. (Jack) Clemens apparently wanted a "high price" for CMI's Corporate Center because it also contained an open parcel that could also be developed.

53. Upon information and belief, in 2007, a multi-million dollar offer was made to purchase CMI's Corporate Center by Hatfield Packing, but the offer was rejected by Mr. (Jack) Clemens as too low.

54. Consistent with the sale of CMI, upon information and belief, in 2007 and 2008, the Plan participants did receive periodic payments on their CMI company stock representing their share of the net proceeds as to the sale of substantially all of the assets of CMI.

55. At the time of the periodic payments, upon information and belief, the CMI unit share price paid was $63.78.

56. Contrary to the representations made, in 2009, the Plan and the Clemens Market Stock Fund, not to mention CMI itself had not been liquidated and the "blackout period" had not ended.

57. Having not received any further notices or communications from the Plan, the Trustees of the Plan, the Trustees of Trust A, CMI, or anyone else, Plan participants, including Mr. Alderfer, began in 2009 to inquire of Vanguard and CMI about their Clemens stock holdings.

58. Upon information and belief, the Plan participants, including Mr. Alderfer, were told to and did communicate with Vanguard, but when they contacted Vanguard, Vanguard told them that it had no involvement with the Clemens Stock Fund or referred them back to CMI.

59. Based upon the Form 5500's filed on behalf of the Plan for 2007 and 2008, the value of Trust A, or the Clemens Stock Fund decreased from $3.045 million in 2007 to $2.368 million in 2008.

60. Inasmuch as a "blackout period" was and remained in effect as to the Plan participants' investments in Trust A of the Plan, the Plan participants, including Mr. Alderfer, relied upon the Trustees of both the Plan and Trust A to monitor, supervise, and handle this investment and otherwise protect and preserve the Plan assets that underlie their retirement savings.

61. Indeed, at all times pertinent hereto, the Trustees of the Plan and Trust A and Defendant Moyer had a fiduciary duty to monitor, supervise, and handle this investment and otherwise protect and preserve Plan assets, including the assets in Trust A, for the Plan participants.

62. As Plan participants efforts to secure information about their holdings in CMI company stock from CMI, in particular Mr. Moyer, were unsuccessful, Mr. Alderfer retained counsel to contact CMI to secure certain information to address the issues.

63. By letter dated, January 6, 2010 to the designated Plan Administrator, Mr. Moyer, counsel for Mr. Alderfer outlined his understanding that the Plan had not been "fully liquidated and terminated" such that the participants had not received their full distribution and requested that the Plan Administrator, Mr. Moyer, furnish certain information and documentation including the Plan itself, summary plan descriptions, 5500 filings, the CMI liquidation plan, communications about the distribution of Plan assets, an accounting for the Plan, and an explanation as to why the Plan assets had not yet been liquidated.