**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

-----------------------------------------------------------------

| | |
|---|---|
| GERALD ALDERFER AND ALL THOSE SIMILARLY SITUATED CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN, TRUST A, PARTICIPANTS, : | CIVIL ACTION |
| Plaintiffs, : | NO. 2:10-04423-BMS |

        -vs.-                                         :

CLEMENS MARKETS, INC. RETIREMENT
SAVINGS AND PROFIT SHARING PLAN 003,       :

THE TRUSTEES OF THE CLEMENS MARKETS,   :
INC. RETIREMENT SAVINGS AND PROFIT
SHARING PLAN 003;                                  :

THE TRUSTEES OF TRUST A OF THE CLEMENS :
MARKETS, INC. RETIREMENT SAVINGS AND
PROFIT SHARING PLAN;                            :

JACK CLEMENS;                                        :

ROBERT DERSTINE;                                  :

ROBERT M. LAVIN;                                 :

GERALD R. SPENCER;                             :

and,                                            :

DOUGLAS C. MOYER                             :

               Defendants.                 :

-----------------------------------------------------------------

## ORDER

      AND NOW, this _____ day of _____,

2010, upon consideration of Defendants' Motion To Dismiss The Complaint Pursuant To Rule

12(B)(6) and Rule 9(b), and the papers submitted by the parties, it is hereby ORDERED that the

Defendants' Motion is GRANTED.

**BY THE COURT**

_____

Schiller, J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

----------------------------------------------------------------

| | |
|---|---|
| GERALD ALDERFER AND ALL THOSE SIMILARLY SITUATED CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN, TRUST A, PARTICIPANTS, : | CIVIL ACTION |
| : | NO. 2:10-04423-BMS |
| Plaintiffs, : | |
| : | |
| -vs.- : | |
| : | |
| CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003, : | |
| : | |
| THE TRUSTEES OF THE CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003; : | |
| : | |
| THE TRUSTEES OF TRUST A OF THE CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN; : | |
| : | |
| JACK CLEMENS; : | |
| : | |
| ROBERT DERSTINE; : | |
| : | |
| ROBERT M. LAVIN; : | |
| : | |
| GERALD R. SPENCER; : | |
| and, : | |
| : | |
| DOUGLAS C. MOYER : | |
| : | |
| Defendants. : | |

----------------------------------------------------------------

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan

003 ("the Plan"), the Trustees of the Clemens Markets, Inc. Retirement Savings and Profit

Sharing Plan 003 ("the Plan Trustees"), the Trustees of Trust A of the Clemens Markets, Inc.

Retirement Savings and Profit Sharing Plan ("the Trust A Trustees"), Jack Clemens, Robert

Derstine, Robert M. Lavin, Gerald R. Spencer, and Douglas C. Moyer, by their undersigned

counsel, respectfully move this Court to dismiss with prejudice Plaintiff's Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 9(b), for the reasons set forth in the accompanying

memorandum of law.

Respectfully submitted,

s/ Laurence Z. Shiekman
Laurence Z. Shiekman
Barak A. Bassman
Thomas T. Watkinson II
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

