IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD ALDERFER, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CLEMENS MARKETS, INC., | : | |
| RETIREMENT SAVINGS AND | : | |
| PROFIT SHARING PLAN 003, et al., | : | No. 10-4423 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                December 23, 2010

Plaintiff Gerald Alderfer, on behalf of himself and others similarly situated, alleges Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in their management of an employer stock fund. Defendants move to dismiss Alderfer's Complaint under Federal Rule of Civil Procedure 12(b)(6). This motion will be denied in part and granted in part for the reasons stated below.

**I.     BACKGROUND**

**A.     The Parties and Plan**

Gerald Alderfer is a former employee of Clemens Markets, Inc., ("CMI") a defunct Pennsylvania supermarket chain. (Compl. ¶¶ 34-36.) CMI maintained a defined contribution benefits plan which included the Clemens Market, Inc. Retirement Savings and Profit Sharing Plan 003 ("Plan"). (*Id*. at ¶¶ 4, 34.) Alderfer became a Plan participant in 1975 and has held CMI stock as a portion of his Plan investments since 1980. (*Id*. at ¶¶ 3, 35.)

CMI converted the Plan from a traditional pension plan into a 401(k) in the spring of 1998.

(*Id*. at ¶ 18.) CMI subsequently amended the Plan's terms a number of times. (*Id*.) In September of 2006, CMI divided the Plan into two separate trusts, each with its own set of trustees. (*Id*. at ¶¶ 25, 27.) Trust A held CMI's company stock through its holdings in the Clemens Stock Fund, while Trust B held shares in mutual funds. (*Id*.; Defs.' Mot. to Dismiss Compl. 4.) CMI appointed five individuals to serve as trustees of Trust A: Jack Clemens, Robert Derstine, Robert Lavin, Douglas Moyer and Gerald Spencer (collectively, "the Individual Trustees"). (Compl. ¶ 26.) Vanguard, a trust company, served as trustee of Trust B. (*Id*.)

According to a Summary Plan Description issued in March of 2010 ("2010 SPD"), the Plan permitted participants to "direct the investment of the contributions to the Plan . . . among the investment options contained in the Appendix." (Pl.'s Reply Br. Ex. 8 [2010 SPD] 12, 14.) The appendix in this document is blank. (*Id*. at 28.) The 2010 SPD also noted that Plan participants were entitled to "comprehensive information about the investment options available in the Plan, including an explanation of the investment objectives and policies, risk and return characteristics, past and current investment performance . . . and the type and diversification of assets comprising the portfolio of each fund." (*Id*. at 13.)

Based on the material currently available to the Court, two documents appear to govern the Plan: a boilerplate Vanguard Fiduciary Trust Company Prototype Basic Plan Document, and an Adoption Agreement executed by CMI. (*See* Defs.' Mot to Dismiss Compl. 11 n.5). Defendants submitted three versions of these documents, which reflect periodic updates to the Plan. (*Id*.) Each iteration of the Plan documents provides that:

> There are presently two trusts which have been established by [CMI] for the purpose of funding benefits under the Plan, Trust A and Trust B, both of which are for the exclusive benefit of Participants in the

2

> Plan and their Beneficiaries. Trust A holds the assets invested in the Clemens Markets Company Stock Fund, and Trust B holds the remaining Plan assets.

(*See, e.g.*, Defs.' Mot. to Dismiss Compl. Ex. 5 [2009 Adoption Agreement] 38; Compl. ¶ 25.) The Plan documents also provide that CMI was responsible for establishing a "funding policy" to direct the Plan trustees' investment decisions. (Defs.' Mot to Dismiss Compl. Ex. 4 [2009 Prototype Basic Plan Document] § 7.22.) Plaintiff contends that Defendants have produced no such funding policy statement. (Pl.'s Reply Br. 10.)

### B. The CMI Liquidation

CMI decided to sell its operating assets to another supermarket chain in 2006. (Compl. ¶ 36; Defs.' Mot. to Dismiss Compl. 1.) Prior to liquidating those assets, CMI sent Plan participants a "Sarbanes Oxley Notice" that announced "a blackout of the Clemens Stock Fund," though this notice did not identify or differentiate between the assets in Trust A and Trust B. (Compl. ¶ 40.) The notice also informed Plan participants that CMI's "Clemens Stock Fund" would be converted to cash as a result of CMI's liquidation, and that CMI would make periodic payments to CMI stockholders until the fund was exhausted. (*Id*. at ¶ 42.) No Plan participants would be permitted to withdraw or modify their Plan investments between the date of the notice and the projected completion of CMI's liquidation in 2009. (*Id*. at ¶ 43.)