November 1, 2010                                   Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------------
GERALD ALDERFER AND ALL THOSE          :      CIVIL ACTION
SIMILARLY SITUATED CLEMENS MARKETS,    :
INC. RETIREMENT SAVINGS AND PROFIT     :      NO. 2:10-04423-BMS
SHARING PLAN, TRUST A, PARTICIPANTS,   :
                                       :
          Plaintiffs,                  :
                                       :
    -vs.-                              :
                                       :
CLEMENS MARKETS, INC. RETIREMENT       :
SAVINGS AND PROFIT SHARING PLAN 003,   :
                                       :
THE TRUSTEES OF THE CLEMENS MARKETS,   :
INC. RETIREMENT SAVINGS AND PROFIT     :
SHARING PLAN 003;                      :
                                       :
THE TRUSTEES OF TRUST A OF THE CLEMENS :
MARKETS, INC. RETIREMENT SAVINGS AND   :
PROFIT SHARING PLAN;                   :
                                       :
JACK CLEMENS;                          :
                                       :
ROBERT DERSTINE;                       :
                                       :
ROBERT M. LAVIN;                       :
                                       :
GERALD R. SPENCER;                     :
                                       :
and,                                   :
                                       :
DOUGLAS C. MOYER                       :
                                       :
          Defendants.                  :
-----------------------------------------------------------------
```

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ALLEGATIONS OF THE COMPLAINT .........................................................3

   A.   The Plan and the Parties ...............................................................................3

   B.   Sale of Clemens to Giant and Liquidation of Plan Holdings in Clemens Stock ................4

   C.   Plaintiff's Claims Under ERISA ..................................................................5

III.  ARGUMENT........................................................................................................6

   A.   Standard of Review .......................................................................................6

   B.   Plaintiff Fails To State A Claim For Breach Of Duty To Manage The Plan Prudently ........................................................................................................9

      1.   Defendants Were Not ERISA Fiduciaries With Regard To The Plan's Investments In Clemens Stock ...............................................................9

      2.   As A Matter Of Law, Clemens Stock Was Not An "Imprudent" Investment..............13

         a.   Plan Investments In Clemens Stock Are Presumptively Prudent............................13

         b.   Plaintiff Fails To Overcome the Presumption of Prudence .........................................15

   C.   Plaintiff's Claims that Defendants Misrepresented the Risks of Clemens Stock Fail as a Matter of Law ..............................................................18

      1.   ERISA's General Fiduciary Requirements Do Not Include Any Duty To Disclose Company Financial Information To Plan Participants ...................................18

      2.   Plaintiff Suffered No Injury From the Alleged Failures to Disclose ...........................20

   D.   In The Absence of Substantive Prudence or Disclosure Claims, There Can Be No Claims for Failure to Monitor Fiduciary Conduct or Conflict Of Interest.......................22

   E.   Plaintiff Has No Claim For Defendants' Failure to Provide Documents Under ERISA ..........................................................................................................23

   F.   Count II Fails To State A Viable Claim........................................................23

IV.   CONCLUSION ...................................................................................................24

## TABLE OF AUTHORITIES

Page(s)

CASES

*Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995) ............................................................9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).................................................................7

*Baker v. Kingsley*, 387 F.3d 649 (7th Cir. 2004).....................................................19

*Bash v. Firstmark Standard Life Insurance Co.*, 861 F.2d 159 (7th Cir. 1988)..............3

*Board of Trustees CWA/ITU Negotiated Pension Plan v. Weinstein*
    107 F.3d 139 (2d Cir. 1997) ..........................................................................19, 23

*Beddall v. State Street Bank*, 137 F.3d 12 (1st Cir. 1998)........................................10

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).............................................7

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) ........................................................22

*Boucher v. Williams*, 13 F. Supp. 2d 84 (D. Me. 1998) .............................................5

*Burstein v. Retirement Account Plan for Employees of Allegheny Health Education &*
    *Research Foundation*, 334 F.3d 365 (3d Cir. 2003)................................................11

*Byrnes v. De Bolt Transfer, Inc.*, 741 F.2d 620 (3d Cir. 1984) ....................................8

*In re Calpine Corp. ERISA Litig.*, No. C03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31,
    2005).......................................................................................................16, 22

*Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001) ..................................................8

*In re Citigroup ERISA Litigation*, No. 07 Civ. 9790 (SHS), 2009 WL 2762708 (S.D.N.Y.
    Aug. 31, 2009) ............................................................................................16

*Crowley v. Corning, Inc.*, No. 02-CV-6172, 2004 WL 763873 (W.D.N.Y. Jan. 14, 2004)....12, 17

*In re Dell, Inc. ERISA Litigation*, 563 F. Supp. 2d 681 (W.D. Tex. 2008) ....................13

*In re Duke Energy ERISA Litigation*, 281 F. Supp. 2d 786 (W.D.N.C. 2003).................14, 17

*Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007) .......................................13, 14, 15, 16, 17, 20

*Ehlmann v. Kaiser Foundation Health Plan*, 198 F.3d 552 (5th Cir. 2000) ...................20

*Faircloth v. Lundy Package Co.*, 91 F.3d 648 (4th Cir. 1996)................................19, 23

**CASES**                                                                   **Page(s)**

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ...........................................7

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167
(2000)...................................................................................................................22

*Gearren v. McGraw-Hill Cos., Inc.*, No. 08 Civ. 7890, 2010 WL 532315 (S.D.N.Y. Feb.
10, 2010)..............................................................................................................15

*Great West Life & Annuity Insurance. Co. v. Knudson*, 534 U.S. 204 (2002)............................24

*Harris Trust & Savings Bank v. John Hancock Mutual Life Insurance Co.*, 302 F.3d 18
(2d Cir. 2002) ......................................................................................................10

*Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450 (3d Cir. 2003) .......................................21

*Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir. 1990) ..................................................10

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ...............................................................3

*In re Huntington Bancshare Inc. ERISA Litig*, No. 2: 08-cv-0175, 2009 U.S. Dist. LEXIS
91032 (S.D. Ohio Feb. 9, 2009) .............................................................................17

*Johnson v. Radian Group, Inc.*, No. 08-2007, 2010 U.S. Dist. LEXIS 51959 (E.D. Pa.
May 26, 2010)...............................................................................................15, 16

*Jordan v. Federal Express Corp.*, 116 F.3d 1005 (3d Cir. 1997)..................................................21

*Kerchner v.Obama*, No. 09-4209 (3d Cir. July 2, 2010) ...............................................................22

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)......................12, 13, 14, 15, 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................22

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) .............................................................8, 21

*Markowitz v. Nebraska Land Co.*, 906 F.2d 100 (3d Cir. 1990) .....................................................6

*In re McKesson HBOC, Inc. ERISA Litigation*, 391 F. Supp. 2d 812 (N.D. Cal. 2005).........12, 17