CMI's board and voting shareholders approved a liquidation plan on December 21, 2006. (*Id*. at ¶ 47.) Pursuant to this plan, the Board planned to sell CMI's real property holdings "during calendar year 2007 or 2008." (*Id*.) These holdings included CMI's offices in Kulpsville, Pennsylvania (the "Kulpsville Property"). (*Id*. at ¶ 50.) Jack Clemens, CMI's president and a Plan trustee, received a "multi-million dollar offer" for the Kulpsville Property from Hatfield Packing in

3

2007. (*Id*. at ¶ 53.) Clemens rejected this offer "as too low." (*Id*.)

CMI's liquidation proceeded. CMI had sold substantially all of the assets of CMI to other corporations by late 2006. (*Id*. at ¶ 36.) During CMI's liquidation, Plan participants received periodic payments on their company stock representing their share of the sale of CMI's operating assets. (*Id*. at ¶ 54.) However, the bankruptcy of one of CMI's tenants at the Kulpsville Property complicated the valuation and sale of CMI's real estate holdings. (*Id*. at ¶ 69.) A federal income tax refund also prompted CMI to revisit its original share value calculations. (Pl.'s Reply Br. Ex. 10 [Apr. 5, 2010 Trustees' Letter to Plan Participants].) Meanwhile, the value of the CMI stock held by Trust A had declined to $1.831 million in March of 2010 from $3.045 million in 2007. (*Id*. at ¶¶ 59, 66.) Alderfer attributes this decline to the decreased value of CMI's real estate holdings over the same period. (*See* Pl.'s Reply Br. 15.)

### C. Plaintiff's Claims

Alderfer alleges that the September 2006 reorganization of the 401(k) into separate trusts and the appointment of the Individual Trustees were not disclosed to Plan participants. (Compl. at ¶¶ 27-28.) Furthermore, Alderfer contends that the October 2006 Sarbanes Oxley Notice failed to inform Plan participants that the value of the CMI stock held by Trust A was dependent upon the value of CMI's real estate holdings. (*Id*. at ¶ 44.) Alderfer also references an undated letter sent by CMI's Chief Financial Officer after the October 2006 Sarbanes Oxley Notice and which informed Plan Participants that as they received periodic payments during CMI's liquidation, the market value of the Clemens Stock Fund held by Trust A would be adjusted. (*Id*. at ¶ 45.) However, Alderfer claims that this "very limited and confusing information," coupled with a "short deadline for rendering such an important decision," induced him and other Plan participants to maintain their

4

holdings in the Plan. (*Id*. at ¶ 46.)

Alderfer holds Defendants responsible for Trust A's decline in value, alleging that Defendants: (1) failed to manage the Plan prudently and monitor the status of the Plan's investment in CMI stock; (2) failed to oversee the Plan's administrators and fiduciaries; (3) failed to communicate with Plan participants; (4) failed to take appropriate steps to protect the Plan's assets; (5) failed to prevent breaches of fiduciary duty by other Plan fiduciaries; and (6) failed to comply with Alderfer's requests for information regarding the status of the Plan and the CMI liquidation. (*See id*. at ¶ 88.) Alderfer seeks relief under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), including: (1) an accounting; (2) restitution of the full value of the benefit of the Clemens Stock Fund together with interest, lost profit, further earnings on that decreased monetary value, and other income; (3) an injunction requiring Defendants to take corrective action; (4) removal of Plan trustees with conflicts of interest or who are responsible for injury to the Plan; and (5) reimbursement of his expenses in pursuing his claims. (*Id*. at ¶¶ 91, 99.)

Alderfer brings these claims as a putative class action on behalf of all persons in the United States who are or were participants in the Plan since September 1, 2006 who also held CMI stock as a component of their Plan investment. (*Id*. at ¶ 74.) He estimates that the size of this class is approximately 500 persons. (*Id*. at ¶ 75.)