*Meihardt v. Unisys Corp.*, 74 F.3d 420 (3d Cir. 1996) .................................................................20

*Mellot v. ChoicePoint, Inc.*, 561 F. Supp. 2d 1305 (N.D. Ga. 2007) ......................................12, 19

*Mertens v Hewitt Associates*, 508 U.S 248 (1993) ......................................................................18

*Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) ....................................10, 12, 13, 14, 15

*Mut. Life Insurance Co. v. Russell*, 473 U.S. 134 (1985).............................................................18

**Page(s)**

**CASES**

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ............................................................. 17

*Pedraza v. The Coca-Cola Co. Benefits Committee*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006) ............................................................................................................. 12, 15

*Pegram v. Hedrich*, 530 U.S. 211 (2000) ........................................................... 9, 10

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................. 7

*Pietrangelo v. NUI Corp.*, No. 04-3223 (GEB), 2005 U.S. Dist. LEXIS 40832 (D.N.J. July 18, 2005) ........................................................................................... 8, 11

*In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005) ............... 9, 14

*Quan v. Computer Sciences Corp.*, No. 09-56190 (9th Cir. Sept. 30, 2010) ............... 16

*Ranke v. Sanofi-Synthelabo, Inc.*, No. 04-1618, 2004 U.S. Dist. LEXIS 22427 (E.D. Pa. Nov. 2, 2004) ............................................................................................... 5

*In re Reliant Energy ERISA Litigation*, No. 02-2051, 2006 U.S. Dist. LEXIS 3181 (S.D. Tex. Jan. 18, 2006) ....................................................................................... 12

*Renfro v. Unisys Corp.*, No. 07-2098, 2010 U.S. Dist. LEXIS 41563 (E.D. Pa. Apr. 26, 2010) ..................................................................................................................... 7

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ............................. 20

*In re Unisys Corp. Retiree Medical Benefits "ERISA" Litigation*, 57 F.3d 1255 (3d Cir. 1995) ..................................................................................................................... 21

*In re Unisys Savings Plan Litigation*, No. 91-3067, 2001 U.S. Dist. LEXIS 11660 (E.D. Pa. Aug. 9, 2001) ................................................................................................. 3, 5

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ........................................................... 24

*Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748 (S.D.N.Y. 1997) ..................... 19

*Wright v. Oregon Metallurgical Corp.*, 222 F. Supp. 2d 1224 (D. Or. 2002) ......... 17

**STATUTES**

29 U.S.C. § 1002 (34) ............................................................................................. 3

29 U.S.C. §§ 1021-31 ............................................................................................. 19

29 U.S.C. § 1024(b)(4) ........................................................................................... 23

29 U.S.C. § 1109 ..................................................................................................... 10

**Page(s)**

**CASES**

29 U.S.C. § 1132(a)(2) ........................................................................6

29 U.S.C. § 1132(a)(3) ........................................................................6

Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1590 (1976) ...........................................14

**OTHER AUTHORITIES**

Fed. R. Evid. 201(b)(2)........................................................................17

Restatement of Trusts ........................................................................12

Defendants Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003 ("the Plan"), the Trustees of the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003 ("the Plan Trustees"), the Trustees of Trust A of the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan ("the Trust A Trustees"), Jack Clemens, Robert Derstine, Robert M. Lavin, Gerald R. Spencer, and Douglas C. Moyer, respectfully submit this memorandum of law in support of their motion to dismiss the complaint in this case pursuant to Rule 12(b)(6).

## I.    INTRODUCTION

This largely conclusory Complaint flows from a modest decline in the value of the stock of Clemens Markets, Inc. ("Clemens"), a privately held company that formerly operated a chain of supermarkets and related stores.  Clemens sponsors a 401(k) retirement plan for its employees, the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003 (the "Plan").  A portion of the Plan assets are invested in the Clemens Markets Company Stock Fund ("Clemens Stock Fund"), which is invested solely in Clemens stock.  Plaintiff, a former Clemens employee, is a Plan participant.

In the fall of 2006, Clemens sold its operating assets for cash to a competing supermarket chain of grocery stores, and subsequently distributed the proceeds to its shareholders, including Plan participants like Plaintiff who own shares in the Clemens Stock Fund.  After the asset sale, and having made the sales proceeds distribution, Clemens continues to hold cash and other liquid assets, and own (through affiliated entities) certain real estate, essentially its former corporate headquarters building and surrounding land.  Unsurprisingly, the value of that real estate declined during the current economic downturn and the value of Clemens' privately owned stock declined as well.

Based upon these rather unremarkable facts, Plaintiff has filed this putative ERISA class action alleging that Defendants, who are current and former Plan trustees, breached their fiduciary duties to Plan participants. While not clearly plead, the thrust of the Complaint appears to be that the Plan's continued ownership of shares of Clemens stock constitutes a breach of fiduciary duty because the value of Clemens' stock declined as the value of the remaining real estate held by the company fell.

Initially, it should be clear that simply because an investment held by the Plan has declined in value (during the worst real estate crisis in 80 years) does not mean that there was a breach of fiduciary duty by the Plan's trustees. Indeed, where, as here, the provisions of the Plan specifically direct the Plan's investment in the company's stock, the fiduciaries of the Plan have no choice but to continue that investment. At best for Plaintiff, the Plan's continued investment in private company stock is subject to an abuse of discretion review – and there are simply no facts pled to suggest any sort of abuse of discretion.

Plaintiff also advances a claim that Defendants supposedly breached their fiduciary duties by failing to warn him of the risk that Clemens' real estate holdings might decline in value, thus in turn reducing the value of Clemens stock. Even assuming that Plaintiff somehow could not understand on his own that Clemens' real estate holdings could change in value, and that the Plan's trustees could somehow have foreseen (unlike substantially all of the world's governments, economists and financial experts) that the American and worldwide economies would fall into the worst economic crisis since the Great Depression, Plaintiff's "failure to disclose" claim is legally deficient, on at least two grounds. First, there is no duty under ERISA that a plan's trustees disclose every potential risk to the price of company stock owned by a plan. Second, any alleged "failure to disclose" was immaterial because, even had

notice been given to Plaintiff as he alleges should have been done, Plaintiff had no ability to sell his shares in the Clemens Stock Fund in response to any allegedly omitted warning. In connection with the sale of its business assets in 2006, Clemens imposed an overall freeze, on all of its stockholders (including the Plan), on sales of its stock, and that freeze has remained continuously in effect through the present day.

Defendants thus respectfully request that the Complaint be dismissed in its entirety.

## II.   ALLEGATIONS OF THE COMPLAINT

### A.   The Plan and the Parties

Plaintiff is a former Clemens employee and has been a Plan participant since 1975. (Cplt., ¶¶ 34-35.) Defendants are current and former trustees of the Plan. (Cplt., ¶¶ 6-13, 16.) The Plan at issue in this case is a "defined contribution" plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). (Cplt., ¶ 18.) Such a plan provides for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, which may be allocated to the participant's account. 29 U.S.C. § 1002 (34). "A defined contribution plan is completely different from a 'defined benefit plan' where participants are promised, upon retirement, a benefit in the form of a fixed percentage of their pre-retirement salary, in that participants in defined contribution plans bear the risk of their investment." *In re Unisys Savings Plan Litig.*, No. 91-3067, 2001 U.S. Dist. LEXIS 11660, at *7 (E.D. Pa. Aug. 9, 2001).[1]