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing

them in the light most favorable to the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

The Third Circuit applies a two-part analysis to determine whether claims should survive a Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must first separate the factual and legal elements of the claim, accepting well-pleaded facts as true but disregarding legal conclusions. *See id*. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *See id*. at 211 (citing *Phillips*, 515 F.3d at 234-35). If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failure to state a claim. *Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts may also consider undisputedly authentic documents attached to a defendant's motion to dismiss if the plaintiff's claims are based on those documents. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

### III. DISCUSSION

Alderfer's two-count Complaint seeks relief for Defendants' alleged violations of their fiduciary duties under 29 U.S.C. § 1109. (Compl. ¶¶ 87, 95.) The Complaint is organized into two nearly-identical counts under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(3), each seeking restitution, costs and equitable relief.

As a threshold matter, the Court will dismiss Alderfer's claims against the Plan. The Plan

is not a "person who is a fiduciary" within the meaning of Section 1109, as employee benefit plans are not "persons" under ERISA. *Ranke v. Sanofi-Synthelabo, Inc.*, Civ. A. No. 04-1618, 2004 WL 2473282, at *2 (E.D. Pa. Nov. 3, 2004). Alderfer thus cannot maintain his claims against the Plan.

### A. Claims Under 29 U.S.C. § 1132(a)(3)

Count II of Alderfer's Complaint seeks relief on various theories of fiduciary liability pursuant to 29 U.S.C. § 1132(a)(3). Defendants characterize these claims as "an improper attempt to bring an action for money damages" under Section 1132(a)(3) and argue that Count II is in any case duplicative of Count I. (Defs.' Mot. to Dismiss Compl. 23-24.) For the reasons discussed below, the Court will dismiss Count II in its entirety.

#### 1. *Monetary damages under section 1132(a)(3)*

The Court will dismiss Alderfer's claim for restitution under 29 U.S.C. § 1132(a)(3). The Supreme Court has held that this provision, which permits plaintiffs to seek "appropriate equitable relief" for breaches of fiduciary duty, is limited to "those categories of relief that were typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Isabella v. Express Prods. 401(k) Plan*, Civ. A. No. 08-2663, 2009 WL 541477, at *2 (E.D. Pa. Mar. 4, 2009). While restitution may fall within this category, such actions "generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213-14.

Alderfer's Section 1132(a)(3) claim seeks "[r]estitution in the form of the full value of the benefit of the Clemens Stock Fund together with interest, lost profit, further earnings on that decreased monetary value, and other income to be determined" as a result of Defendants' breaches of their fiduciary duties. (Compl. ¶ 91.) He does not allege that Defendants profited by engaging

7

in the activities at issue in this case. Indeed, the gravamen of Alderfer's Complaint is that the Plan and CMI lost money because of CMI's failure to sell its real estate holdings when market conditions were more favorable. Alderfer is thus bringing a claim against Defendants' "general assets," not an identifiable piece of property. *Cf. Ward Mfg., Inc. v. Yeager*, 611 F. Supp. 2d 464, 465 (E.D. Pa. 2009) (holding that action for restitution was brought in equity under ERISA where plaintiff sought equitable lien or constructive trust on specified sum held in trust). As the Supreme Court has observed, such relief "is nothing other than compensatory *damages* — monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis in original); *see also Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309 n.20 (5th Cir. 2007) (noting that restitution claim arising from defendant's reckless investment in company stock does not constitute an equitable remedy cognizable under subsection (a)(3)). The Court will thus dismiss the Section 1132(a)(3) restitution claim in Count II of Alderfer's Complaint.

### 2. *Remaining Count II claims*

The Court will dismiss the remainder of Count II, as these claims consist of requests for equitable relief identical to Alderfer's demands in Count I. Section 1132(a)(3) is a catchall provision intended as a "safety net," offering plaintiffs an avenue to seek equitable relief where Section 1132 does not otherwise provide an adequate remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). An 1132(a)(3) claim is inappropriate here as the relief Alderfer seeks under this provision is identical to the relief he seeks under 1132(a)(2): equitable remedies for the benefit of the Plan as a whole.