---

[1] *See also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-41 (1999) (discussing the difference between a defined contribution plan and a defined benefits plan); *Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 163 (7th Cir. 1988) (same).

As established by Clemens, there are two trusts used for funding benefits under the Plan, which are commonly referred to as Trust A and Trust B. (Cplt., ¶ 25.) Plaintiff asserts no claims arising from the administration of Trust B, which held shares in various Vanguard mutual funds that were offered as investment options to Plan participants. It is important to note that, in contrast to Trust A, the assets held in Trust B are individually selected by, and held in the individual account of, each of the Plan's participants.

Plaintiff's claims instead relate to Trust A. As the Complaint explains, "Trust A holds the assets invested in the Clemens Market Company Stock Fund," which invested exclusively in Clemens stock. (Cplt., ¶ 25.) Trust A is thus a vehicle (albeit indirect) for employee stock ownership in Clemens (which is privately held).

**B.      Sale of Clemens to Giant and Liquidation of Plan Holdings in Clemens Stock**

In the fall of 2006, Clemens sold its operating assets to the Giant supermarket chain for cash. (Cplt., ¶¶ 36, 40.) As part of this transaction, a blackout was imposed on sales and redemptions of Clemens stock, including the Clemens stock owned by the Clemens Stock Fund. (Cplt., ¶¶ 40-43.) Accordingly, since October 2006, no Clemens shareholder (including the Clemens Stock Fund) has been able to sell or otherwise dispose of any Clemens shares. (Cplt., ¶ 43.)

Upon conclusion of the sale of Clemens' supermarket-related assets to Giant, Clemens primarily continued to hold the cash proceeds and other liquid assets, as well as (through wholly-owned affiliated entities) certain real estate, consisting of the former Clemens corporate headquarters building and surrounding land. (Cplt., ¶ 47.) Nevertheless, Clemens distributed the bulk of the Giant sale proceeds to its shareholders, including to the Plan, in a series of periodic payments during 2007 and 2008. (Cplt., ¶ 54.) On March 5, 2010, Clemens issued a notice to Plan participants of its intention to terminate the Plan and purchase the Plan's

holdings of Clemens stock. (Cplt., ¶ 66.) The aggregate buyout price of the Plan's shares set forth in the notice was roughly $1.8 million. (*Id.*)

This $1.8 million figure represented a reduction in the valuation of the Plan's Clemens' stock holdings from roughly $3 million as of December 31, 2007. Implying that this reduction of approximately $1.2 million was caused by a decline in the market value of Clemens' real estate holdings (in addition to reductions attributable to the distributions of the Giant sale proceeds), the Complaint itemizes Clemens' unsuccessful attempts to sell its real estate holdings in 2007 and 2008 and alleges that the Plan trustees allegedly failed to warn Plan participants that the value of the Clemens Stock Fund in part "was dependent upon the value and sale of [Clemens'] real estate," (Cplt., ¶¶ 49-53, 59).

On April 5, 2010, Clemens withdrew its Plan termination notice, in order to conduct a reevaluation of the Clemens Stock Fund in light of the fact that the largest tenant in Clemens' office building provided notice of its intent to go out of business and possibly file for bankruptcy, and because Clemens had just received notice, from the Internal Revenue Service, that Clemens would be receiving a substantial tax refund. (Cplt., ¶ 69.)

## C.    Plaintiff's Claims Under ERISA

Based upon the foregoing sketchy factual allegations, Plaintiff asserts various claims of breach of fiduciary duty against certain current and former Plan trustees.[2] These claims all derive from Plaintiff's apparent (although never explicitly articulated) contention that the Plan improperly invested in the Clemens Stock Fund, or somehow wrongfully failed to

---

[2] Plaintiff also joins the Plan itself as a Defendant. This is improper, as the Plan is not subject to liability for breach of fiduciary duty. *See Ranke v. Sanofi-Synthelabo, Inc.*, No. 04-1618, 2004 U.S. Dist. LEXIS 22427, at *5-6 (E.D. Pa. Nov. 2, 2004) (dismissing plan as an improper defendant to claim for breach of fiduciary duty); *Boucher v. Williams*, 13 F. Supp. 2d 84, 93 (D. Me. 1998) (plan "is not a 'person' as that term is defined by ERISA and is therefore not subject to claims of breach of fiduciary duty under section 404").

dispose of the Clemens Stock Fund in a timely manner. Plaintiff asserts in the Complaint a virtual laundry list of generalized and overlapping claims which make no attempt to distinguish among the various Defendants and, for the most part, string together bare legal conclusions.

Specifically, Plaintiff asserts claims for: 1) failure to act prudently in continuing to invest in the Clemens Stock Fund; 2) failure to warn Plan participants of risks related to Clemens' real estate holdings; 3) derivative of the foregoing claims, failure to monitor other fiduciaries' alleged breaches of duty; and 4) alleged failure by the Plan administrator to provide certain documents to Plaintiff. (Cplt., ¶¶ 88, 96.) Count I purports to bring these claims pursuant to ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)), and Count II purports to bring the same claims pursuant to ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)).

Plaintiff further seeks to maintain this lawsuit as a putative class action, on behalf of the following alleged class:

> All persons located in the United States who are or were participants in the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003, Trust A, since September 1, 2006 who held Clemens Markets, Inc. stock as a component of their investment in this Plan.

(Cplt., ¶ 74.)

## III.   ARGUMENT

### A.   Standard of Review

While in deciding a motion to dismiss the Court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them," *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990), Plaintiff must allege some plausible facts supporting his claims:

> While, for most types of claims, the Federal Rules eliminated the cumbersome requirement that a claimant "set out *in detail* the facts upon which he bases his claim," Rule 8(a)(2) still requires a

"showing," rather than a blanket assertion, of entitlement to relief.
Without some factual allegation in the complaint, it is hard to see
how a claimant could satisfy the requirement of providing not only
"fair notice" of the nature of the claim, but also "grounds" on
which the claim rests.

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007) (citations omitted) (emphasis in

original).

Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligations to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted). This standard

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Dismissal is appropriate where, as here, the Complaint

fails to set forth sufficient facts to support each element of each claim. *Twombly*, 127 S. Ct. at

1964; *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

The Third Circuit has recently explained that:

District courts [are directed] to conduct a two-part analysis when
faced with a 12(b)(6) motion. First, the legal elements and factual
allegations of the claim should be separated, with the well-pleaded
facts accepted as true but the legal conclusions disregarded.
Second, the court must then make a common sense determination
of whether the facts alleged in the complaint are sufficient to show
a plausible claim for relief. If the court can only infer the mere
possibility of misconduct, the complaint must be dismissed
because it has alleged--but has failed to show--that the pleader is
entitled to relief.

*Renfro v. Unisys Corp.*, No. 07-2098, 2010 U.S. Dist. LEXIS 41563, at *10 (E.D. Pa. Apr. 26,

2010) (Schiller, J.) (summarizing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.

2009) (citations omitted)).

Moreover, certain of Plaintiff's claims must satisfy the heightened pleading requirements of Rule 9(b) because they are grounded in fraud. Courts have repeatedly held that claims for breach of fiduciary duty under ERISA sounding in fraud and misrepresentation are subject to Rule 9(b) and, thus, Plaintiff must plead those facts with particularity. *See, e.g., Byrnes v. De Bolt Transfer, Inc.*, 741 F.2d 620, 626-27 (3d Cir. 1984); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001); *Pietrangelo v. NUI Corp.*, No. 04-3223 (GEB), 2005 U.S. Dist. LEXIS 40832, at *31 (D.N.J. July 18, 2005).