Alderfer seeks removal of certain Plan trustees, an accounting, an order requiring Defendants to take corrective action, and costs in both counts of his Complaint. (Compl. ¶¶ 91, 99.) He may

8

secure each of these remedies under section 1132(a)(2). *See* 29 U.S.C. § 1109; 29 U.S.C. § 1132(g)(2). In addition, Alderfer may seek "such other equitable or remedial relief as the court may deem appropriate" in a Section 1132(a)(2) action. 29 U.S.C. § 1109; *Owens-Wolkowicz v. Corsolutions Med., Inc.*, Civ. A. No. 05-277, 2005 WL 1592903, at *4 (E.D. Pa. June 30, 2005). The Court will therefore dismiss Alderfer's remaining claims for equitable relief under Section 1132(a)(3). *See Lewalski v. Sanlo Mfg. Co., Inc.*, Civ. A. No. 08-311, 2009 WL 1370950 (N.D. Ind. May 14, 2009).

**B.     Prudent Management**

Alderfer alleges that Defendants breached their fiduciary duties to the Plan by failing to prudently and loyally manage the Plan's investment in CMI stock. (Compl. ¶ 88.) The threshold question in determining whether a defendant is liable for a breach of fiduciary duty under ERISA is is whether the defendant was acting as a fiduciary when taking the action subject to complaint. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). The Court thus begins its analysis with an examination of Defendants' fiduciary status.

   *1.     Defendants' fiduciary status*

A defendant is an ERISA fiduciary "to the extent that, inter alia, it holds any discretionary authority or discretionary responsibility in the administration of an employee benefit plan." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 229 (3d Cir. 2007) (citing 29 U.S.C. 1002(21)(A)(iii)). Defendants argue that they are not ERISA fiduciaries with respect to the Plan's investments in CMI stock in Trust A and thus cannot be held liable for Trust A's decline in value. Indeed, if a plan fiduciary merely acts in accordance with the plan settlor's mandate requiring investment in employer securities, "the plan fiduciaries are immune from judicial inquiry related to such investments,

9

essentially because they are implementing the intent of the settlor." *Urban v. Comcast Corp.*, Civ. A. No. 08-773, 2008 WL 4739519, at *12 (E.D. Pa. Oct. 28, 2008).

However, Defendants have not shown that the Plan required investment in CMI stock. Defendants argument hinges on language in the Plan documents which they characterize as a "funding policy statement." (Defs.' Mot. to Dismiss Compl. 11.) The provision Defendants cite appears in the Plan documents as an attachment to the Plan adoption agreements. (*See, e.g.*, Defs.' Mot. to Dismiss Compl. Ex. 3 [Attachment to 2006 Adoption Agreement] 15.) This provision notes that "Trust A holds the assets invested in the Clemens Market Company Stock Fund, and Trust B holds the remaining Plan assets." (*Id.*; *see also* Compl. ¶ 25.) Defendants claim that this language "specifically directed the Plan trustees to invest the assets of Trust A in Clemens stock." (Defs.' Mot. to Dismiss Compl. 12.) Further, Alderfer concedes in his Reply that "the original investment in CMI stock was required by the Plan." (Pl.'s Reply Br. 16.) It is, however, reasonable to infer that the provision Defendants cite is descriptive rather than mandatory and thus did not require Defendants to continue investment in CMI stock. *Cf. Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 860-61 (N.D. Ill. 2009) (holding Plan required investment in company stock where Plan "specifically required" investment in stock of defendant corporation). It would therefore be premature to hold that Defendants were not fiduciaries with respect to the Plan's CMI stock holdings. *See Stanford v. Foamex L.P.*, Civ. A. No. 07-4225, 2008 WL 3874823, at *8 (E.D. Pa. Aug. 20, 2008) (denying motion to dismiss where plan terms directed investment "solely" in employer stock, but defendants liquidated the plan); *see also Pietrangelo v. NUI Corp.*, Civ. A. No. 04-3223, 2005 WL 1703200, at *6 (D.N.J. July 20, 2005) (finding allegations of fiduciary status "sufficient to withstand a motion to dismiss in spite of plan documents to the contrary.").