Here, Plaintiff alleges, *inter alia*, that Defendants "fail[ed] to properly and accurately disclose and communicate with and to the Plan participants as to company stock investment, its valuation, its risks, and other aspects of handling this investment as a component of the 401(k) portfolio. (Cplt., ¶¶ 88(c), 96(c).) These claims clearly sound in fraud and misrepresentation and are subject to heightened pleading under Rule 9(b). In order to satisfy his pleading burden under Rule 9(b), Plaintiff must allege:

> [W]ith particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.

*Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3d Cir. 2004) (citations omitted). The threadbare Complaint clearly fails to meet this heightened standard and therefore should be dismissed for this independent reason.

**B.** **Plaintiff Fails To State A Claim For Breach Of Duty To Manage The Plan Prudently**

Plaintiff alleges, among other things, that Defendants breached their fiduciary duty under ERISA by "failing to prudently and loyally manage the Plan's investment in Clemens stock and to protect and preserve the Plan assets." (Cplt., ¶ 88). The apparent theory of this claim is that, because the value of Clemens' real estate holdings declined, Clemens' privately held stock became an imprudent Plan investment at some point between 2006 and 2010 (although it is unclear precisely when Plaintiff believes this supposedly happened), and that Defendants allegedly breached their fiduciary duties by not divesting the Plan's investment in Clemens Stock Fund.[3]

This claim is without merit, for two reasons. First, Defendants did not have fiduciary responsibilities with respect to the Plan's investments in the Clemens Stock Fund. Second, Clemens stock was not – as a matter of law – an imprudent investment.

**1.** **Defendants Were Not ERISA Fiduciaries With Regard To The Plan's Investments In Clemens Stock**

The first insurmountable obstacle for Plaintiff's prudence claim is that Defendants did not function as ERISA fiduciaries with regard to the Plan's investments in the Clemens Stock

---

[3] There cannot be a claim against Defendants arising from Clemens' decisions about how to handle its real estate holdings. Even though some of the individually named Defendants have had management roles at Clemens and some input into Clemens' decision-making, they were not acting as Plan fiduciaries when they carried out their duties as directors and/or officers of Clemens. Fiduciary status under ERISA is not "an all or nothing concept," since a person is only a fiduciary when "that person functions as a fiduciary." *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 472 (S.D.N.Y. 2005). ERISA permits a party to "wear different hats," a corporate hat and a fiduciary hat. *Pegram v. Hedrich*, 530 U.S. 211, 225 (2000). A "person employed to provide services under a plan" has not committed a fiduciary breach simply because his corporate actions "adversely affected a plan beneficiary's interest. . . ." *Id.* at 226. Here, the decision whether to sell the Clemens real estate is not a fiduciary decision by the Plan trustees; rather, it is a **corporate decision** by the Plan settler (Clemens Markets, Inc.) that falls outside of ERISA. *See Akers v. Palmer*, 71 F.3d 226, 229-31 (6th Cir. 1995) ("ERISA is designed to accomplish many worthwhile objections, but the regulation of purely corporate behavior is not one of them.". . . "ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants." . . . "An employer may thus unilaterally terminate a plan governed by ERISA without violating the Act.").

Fund. The claim that Defendants acted imprudently in investing Plan assets in Clemens stock presupposes that the Defendants enjoyed discretion to decide whether to make and continue this investment. But the Plan requires that Trust A be invested in the Clemens Stock Fund. Accordingly, Defendants had no discretionary authority to divest the Plan of Clemens stock. Absent that authority, Defendants did not function in a fiduciary capacity with regard to the conduct alleged in the Complaint and, as a result, there simply can be no claim for breach of fiduciary duty in connection therewith.

      As the Supreme Court has stated, the "threshold question" in every case alleging breach of ERISA fiduciary duty is "whether [the defendant] was acting as a fiduciary . . . **when taking the action subject to the complaint.**" *Pegram v. Herdrich*, 530 U.S. at 226 (emphasis added). That is because a person or entity "may be an ERISA fiduciary with respect to certain matters but not others." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) (citation omitted); *see also Beddall v. State Street Bank*, 137 F.3d 12, 18 (1st Cir. 1998) ("[F]iduciary status is not an all or nothing proposition. . . ."). "Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990). In deciding whether a plan fiduciary breached his or her fiduciary responsibilities, the court "must ask whether a person is a fiduciary with respect to the particular activity in question." *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995)

      A person acts as a fiduciary only with respect to the specific function in the management of the plan over which he or she exercises discretionary control. *See* 29 U.S.C. § 1109. A court must dismiss breach of fiduciary duty claims against a person who is not a

fiduciary "for the purposes of events identified [in the claims]." *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 374 (3d Cir. 2003).

Here, none of the Defendants exercised discretionary control over the Plan's continued holding of Clemens stock (*i.e.*, the alleged act of imprudence that supposedly constituted the breach by Defendants of their fiduciary duties under ERISA), because the Plan did not provide any discretion whether or not the funds in Trust A would be invested in the Clemens Stock Fund. The Plan provides[4] that "the Adopting Employer, not the Trustee (or Custodian, if applicable), shall have exclusive management and control over the investment of the Fund into any permitted investment." Vanguard Prototype Plan, § 7.22(A).[5] The Plan states that the "Adopting Employer shall be responsible for establishing a funding policy statement on behalf of the Plan" and the Plan trustees' investment of Plan assets is "subject to the funding policy statement provided by the Adopting Employer." *Id.*, § 7.22(A) and (D).

The funding policy statement, which was set forth in an Attachment to Clemens' Adoption Agreement (Exh. 2 at 17, Exh. 3 at 15, Exh. 5 at 38, Exh. 6 at 2) (and is quoted in Paragraph 25 of the Complaint), provides that "Trust A holds the assets invested in the Clemens Market Company Stock Fund, and Trust B holds the remaining Plan assets." Thus, while there was no express direction as to how to invest the assets of Trust B, Clemens, as the Plan sponsor,

---

[4] When ruling on a motion to dismiss an ERISA complaint, the Court may consider the plan documents in their entirety. *Pietrangelo v. NUI Corp.*, No. 4-3223, 2005 U.S. Dist. LEXIS 40832, at *10-11 (D.N.J. July 18, 2005).

[5] The Plan documents were prepared by Vanguard, a financial services company that provided administrative services for the Plan. The Plan consists of two documents: (a) a Vanguard Fiduciary Trust Company Prototype Basic Plan Document (the "Vanguard Prototype Plan") and (b) an "Adoption Agreement" executed by Clemens, as the employer sponsor of the Plan, which adopted the Vanguard Prototype Plan and provided additional Plan terms. These documents were periodically updated to comply with changes in applicable law. Thus, attached hereto as Exhibits 1 and 2 is the August 2001 Vanguard Prototype Plan adopted by agreement by Clemens in December 2003, the September 1, 2006 Adoption Agreement, attached hereto as Exhibit 3, and the April 2008 Vanguard Prototype Plan adopted by agreement by Clemens in December 2009, attached hereto as Exhibits 4 and 5. The operative language cited herein is the same in both versions of the documents.

specifically directed the Plan trustees to invest the assets of Trust A in Clemens stock. *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 250 (5th Cir. 2008) (where Trust Agreement provided that "the Plan's investment funds shall consist of the Reliant Energy Common Stock Fund and other such Investment Funds selected and approved by the Committee from time to time," the Benefits Committee "had no authority to delete the Common Stock Fund as an investment option").

Where, as here, a plan does not afford the fiduciaries discretionary authority with regard to investment in company stock, courts have dismissed claims of alleged breach of the duty of prudence pursuant to ERISA § 404(a).[6] As the Third Circuit has stated:

> The Restatement of Trusts provides that in investing trust funds, 'the trustee . . . has a duty to the beneficiaries to conform to the terms of the trust directing . . . investments by the trustee.' Restatement (Third) § 228. Thus, 'as a general rule a trustee can properly make investments in such properties and in such manner as expressly or impliedly authorized by the terms of the trust.' *Id.* comment (d).  However, trust law distinguishes between two types of directions: the trustee either may be mandated or permitted to make a particular investment.  If the trust requires the fiduciary to invest in a particular stock, **the trustee must comply unless 'compliance would be impossible . . . or illegal' or deviation is otherwise approved by the court.** *Id.* comment e.

---

[6] *See, e.g., Mellot v. ChoicePoint, Inc.*, 561 F. Supp. 2d 1305 (N.D. Ga. 2007) (holding that claims alleging breach of the duty of prudence for failure to diversify out of employer stock did not state a viable claim); *Pedraza v. The Coca-Cola Co. Benefits Comm.*, 456 F. Supp. 2d 1262, 1276 (N.D. Ga. 2006) (holding that § 404(a) precludes a prudence claim where the fiduciary had no discretion with regard to investments in company stock); *In re Reliant Energy ERISA Litig.*, No. 02-2051, 2006 U.S. Dist. LEXIS 3181, at *11 (S.D. Tex. Jan. 18, 2006), *aff'd*, 526 F.2d 243 (5th Cir. 2008) (holding that where the plan required that employer stock be offered as an investment option and that matching funds be invested in employer stock, the fiduciary had no discretion to do otherwise and prudence claim was properly dismissed); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 829 (N.D. Cal. 2005) (holding that ERISA § 404 "prohibits claims against fiduciaries for failing to diversify an ESOP"); *Crowley v. Corning, Inc.*, No. 02-CV-6172, 2004 WL 763873, at *10 (W.D.N.Y. Jan. 14, 2004) (holding where "the Plan does not give the fiduciaries any discretion with regard to investments in company stock . . . the Plan creates no potential for fiduciary liability with regard to investments in [company] stock.").

*Moench*, 62 F.3d at 571 (emphasis added).  Plaintiff does not even attempt to meet the

"impossible or illegal" standard.

### 2. As A Matter Of Law, Clemens Stock Was Not An "Imprudent" Investment

Plaintiff's claims also fail because Clemens stock – as a matter of law – was not

an imprudent investment.  Where, as here, the Plan directs the trustees to invest Plan assets in

company stock, that investment in company stock is presumed to be prudent.  Thus, in order to

state a claim for breach of fiduciary duty under ERISA, Plaintiff must plead facts to overcome

this presumption.  *See, e.g., Edgar v. Avaya, Inc.*, 503 F.3d 340, 352 (3d Cir. 2007) (affirming

dismissal for failure to plead facts overcoming presumption); *accord In re Dell, Inc. ERISA

Litig.*, 563 F. Supp. 2d 681, 693 (W.D. Tex. 2008) ("The Court must therefore determine at the

motion to dismiss stage whether the Plaintiffs have plead facts which, taken as true, could

overcome the [presumption of prudence].").

This is no easy task.  It is not enough for Plaintiff to plead that plan fiduciaries

were aware of "circumstances that may impair the value of company stock;" rather, plaintiffs

must plead "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries

would have considered themselves bound to divest."  *Kirschbaum*, 526 F.3d at 256.  Plaintiff has

not met that high standard.

#### a. Plan Investments In Clemens Stock Are Presumptively Prudent

In its seminal opinions in *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007)

and *Moench v. Robertson*, 62 F.3d 553, 568 (3d Cir. 1995), the Third Circuit established a

presumption of prudence where Plan trustees follow the Plan's direction to invest in company

stock.  Recognizing both the need to take account of Plan sponsor intent where plan design

directs investment in employer stock and that one goal of ERISA is to foster employee stock

ownership,[7] the Third Circuit has adopted an "abuse of discretion" standard and a "presumption of reasonableness" in evaluating whether a fiduciary has breached its duties by – as Plaintiff alleges here – permitting continued investment in, or failing to liquidate, company stock. *Moench*, 62 F.3d at 571; *Avaya*, 503 F.3d at 345-48.

To rebut the presumption and establish an abuse of discretion, "the plaintiff must show that an ERISA fiduciary could not have believed reasonably that continued adherence to the [Plan's] direction was in keeping with the settlor's expectations of how a prudent fiduciary would operate." *Moench*, 63 F.3d at 571; *accord In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 793 (W.D.N.C. 2003). Thus, rebutting the presumption requires plaintiffs to plead extraordinary circumstances where a company was in dire straits and facing "impending collapse." Only in such extraordinary circumstances can plan fiduciaries appropriately determine that company stock in no longer a viable long-term investment and that terminating employee ownership of company stock is necessary. *See, e.g., Moench*, 62 F.3d at 558, 572 (permitting case to proceed in face of "continual and precipitous drop" in stock price culminating in bankruptcy and where company knew of "impending collapse"); *Polaroid*, 362 F. Supp. 2d at 475-76 (stock underwent "precipitous decline" and defendants were aware of strong likelihood that company could not continue as a going concern).

In view of the important interests it serves, the presumption is a "substantial shield." *Kirschbaum*, 526 F.3d at 256. As the *Kirshbaum* court explained:

---

[7] *See Tax Reform Act of 1976*, Pub. L. No. 94-455, 90 Stat. 1590 (1976) (Congress encourages use of employee stock ownership plans "as a bold and innovative method of strengthening the free private enterprise system which will solve the dual problems of securing capital funds for necessary capital growth and of bringing about stock ownership by all corporate employees.") ("Intent of Congress Concerning Stock Ownership Plans"); *Moench*, 62 F.3d at 568-71 (same). "Thus, the concept of employee ownership *constituted a goal in and of itself* [for Employee Stock Ownership Plans]." *Moench*, 62 F.3d at 568 (emphasis added).

One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest. Less than rigorous application of the *Moench* presumption threatens its essential purpose. A fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance. In such a case, he could be sued for not selling if he adhered to the plan, but also sued for deviating from the plan if the stock rebounded.

*Id.*; *see also Pedraza*, 456 F. Supp. 2d at 1276 ("A fiduciary who decides to scrap the ESOP is just as apt to be sued as he would be if he enforced the plan provisions.").

> ### b.   Plaintiff Fails To Overcome the Presumption of Prudence

Application of the presumption of prudence here is straightforward. The Complaint alleges simply that following a sale of substantially all of the privately-held assets of Clemens and a cash distribution to all of its shareholders, including the Clemens Stock Fund in which the Plan invested, the company continued to hold a few real estate assets. The company did not sell those assets immediately and then faced the most serious modern economic crisis facing our nation and the world. The inability to sell (or, for that matter, even lease) those real estate assets, coupled with a desire to terminate the Plan in a timely fashion, forced Clemens' management to search for a creative solution for the dissolution of its real estate holdings, which proved difficult to develop.

Not once, though, does the Complaint allege that Clemens was facing "dire circumstances," "impending collapse," or a "threat to its viability". *Edgar*, 503 F.3d at 348-49 & n.13; *Johnson v. Radian Group, Inc.*, No. 08-2007, 2010 U.S. Dist. LEXIS 51959, at *33 (E.D. Pa. May 26, 2010). Indeed, "there is no indication that during the class period, [the Company's] 'viability as a going concern was ever threatened." *Gearren v. McGraw-Hill Cos., Inc.*, No. 08

Civ. 7890, 2010 WL 532315, at *16 (S.D.N.Y. Feb. 10, 2010) (quoting *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790 (SHS), 2009 WL 2762708, at *18 (S.D.N.Y. Aug. 31, 2009) (quoting *Kirschbaum*, 526 F.3d at 255)).  Rather, Clemens successfully sold its supermarket operating assets in the fall of 2006 (and, it should be noted, before the current economic downturn that has had a particular adverse impact on the supermarket industry, and therefore presumably at a better price than would be available in the current poor economic climate); distributed much of the sale proceeds; and now owns real estate which has experienced a modest (but hopefully, short-term, but, in any event, hardly catastrophic) decline in value.