## 2. *Presumption of prudence*

Defendants argue that Alderfer's prudent management claim should be dismissed because the Plan's investment in CMI stock was prudent as a matter of law. The Third Circuit articulated a "presumption of prudence" in its decision in *Moench v. Robertson*, holding that an ERISA fiduciary investing plan assets in employer stock is "entitled to a presumption in the first instance that it acted consistently with ERISA." *Johnson v. Radian Grp., Inc.*, Civ. A. No. 08-2007, 2009 WL 2137241, at *14 (E.D. Pa. July 16, 2009) (citing *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995)). The strength of this presumption operates on a sliding scale, depending on whether the plan requires, encourages, or merely allows such investment. *See Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 462-63 (D.N.J. 2008) (citing *Moench*, 62 F.3d at 571). Where a plan provides for investment in employer stock, the presumption can only be overcome with allegations implicating "the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." *Quan v. Computer Sci. Corp.*, 623 F.3d 870, 882-83 (9th Cir. 2010) (internal quotation marks omitted); *see also Edgar v. Avaya, Inc.*, 503 F.3d 340, 348-49 (3d Cir. 2007).

The Court need not consider whether Alderfer has satisfied this standard, as it is not clear whether the terms of the Plan required, encouraged, or merely permitted investment in CMI stock. *See Avaya,* 503 F.3d at 346-47 (3d Cir. 2007) (noting that presumption of prudence is appropriate under *Moench* where investment in employer securities is "more than simply permitted" if not "absolutely required" under plan); *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 238 n.5 (3d Cir. 2005) (finding *Moench* presumption was "inapposite because the fiduciaries . . . were simply permitted" to invest in employer securities); *Urban*, 2008 WL 4739519, at *12 (holding that

presumption of prudence did not apply where plaintiff alleged plan "merely provided that investment options may include Company stock."). While Defendants may ultimately prevail on this ground, discovery is necessary to determine whether and to what extent the *Moench* presumption should apply to their investment in CMI stock. The Court will thus deny Defendants' motion with respect to Alderfer's prudent management claim.

### C. Misrepresentations and Omissions

A plan participant may maintain an action for misrepresentations under ERISA by establishing: (1) a defendant's status as an ERISA fiduciary with respect to the actions at issue; (2) a material misrepresentation on the part of the defendant; and (3) the plaintiff's detrimental reliance on that misrepresentation. *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003) (citing *Daniels v. Thoms & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001)). A misrepresentation is "material" if there is a "substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies in a particular fund." *Avaya*, 503 F.3d at 350 (citing *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 442 (3d Cir. 1996)). Omissions are actionable when an ERISA fiduciary knows that "silence might be harmful," and fails to communicate material facts which are otherwise unknown to the beneficiary. *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993).

As discussed above, Alderfer has presented allegations of Defendants' fiduciary status sufficient to withstand a motion to dismiss. He has also identified purported misrepresentations and omissions by Defendants, alleging Defendants misrepresented: (1) the structure of the Plan after the 2006 restructuring; (2) the relationship between CMI's real estate holdings and the Plan's value; and

(3) the status of the CMI liquidation in 2009. (Compl. ¶¶ 32, 44, 49, 56.) Furthermore, Alderfer pleads materiality and reliance in that he claims that he maintained his CMI stock holdings in the Plan based on "limited and confusing information" available to him. (*Id*. at ¶ 46.) These allegations are sufficient to sustain Alderfer's misrepresentation and omission claims.[1]

### D. Failure to Monitor Fiduciary Conduct

Defendants move to dismiss Alderfer's failure to monitor claim on the grounds that this claim is predicated on the viability of deficient prudent management and failure to warn claims. (Defs.' Mot. to Dismiss Compl. 22.) As discussed above, the Court will deny Defendants' motion with respect to these underlying causes of action. Defendants provide no other basis to dismiss Alderfer's failure to monitor claim. The Court will therefore deny Defendants' motion with respect to this claim. *See Stanford*, 2008 WL 3874823, at *8.

## IV. CONCLUSION

The Court will grant Defendants' motion with respect to Count II of Alderfer's Complaint and all claims against the Plan. Defendants' motion will otherwise be denied. An Order consistent with this Memorandum will be docketed separately.

---

[1] Defendants interpret Alderfer's Complaint to include a "failure to provide documents" claim under 29 U.S.C. § 1024(b)(4) based on allegations in his claim under Section 1132(a)(2) that Defendants failed to provide him with certain Plan and CMI documents. (Defs.' Mot. to Dismiss Compl. 23.) Such a claim would properly be brought under 29 U.S.C. § 1132(c). The Court interprets these allegations as supporting Alderfer's misrepresentation and omission claim rather than as an independent claim under Section 1132(c).