Absent such allegations of impending doom, the Court must dismiss the Complaint. *See, e.g., Edgar*, 503 F.3d at 348-49 ("we cannot agree, however, that these developments, or the corresponding drop in stock price, created the **type of dire situation** which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the Plans of Avaya securities.") (emphasis added); *Kirshbaum*, 526 F.3d at 255 (a threat to company's viability as a going concern" and a "danger of [the stock] becoming essentially worthless" are needed to establish an abuse of discretion in continuing the ESOP); *Quan v. Computer Sciences Corp.*, No. 09-56190 (9th Cir. Sept. 30, 2010) (affirming summary judgment where facts did not "clearly implicate[] the company's viability as an ongoing concern" or show "a precipitous decline in the employer's stock . . . combined with evidence that the company [was] on the brink of collapse or [was] undergoing serious mismanagement." *Radian Group,* 2010 U.S. Dist. LEXIS 51959, at *33 (dismissing complaint where plaintiff failed to "demonstrate that [Radian] faced a "dire situation").[8]

---

[8] *See also Coca-Cola Enters.*, 2007 WL 1810211, at *10 (granting motion to dismiss where company's viability as a "going concern" was never an issue and defendant was not "on the verge of financial collapse"); *In re Calpine Corp. ERISA Litig.*, No. C03-1685, 2005 WL 1431506, at *5 (N.D. Cal. Mar. 31, 2005) (granting motion to (continued...)

At best, Plaintiff's imprudence argument boils down to nothing more than that (in the midst of a severe worldwide economic downturn) the value of Clemens' few remaining assets fell because of the overall decline in the real estate market. Even taking Plaintiff's calculations as being reliable and accurate (which Defendants do not concede), Clemens stock price declined from $63.78 per share in 2007 and 2008 to $49.53 per share in March 2010, a 22% decline. (Cplt., ¶¶ 55, 66.) Courts have repeatedly found far larger stock drops insufficient to overcome the presumption of prudence. *See, e.g., Edgar*, 503 F.3d at 342, 348-49 & n.13 (holding 25.08% percent drop in Avaya share price was not a "dire situation"); *Crowley*, 234 F. Supp. 2d at 227 (80% drop in stock price); *Kuper*, 66 F.3d at 1451 (80% drop in stock price); *McKesson*, 391 F. Supp. 2d at 838-39 (75% drop in stock price); *Wright*, 360 F.3d at 1096 (73% in stock price); *Duke Energy*, 281 F. Supp. 2d at 795 (55% drop in stock price).

Even more proof that Plaintiff's allegations are without merit is the fact that the S&P 500 Index and Dow Jones Industrial Average likewise dropped approximately 27% and 22% respectively over the same time period.[9] *See S&P 500 Index & Dow Jones Industrial Average daily prices;* http://www.yahoofinance.com. It is not a breach of fiduciary duty simply to be a Plan trustee in a time of recession and falling asset values. *See In re Huntington Bancshare Inc. ERISA Litig*, No. 2:08-cv-0175, 2009 U.S. Dist. LEXIS 91032, at *32 (S.D. Ohio

---

(continued...)

dismiss where company's viability as an ongoing concern" was not called into question); *Duke Energy*, 281 F. Supp. 2d at 793-95 (granting motion to dismiss where company was "solid," "viable" and "far from impending collapse" (internal quotation marks omitted)); *Wright v. Or. Metallurgical Corp.*, 222 F. Supp. 2d 1224, 1234 (D. Or. 2002) (granting motion to dismiss where company was "far from an impending collapse" and "at all times . . . a viable concern"), *aff'd*, 360 F.3d 1090 (9th Cir. 2004).

[9] It is proper for this Court to take judicial notice of stock market share prices of companies, indices, or sectors. *See, e.g., Edgar*, 503 F.3d at 349 n. 13 (citing *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000) (noting that a court may "take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") (quoting Fed. R. Evid. 201(b)(2))).

Feb. 9, 2009) (dismissing fiduciary breach claims for continuing to offer participants company stock fund, upon observing that stock price, which declined from $22 to $7 per share, "moved in tandem with the other regional banks in Huntington's geographic footprint over the Class period.").

Accordingly, the Complaint's prudence claim fails as a matter of law and should be dismissed.

### C.   Plaintiff's Claims that Defendants Misrepresented the Risks of Clemens Stock Fail as a Matter of Law

Plaintiff's other primary claim is that Defendants allegedly failed to warn Plan participants of the risks of being invested in company stock. (Cplt., ¶¶ 88(c) and (f), 96(c) and (f)). It appears that the alleged fiduciary breach complained of is that Defendants supposedly failed to warn Plaintiff that the value of Clemens' stock might decline in value if Clemens' real estate holdings declined in value. (Cplt., ¶¶ 44, 49.) Even leaving to the side that this "risk" would be obviously apparent to anyone who knew that Clemens owned real estate, this claim fails for two reasons. First, ERISA imposes no fiduciary obligation to disclose to Plan participants every possible risk to the price of company stock held by the Plan. Second, because Plaintiff had no ability to sell his interest in the Clemens Stock Fund in response to any newly disclosed information, any alleged failure to disclose is immaterial and caused him no actionable injury.

### 1.   ERISA's General Fiduciary Requirements Do Not Include Any Duty To Disclose Company Financial Information To Plan Participants

ERISA is an "enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests – not all in favor of potential plaintiffs," *Mertens v Hewitt Assocs.*, 508 U.S 248, 262 (1993), and the Supreme Court has refused to impose additional requirements onto ERISA's statutory regime. *See Mut. Life Ins. Co. v. Russell*, 473

U.S. 134, 146-47 (1985) ("Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."). ERISA Sections 101 to 111 impose a "comprehensive set of 'reporting and disclosure' requirements," *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (citing 29 U.S.C. §§ 1021-31), and ERISA's duty of disclosure is limited to those requirements. *Baker v. Kingsley*, 387 F.3d 649, 661 (7th Cir. 2004) (noting that "several Circuits [2d, 3d, 4th, 6th, and 7th] have held that there is no fiduciary duty to inform plan participants of a future risk"); *Mellot v. Choicepoint, Inc.,* 561 F. Supp. 2d 1305, 1318 (N.D. Ga. 2007) ("ERISA's fiduciary duty standards should not be expanded to include disclosure of information that is not explicitly required under ERISA."). Plaintiff does not allege a breach of any of these requirements in the Complaint.

Rather, Plaintiff's "disclosure" claim rests on the faulty premise that the general *fiduciary* language of ERISA creates some sort of vague set of additional duties to disclose every bit of company financial information. (*See, e.g.*, Cplt., ¶ 88(f)). But courts have rightly rejected such a wholesale and amorphous expansion of ERISA's disclosure regime, holding that it would be "inappropriate to infer an unlimited disclosure" given the comprehensive nature of the disclosure requirements expressly set forth in ERISA Sections 101-111. *Bd. of Trs. CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 146-147 (2d Cir. 1997) (citing *Faircloth v. Lundy Package Co.*, 91 F.3d 648, 657 (4th Cir. 1996)). Indeed, the "general fiduciary obligations set forth in ERISA § 404" nowhere even mention the "disclosure of information to Plan participants." *Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748, 754

(S.D.N.Y. 1997).[10]  Thus, ERISA's general fiduciary language does not create a duty to disclose

risks to the value of the Clemens' stock fund arising from its real estate portfolio.

The Third Circuit's opinion in *Avaya* is directly on point and controlling.  There,

the Third Circuit rejected a similar claim, holding that allegations "[t]hat defendants did not

inform Plan participants about several adverse corporate developments prior to [the company's]

earnings announcement" did not state a claim for breach of ERISA's disclosure obligations

because "[u]nder Third Circuit law" defendants had no additional obligation to disclose adverse

information relevant to the company's performance in advance of the company's earnings

announcement. *Avaya*, 503 F.3d at 350-51; *see also Meihardt v. Unisys Corp.*, 74 F.3d 420, 440

(3d Cir. 1996) (same).  The "disclosure" claim in the Complaint is therefore without merit and

should be dismissed.

### 2.    Plaintiff Suffered No Injury From the Alleged Failures to Disclose

Moreover, Plaintiff cannot show that he was injured by any supposed failure to

disclose.  Disclosure of the allegedly withheld information about the risk to Clemens stock value

from certain real estate holdings (Cplt., ¶¶ 48-49) was immaterial and inconsequential because

Plan participants had no ability to sell their shares in the Clemens Stock Fund.  Thus, even if the

Defendants had made the disclosures of real estate-related risks that Plaintiff now demands,

Plaintiff had no ability to act on the information by selling his shares of the Clemens Stock Fund.

Accordingly, any failure to disclose is immaterial as a matter of law and incapable of causing

injury. *See Edgar*, 503 F.3d 350-51 (affirming dismissal because, *inter alia*, alleged

---

[10] *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998) ("It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed."); *Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 555 (5th Cir. 2000) ('It is for Congress to determine whether to impose such a duty to disclose under ERISA and this court will not encroach on that authority by imposing a duty which Congress has not chosen to impose.").

misstatements were not material because earlier public disclosure would have resulted in "swift

market adjustment" and plaintiffs would not have avoided harm because they "would not have

been able to sell their Avaya stock holdings at the higher, pre-announcement price, and the Plans

would have sustained the same losses they incurred when the Company publicly announced the

quarterly results in April 2005.").

The Third Circuit has held that for a plaintiff to plead a failure to disclose claim

under ERISA, such a failure must be "material." *In re Unisys Corp. Retiree Med. Benefit*

*"ERISA" Litig.*, 57 F.3d 1255, 1264 n.18 (3d Cir. 1995). A failure is material "if 'there is a

substantial likelihood that it would mislead a reasonable employee in making an adequately

informed retirement decision." *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 461-62

(3d Cir. 2003) (quoting *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1015-16 (3d Cir.

1997)). Implicit, of course, is the ability to act on the disclosure when "making an adequately

informed retirement decision;" if the Plaintiff had no ability to alter his or her conduct, then the

information cannot be material. *See In re Unisys*, 57 F.3d at 1264 n.18 (affirming dismissal

where plaintiff "failed to explain how the information at issue was material in light of the fact

that her employer offers no other options for healthcare coverage").

Pursuant to the "Sarbanes Oxley Blackout Notice" issued by Clemens on October

8, 2006 in connection with the asset sale to Giant, Clemens froze all activity in the Clemens

Stock Fund in the Plan. *See* Clemens 10/8/06 Sarbanes-Oxley Notice, attached hereto as Exhibit

7;[11] Cplt., ¶¶ 40-43. Even Plaintiff concedes that because of the Blackout Notice "the [Plan]

---

[11] In deciding a motion to dismiss, the Court may consider documents referenced in the complaint and documents that form the basis of the claim. *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). This document is quoted in (and relied upon by) Paragraphs 42 and 43 of the Complaint.

participant would be unable to liquidate, withdraw, borrow or diversify investments in the

Clemens Stock Fund" until the Blackout Period was lifted. (Cplt., ¶ 43.)

Thus, any alleged failure by Defendant to disclose to Plan participants the risk to

the Clemens' Stock Fund from Clemens' real estate holdings could not be material because Plan

participants were restricted from selling their holdings during the Blackout Period (a period that

encompassed the entire putative Class Period).  Hence, the Court should dismiss the disclosure

claim for this additional and independent reason.[12]

**D.      In The Absence of Substantive Prudence or Disclosure Claims, There Can Be
         No Claims for Failure to Monitor Fiduciary Conduct or Conflict Of Interest**

Plaintiff's remaining claims (Cplt., ¶¶ 88(b)(e) and (g) and 96(b)(e) and (g)) are

predicated on the viability of Plaintiff's prudence and failure to warn claims.  In particular, these

claims allege that each of the Defendants breached his fiduciary duty by failing to monitor and

police his co-defendants' alleged fiduciary breaches.  As the underlying allegations of fiduciary

breach in the Complaint fail to state a claim, these derivative monitoring claims should be

dismissed as well.  *See, e.g., Coca-Cola Enters.*, 2007 WL 1810211, at *11 (dismissing duty to

monitor claim where plaintiffs failed to state a claim that investment in company stock was

imprudent as a matter of law,); *Calpine*, 2005 WL 1431506, at *8 (dismissing co-fiduciary

liability claim where plaintiffs failed to state a claim for breach of fiduciary duty).  Nor are any

---

[12] Additionally, Plaintiff's claim fails because he does not have Article III standing.  It is axiomatic that standing to sue is a prerequisite to federal court jurisdiction under Article III of the Constitution.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  This Constitutional mandate requires that Plaintiff show an "injury in fact" traceable to Defendants' alleged misconduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "An 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'"  *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).  Applied to the facts at hand, Plaintiff cannot demonstrate an injury flowing from Defendants' alleged failure to warn of the real estate risks because the Blackout Period precluded any Plan participant from selling a stake in the Clemens Stock Fund during the Class Period.  Thus, this claim of Plaintiff's must be dismissed as a matter of law because there is no Article III standing.  *See, e.g., Kerchner v. Obama*, No. 09-4209 (3d Cir. July 2, 2010).

facts pled as to how each Defendant supposedly had the opportunity to monitor and police his

co-defendants but failed to do so.

    **E.**    **Plaintiff Has No Claim For Defendants' Failure to Provide Documents Under ERISA**

    Plaintiff also tacks on to the Complaint as an afterthought a claim for alleged

failure to provide certain documents to him as a Plan participant. (Cplt., ¶ 88(i))  This claim

likewise fails.  ERISA provides, in pertinent part, that:

> The administrator shall, upon written request of any participant or
> beneficiary, furnish a copy of the latest summary plan description,
> plan description, and the latest annual report, any terminal report,
> the bargaining agreement, trust agreement, contract, or other
> instruments under which the plain is established or operated.

29 U.S.C. § 1024(b)(4).  Plaintiff admits that Defendants provided him with the requisite

documents mandated by ERISA – namely the Plan, the summary plan description, and the most

recent annual report. (Cplt., ¶ 64.)  Despite Plaintiff's allegations in Paragraphs 63 and 71 of the

Complaint of his additional entitlement to "liquidation plans," "meeting minutes," and the like,

ERISA does not require disclosure of such documents. *See Faircloth v. Lundy Packing Co.*, 91

F.3d 648, 653 (4th Cir. 1996) (denying plaintiffs' claim for inspection of various documents

where none of them were expressly delineated in ERISA, 29 U.S.C. § 1024(b)(4)); *Bd. of*

*Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 145 (2d Cir.

1997) (same).

    **F.**    **Count II Fails To State A Viable Claim**

    In addition to the arguments set forth above, Count II of the Complaint fails

because it is an improper attempt to bring an action for money damages under ERISA §

502(a)(3).  As plead, the Complaint makes clear that Count II is a claim for damages.  (Cplt., ¶¶

97-98 ("[Plaintiff has] suffered a loss in the value of their retirement savings in the form of

decreased monetary value . . . [Plaintiff has] been caused to incur costs, expenses, and attorneys' fees in investigating, evaluating, and pursuing the Plan and its Trustees with respect to the matters outlined herein").)  However, the Supreme Court has made clear that damages are not recoverable under ERISA § 502(a)(3).  *See Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).  Therefore, the Court must dismiss Count II as a matter of law.[13]

## IV.   CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss should be granted and the Complaint should be dismissed with prejudice.

Respectfully submitted,

s/ Laurence Z. Shiekman
Laurence Z. Shiekman
Barak A. Bassman
Thomas T. Watkinson II
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendants

Dated: November 1, 2010

---

[13] Moreover, Count II also independently fails under the Supreme Court's *Varity* opinion because a sufficient remedy is available under ERISA § 502(a)(2) and therefore Plaintiff's § 502(a)(3) claim is therefore improperly duplicative.  *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2010, I caused a true and correct copy of the foregoing Defendants' Motion to Dismiss, Proposed Order, and Memorandum of Law in Support of Defendants' Motion to Dismiss Class Action Complaint and supporting documents to be served as indicated upon the following:

**VIA ECF and HAND DELIVERY**
Edward Rubin, Esquire
HAMBURG, RUBIN, MULLIN, MAXWELL & LUPIN, PC
P.O. Box 1479
375 Morris Road
Lansdale, PA
erubin@hrrml.com


_s/ Thomas T. Watkinson II_____
Thomas T. Watkinson

November 1, 2010