## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD ALDERFER AND ALL THOSE SIMILARLY SITUATED CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN, TRUST A, PARTICIPANTS | : : : : : : | |
| Plaintiffs | : : | **Civil Action No. 10-4423** |
| v. | : : | |
| CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003; et al. | : : : : | |
| Defendants | : : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AND FEES

Plaintiffs, Gerald Alderfer and all those similarly situated Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan, Trust A, Participants (collectively "Plaintiffs" or "Class"), by and through their class counsel, Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C. and Bowens & Burns ("Class Counsel"), hereby submit this Memorandum of Law in Support of their Motion for Final Approval of Settlement Agreement. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs request that this Court provide its final approval to the Stipulation of Settlement agreed to between Plaintiffs and Settling Defendants, that this Court enter Judgment, and that this Court order the Settlement to be implemented and completed in accordance with its terms, together with other relief as outlined in the proposed Order and Final Judgment submitted with this Motion.

## I.   **PRELIMINARY STATEMENT**

On or about December 2, 2011, Plaintiff Gerald Alderfer ("Plaintiff Alderfer") and Settling Defendants executed a Stipulation of Settlement ("Settlement") to resolve this ERISA governed breach of fiduciary duty lawsuit  in the total amount of $642,500.00.   Concurrent therewith, Plaintiff Alderfer submitted an Omnibus Motion to this Court, which sought class certification, appointment of a class representative, appointment of class counsel, preliminary approval of the Stipulation of Settlement between Plaintiffs and Defendants and approval of notice ("Notice").   This Omnibus Motion was unopposed and, on December 16, 2011, this Court entered an Order that certified the Class for purposes of settlement, appointed Plaintiff Alderfer as class representative, appointed the law firms of Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C. and Bowens & Burns as Class Counsel, preliminarily approved the Stipulation of Settlement, and approved the proposed Notice.

Pursuant to this Court's Order, Class Counsel, through its Claims Administrator, sent Notice to the Class by first-class mail on December 23, 2011.   A true and correct copy of an Affidavit of the Claims Administrator, Edward J. Sincavage, CPA of the accounting firm of Heffler, Radetich & Saitta, L.L.P., is attached hereto and incorporated herein as Exhibit "1." Only four (4) of the Notices were returned as undeliverable due to apparently inaccurate address information.   Any  undelivered mail was investigated to ascertain another potential address, corrected,  and then re-mailed.

The response to the Settlement by the Class has been positive.  As of this filing, there have been 267 claim forms submitted pursuant to the Settlement, resulting in a claims rate of fifty-nine percent (59%).   Further, no member of the Class has filed any objection to the Settlement.  Indeed, no objections have been filed or received to the Settlement.

## II.    BRIEF FACTUAL BACKGROUND

Plaintiff Alderfer is a former long term employee of Clemens Markets, Inc. ("CMI"), a now defunct Pennsylvania supermarket chain.  CMI maintained a defined contribution benefits plan, which included the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003 ("Plan").  CMI converted the Plan from a traditional pension plan into a 401(k) plan and, in addition to amending the Plan over the years, CMI created and maintained two separate trusts, each with its own set of trustees. Trust A held CMI's company and was known as the Clemens Stock Fund, while Trust B held shares in various mutual funds.

The legal investigation, research, and work that resulted in this litigation started in late December 2009 when Class Counsel met with several Plan participants who were very concered about the status of their investment in the Plan.  Following that meeting, Class Counsel directed a letter to the Plan Administrator seeking information and documentation required by and under ERISA.  It took several letters to the Plan Administrator and the Plan's counsel to secure a response, which basically objected to the production of any information besides the Plan's summary plan description.  Interestingly, and at the same time, the Trustees of Plan A began to meet and all of sudden letters were sent to Plan participants noting thet the Plan would be terminated.  Class Counsel met with the Plan's counsel, who tried to dissuade any further investigation and offered to hire an "independent expert" to review the Plan, however the scope of the review was strictly curtailed.  When the significant efforts to try to address and resolve the Plan participants concerns, which concerns were only heightened by the reaction and actions of the Plan through counsel and its Trustees, failed, Plaintiff Alderfer, alone, stepped up and determined that other action was needed to examine and investigate the Plan.

Plaintiff Alderfer commenced this action on September 1, 2010 pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Plaintiff Alderfer's Complaint alleged, *inter alia*, breach of fiduciary duty claims under ERISA against the Trustees of Trust A ("Settling Defendants") with respect to the handling and monitoring of Trust A's investment in company stock and related disclosures following the sale of CMI that occurred in and was completed in late 2006. Plaintiff Alderfer contended that Settling Defendants failed to prudently monitor and maintain their investment in company stock and take appropriate steps to protect this Plan asset, which resulted in this asset becoming dependent on the significantly decreasing value of CMI-owned real estate, which stock had decreased in value from $3.045 million in 2007 to $1.831 million in March 2010. Moreover, Plaintiff Alderfer alleged that Settling Defendants failed to keep the Plan participants properly informed of the status and nature of their investment in Trust A and even failed to disclose in the Plan's Summary Plan Description that Trust A existed. Plaintiff Alderfer sought damages including restitution in an amount equal to the loss in value of his investment in Clemens Stock Fund and, also, injunctive relief, including corrective action and the removal of the Trustees of Trust A.

Plaintiff Alderfer's Complaint was filed on behalf of all persons in the United States who are or were participants in the Plan since September 1, 2006 and who also held CMI stock as a component of their Plan investment. It was estimated at that time that the class consisted of approximately 500 persons.

All Defendants moved to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) and ERISA, asserting that the facts pled did not meet the strict threshold for an ERISA "stock drop" claim. Plaintiffs, through counsel, vigorously contested

the motion to dismiss.  By Order dated December 23, 2010, this Court granted Defendants' Motion to Dismiss with respect to Plaintiff Alderfer's claims against Defendant, Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003.  This Court also granted the Motion to Dismiss with respect to Count II of Plaintiff Alderfer's Complaint that was brought under 29 U.S.C. § 1132(a)(3).  However, this Court decided  that all of the relief that Plaintiff Alderfer was seeking could be secured under Section 1132(a)(2), which was Count I of the Complaint and, as such, this claim survived the motion to dismiss.  All other aspects of the Motion to Dismiss were denied and the remaining Defendants, namely, Settling Defendants, were ordered to file an Answer within fourteen (14) days.

On February 4, 2011, Settling Defendants filed a Motion for Summary Judgment, and contemporaneously sought a discovery stay.  By Order dated February 17, 2011, the Court denied the Motion for Summary Judgment, and directed that discovery proceed.  During the course of discovery, and after Settling Defendants' production of numerous documents and data in addition to the documents previously produced in connection with the Motion for Summary Judgment, the parties began engaging in arms-length settlement negotiations.  On June 13, 2011, the parties engaged in an in-person settlement meeting at the offices of Settling Defendants' counsel, which meeting failed to result in a settlement.  Thereafter, on June 16, 2011, the parties conducted a follow-up teleconference and orally reached an agreement in principle to settle this matter.

Following this oral agreement, on June 22, 2011, Settling Defendants' counsel submitted a draft settlement agreement for Plaintiff Alderfer's counsel's review.  Following further discussions and revisions pertaining to the terms of the draft settlement agreement, Plaintiff Alderfer and Settling Defendants entered into a Stipulation of Settlement as noted above, to

which this Court provided preliminary approval on December 16, 2011.  Plaintiffs respectfully submit that this Settlement is fair, reasonable and adequate for the Class and that this Court should now give final approval to the Settlement.

## III.    THE SETTLEMENT AGREEMENT

Plaintiffs present this Settlement on behalf of the Class.  The Settlement provides for the creation of a Settlement Fund of $642,500.00 to compensate the Class.  Class members will receive their *pro rata* share of the Settlement Fund after the payment of attorney's fees not to exceed $192,750.00 (which amount is 30% of the Settlement Fund), a minimal $5,000.00 incentive fee to Plaintiff Alderfer (constituting less than 1% of the Settlement Fund), reimbursement of Plaintiff Alderfer's $7,500.00 retainer fee paid to his counsel and administrative and Notice expenses.  Given the claims received, Class Counsel estimates that each member of the Class will receive an estimated per share recovery of $5.26.[1]  See Estimate as prepared by Mr. Sincavage (Exhibit "2").

As part of the Settlement, it is important to note that an independent fiduciary was retained to review and evaluate the Settlement to confirm that it was fair and reasonable, and in accordance with the tenets of ERISA.  Richard S. Waldron, an independent fiduciary of Sterling Financial Advisors, LLC found that the "Settlement is very reasonable and fair and would constitute full recovery by the Plan and the participants."  He therefore approved the Settlement on behalf of the Plan, finding the Settlement met all criteria for Prohibited Transaction Exemption 2003-39 and would not constitute a prohibited transaction under ERISA 406(a).  See copy of Waldron report with supporting exhibits (Exhibit "3").

---

[1] Mr. Sincavage will be available to testify at the Fairness Hearing to discuss, among other things, the method of re-calculation and allocation given the number of claims received before the deadline.

## IV.   LEGAL ARGUMENTS

### A.   Since the Settlement is Fair, Reasonable and Adequate, this Court Should Provide Final Approval.

Because the Settlement is fair, reasonable and adequate, this Court must  grant Plaintiffs' Motion for Final Approval.  It is well-established that before a class settlement agreement is approved, the court must find that the settlement agreement is fair, reasonable and adequate. *See, e.g., Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).  The purpose of this inquiry is "to protect the unnamed members of the class from unjust or unfair settlement." *See Erheart v. Verizon Wireless*, 609 F.3d 590, 592-93 (3d Cir. 2010).  In making this determination the court is to act as a "fiduciary, guarding the claims and rights of the absent class members." *See id.* at 593. *See also Pastrana v. Lane*, No. 08-468, 2012 WL 602141, at *2 (E.D. Pa. Feb. 24, 2012).

The Third Circuit has adopted the following nine-factor test to determine whether a settlement is fair, reasonable and adequate:

> (1)    The complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . .

*Girsh*, 521 F.2d at 157. *See also Krell v. Prudential Insurance Co. of America*, 148 F.3d 283, 317 (3d Cir. 1998).  In the present case, the *Girsh* factors strongly weigh in favor of a finding that the Settlement is fair, reasonable and adequate.

1.    **Complexity, expense and likely duration of the litigation.**

The first *Girsh* factor weighs in favor of final approval of the Settlement.  As this Court

has previously noted, the first *Girsh* factor "aims to capture the monetary costs and time involved

in pursuing the litigation to trial and beyond." *In re Janney Montgomery Scott LLC Financial*

*Consultant Litigation*, No. 06-3202, 2009 WL 2137224, at *8 (E.D. Pa. July 16, 2009).   In the

present matter, the legal issues raised by the parties are complex.  *See, e.g., Mack Trucks, Inc. v.*

*International Union*, No. 07-3737, 2011 WL 4402136, at *3 (E.D. Pa. Sept. 22, 2011) (holding

first *Girsh* factor met in ERISA action raising complex issues).   If this case were to continue,

both parties would be required to incur substantial additional expenses and it is anticipated that

the litigation could potentially last for an extended period.  *See In re AT&T Corp.*, 455 F.3d 160,

166 (3d Cir. 2006) (holding first *Girsh* factor met where case involved "complex legal and

factual issues.").   Indeed, it is apparent, given the Motion for Dismiss and Motion for Summary

Judgment previously filed that absent final approval of the Settlement, a vigorous battle on the

merits would result.  Accordingly, the first *Girsh* factor favors a finding that the Settlement is

fair, reasonable and adequate.

2.    **Reaction of the class to the Settlement.**

With regard to the second *Girsh* factor, this Court has previously recognized that "[t]he

reaction of the class 'is perhaps the most significant factor to be weighed in considering its

adequacy.'"   *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003)

(internal citations omitted).  Furthermore, "[g]enerally, if the class members do not oppose the

class settlement, the court is justified in concluding that they consider it fair and reasonable."

*Lachance v. Harrington*, 965 F. Supp. 630, 645 (E.D. Pa. 1997) (internal citations omitted).

In the instant case, none of the Class members have objected to the Settlement. This Court has held that a lack of any objections from the class members greatly weighs in favor of approving a settlement. *See In re Janney Montgomery Scott*, 2009 WL 2137224, at *8. As a result, the second *Girsh* factor favors a finding that the Settlement is fair, reasonable and adequate.

### 3.    Stage of the proceedings.

Pursuant to the third *Girsh* factor, the court considers "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 813 (3d Cir. 1995). In addition, it has been generally understood by the Third Circuit that settlement agreements made after discovery reflect the true value of the claim. *See Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993). *See also Pastrana*, 2012 WL 602141, at *4 (holding third *Girsh* factor weighed in favor of settlement where settlement agreement informed by extensive discovery). Further, this Court has noted that "[s]ignificant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class." *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995).

Here, the parties agreed to the Settlement only after extensive discovery. Specifically, Settling Defendants produced numerous documents and data in addition to documents previously provided in connection with Settling Defendants' Motion for Summary Judgment. It was only after this extensive discovery, that the parties began to engage in arms-length settlement negotiations. Accordingly, it is clear that the parties had an adequate appreciation as to the merits and value of the case before negotiating. Thus, the third *Girsh* factor favors a finding that the Settlement is fair, reasonable and adequate.

4.    **Risks of establishing liability.**

The fourth *Girsh* factor does not require a court to delve into the merits of each side's arguments. *See In re Janney Montgomery Scott*, 2009 WL 2137224, at *9. On the contrary, the court may "give credence to the estimation of the probability of success preferred by class counsel, who are experienced with the underlying case, and the possible defense which may be raised to their causes of action." *Lachance*, 965 F. Supp. at 638.

While Class Counsel, on behalf of the Class, believes that the claims asserted have considerable merit and are supported through the evidence produced in discovery, Class Counsel is aware of potential problems of proof, as stated in the Settlement. Moreover, Class Counsel is cognizant of the fact that the cause of action for breach of fiduciary duty under ERISA is a complex and still developing area of the law. Accordingly, Class Counsel, on behalf of the Class, has considered the probability of success and has taken into account the uncertain outcome and inherent risk to litigation, particularly in complex litigation. Given the risks faced by the Class, the fourth *Girsh* factor favors a finding that the Settlement is fair, reasonable and adequate.

5.    **Risks of establishing damages.**

The fifth *Girsh* factor, the risks of establishing damages, is often considered in conjunction with the risks of establishing liability and "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re General Motors*, 55 F.3d at 816. *See also Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *14 (D.N.J. July 24, 2006) ("[t]o the extent that establishing damages is contingent upon liability, many of the same risks will be present in each analysis.").

As stated above, despite Class Counsel's belief as to the considerable merit of the Class's claims, Class Counsel is aware of potential problems with establishing proof of Settling Defendants' breach of fiduciary duty under ERISA, which is a complex and still developing area of the law.   Moreover, Class Counsel is cognizant of the expense and length of continuing these proceedings.   Given the risks faced by the Class as it pertains to establishing liability, which is a prerequisite to establishing damages, the fifth *Girsh* factor favors a finding that the Settlement is fair, reasonable and adequate

### 6.   Risks of maintaining a class action.

Regarding the sixth *Girsh* factor, it is well-recognized that "a district court may decertify or modify a class at any time during litigation if it proves to be unmanageable."   *In re Linerboard Antitrust Litigation*, 321 F. Supp. 2d 619, 631 (E.D. Pa. 2004).   In the present case, this factor neither favors a finding as to the fairness, reasonableness and adequacy of the Settlement nor suggests against such a finding.   The Class does not believe that there is a particular issue in this case that would lead the Court to decertify the Class.   Accordingly, the sixth *Girsh* factor is neutral.

### 7.   Ability of Settling Defendants to withstand a greater judgment.

Likewise, the seventh *Girsh* factor is neutral.   It is believed that Settling Defendants could afford to pay an amount greater than the $642,500.00 amount of the Settlement. Nevertheless, this Court has recognized that this factor is of diminished importance where it is likely that the class would face obstacles in establishing liability and damages.   *See In re Janney Montgomery Scott*, 2009 WL 2137224, at *10 (citing *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 150-51 (D.N.J. 2004)).   As a result of the Class's recognition of the potential problems of proof and possible defenses to its claims, the fact that Settling Defendants may be able to

withstand a greater judgment, diminishes the importance of the seventh *Girsh* factor, which is neutral.

> **8.**     **Range of reasonableness of the Settlement in light of best recovery and in light of all attendant risks of litigation.**

The eighth and ninth *Girsh* factors are typically analyzed in conjunction with each other. *See Krell*, 148 F.3d at 322.  These factor requires the court to compare "the present value of the damages plaintiffs would likely recover if successful in litigation, discounting for the risk of not prevailing, against the amount of the proposed settlement."  *In re Janney Montgomery Scott*, 2009 WL 2137224, at *10.  In conducting this analysis, this Court has stated that it is to "give weight to the opinions of experienced attorneys in deciding the fairness of a settlement compared to the likely recovery at trial."  *Orloff v. Syndicated Office Systems, Inc.*, No. Civ.A.00-CV-5355, 2004 WL 870691, at *7 (E.D. Pa. Apr. 22, 2004).

In this case, the Settlement provides an excellent result for the Class, providing a Settlement Fund in an aggregate amount of $642,500.  The fairness of this result is evidenced by the fact that not one member of the Class has objected.  Considering the risks inherent in this litigation, it is apparent that the Settlement is both reasonable in light of the best possible recovery and in light of all attendant risks of the litigation.

Based on the above analysis of each of the *Girsh* factors, the Settlement is fair, reasonable and adequate.  It is, therefore, respectfully requested that this Honorable Court grant Plaintiffs' Motion and provide final approval of the Settlement.

> **B.**     **The Notice Provided to Class Members was Appropriate.**

Since the Notice was appropriate and in accordance with the Federal Rules of Civil Procedure, this Court should provide final approval.  Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), a court "must direct notice in a reasonable manner to all class members who would

be bound by a proposed settlement, voluntary dismissal or compromise." In addition, with regard to classes certified under Rule 23(b)(1)(A), Federal Rule 23(c)(2)(A) provides that a district court, in its discretion, "may direct appropriate notice to the class." With respect to what is appropriate notice, it has been held that "the notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). However, the advisory committee notes to Federal Rule 23 explain that as it pertains to notice required for classes certified under Rule 23(b)(1)-(2), the district court is provided with "discretion and flexibility." This is because, unlike in classes certified under Federal Rule 23(b)(3), there is no right to request an exclusion from the settlement, rendering notice less significant.

In this case, the Court directed Class Counsel, within ten (10) days from the December 16, 2011 Order, to mail the Notice by first-class mail, postage prepaid to the last known address of each member of the Class who could be identified by reasonable effort. Class Counsel undertook such efforts, as Notice was mailed out on December 23, 2011, and only four (4) of the Notices were returned as undeliverable. Thereafter, efforts were taken to ascertain current addresses and the Notices were once again delivered. Given the success in delivery of the Notices, it is believed that the Notice proposed by Plaintiff and the efforts undertaken to deliver the Notice was compliant with the Federal Rules of Civil Procedure. Further, the settlement proceeds have already been delivered pursuant to an Escrow Agreement dated February 1, 2012, attached hereto as Exhibit "4," under which the Claims Administrator serves as Escrow Agent. Accordingly, this Court should enter an Order providing final approval of the Settlement.

### C.    Class Counsel Adequately Represented the Class.

The Class has been more than adequately represented by Class Counsel in this matter. Under Fed. R. Civ. P. 23(g), the following factors are considered as to the adequacy of class counsel: "the work counsel has done in identifying or investigating potential claims in the action; . . . counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; . . . counsel's knowledge of the applicable law; and . . . the resources that counsel will commit to representing the class."

In this case, Edward Rubin, Esquire, Steven B. Barrett, Esquire and Michael J. Burns, Esquire, collectively served as Class Counsel. Each of these attorneys has extensive experience in complex litigation, class actions and ERISA. Class Counsel expended a tremendous amount of time and energy in bringing this case to its present posture. Moreover, Class Counsel provided considerable resources in representing the class. Thus, this Court should find that Class Counsel provided adequate representation to the Class and should provide final approval of the Settlement.

### D.    The Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved.

Since the plan of allocation of the Settlement Fund is fair, reasonable and adequate, this Court should provide final approval. This Court has held that "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole:  the distribution plan must be fair, reasonable and adequate." *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 WL 1101272, at *7 (E.D. Pa. Apr. 11, 2007) (citing *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). Further, "[i]n general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.*

In the present case, the plan of allocation reimburses members of the Class based on the type and extent of their injuries. Each Class member is reimbursed on a *pro rata* basis as determined by the number of shares of CMI stock held. Accordingly, this Court should grant Plaintiffs' Motion and provide final approval of the Settlement.

**E.     The Attorneys' Fees, Incentive Fee and Expenses are Fair and Reasonable and Should be Approved.**

Lastly, the attorneys' fees, incentive fee to Plaintiff Alderfer and expenses are fair and reasonable and should be approved. Each item will be addressed in turn. However, to give context to this request, it is important to understand the contingency nature in this matter. As noted above, while Class Counsel met and discussed concerns about the status of the Plan with several Plan participants, all of the Plan participants except for Plaintiff Alderfer were unable to and chose not to fund any investigation and this lawsuit. The Plan participants had been informed of the significant risks in pursuing this case, were aware that it would involve considerable time and expense, were aware that it was a complex case and that they would be fighting against a significant, well-funded foe, were aware that the information and documentation was limited and within the control of the Defendants, and so, given the risks and the potential significant expense, the Plan participants were simply unable to fund this agreement. Plaintiff Alderfer was still concerned about the Plan handling and so he wished to continue, however, he did not have the financial means to fund the case. As a result, and after much consideration, it was agreed that an effort would be undertaken to pursue this matter and file a lawsuit and that the attorneys, Class Counsel, would bear the complete risk of the case via the use of a contingent fee arrangement. See engagement letter dated August 10, 2010 (Exhibit "5").

### 1.      The attorneys' fees are fair and reasonable.

The attorneys' fees set forth in the Settlement, namely, an amount of thirty percent (30%) of the Settlement Fund, or $192,750.00, are fair and reasonable.  Under Fed. R. Civ. P. 23(h), it is provided that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  It is incumbent upon the party requesting attorneys' fees to demonstrate the reasonableness of its request.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In the Third Circuit, in class actions, courts either calculate attorneys' fees based upon the lodestar method (multiplying number of hours reasonably worked by a reasonable hourly rate) or the percentage-of-recovery method.  *See In re Janney Montgomery Scott*, 2009 WL 2137224, at *13.  The percentage-of-recovery method, which is being utilized in the present case, is appropriate, as here, when the fee is to be paid from a common fund.  *See Lake*, 900 F. Supp. at 734.

In determining the reasonableness of a request for fees under the percentage-of-recovery, courts in the Third Circuit consider seven (7) factors:  (1) the size of the fund created and number of persons benefitted;  (2) the existence of substantial objections by class members to the settlement terms and fees requested by counsel;  (3) the skill and efficiency of the attorneys involved;  (4) the complexity and duration of litigation;  (5) the risk of nonpayment;  (6) the amount of time devoted to the case by class counsel; and (7) awards in similar cases.  *See Nichols v. SmithKline Beecham Corp.*, No. Civ.A. 00-6222, 2005 WL 950616, at *20 (E.D. Pa. Apr. 22, 2005).  These factors, though need not be applied in any formulaic way and weight may vary on a case-by-case basis.  *See In re Janney Montgomery Scott*, 2009 WL 2137224, at *14.

Here, the thirty percent (30%) recovery of attorneys' fees is fair and reasonable.  This Court has previously recognized the thirty percent (30%) fee amount in cases involving more substantial funds than that in the present matter.  *See id.* (commenting that "[a]s a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases" and awarding thirty percent (30%) fee award out of $2,880,000.00 settlement fund); see also Miller, Geoffrey and P. Eisenberg, Theodore, *Attorney Fees in Class Action Settlements: An Empirical Study* (2005). New York University Law and Economics Working Papers. Paper 2 ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases. But evidence also suggests that the one-third fee is not as dominant as is widely believed. Some regard one-third as a floor as well as a standard, with contingency fees often exceeding this percentage. Kritzer, however, found that ex post downward adjustments from a one-third fee are also common. Taken as a whole, the evidence suggests that one-third is the benchmark for privately negotiated contingent fees, but that significant variation up and occasional variation down exist as well)  *Id.* at page 35 (footnotes omitted).

Moreover, as previously noted, no Class members have objected to the Settlement, which Settlement includes the request for attorneys' fees.  Additionally, Class Counsel possesses extensive experience in complex litigation, class action matters and ERISA matters and has devoted a tremendous amount of time to bring this case to its present posture[2].  Accordingly, this Court should find that the request by Class Counsel for thirty percent (30%) of the Settlement Fund is reasonable and should provide final approval.

---

[2] If applying the Lodestar method, the total attorney's fees would amount to $165,997.5, which is in accord with the 30% fee amount. See Affidavit of Michael Burns, Esquire and time sheets of Bown & Burns and Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C. (Exhibit "6").

### 2.   The incentive fee to Plaintiff Alderfer is fair and reasonable.

The incentive fee to Plaintiff Alderfer set forth in the Settlement, namely, an amount of $5,000.00 is fair and reasonable and should be approved. This Court has previously recognized the authority to provide for an incentive award to a named plaintiff in a class action. *See, e.g., In re Linerboard Antitrust Litigation*, No. MDL 1261, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004). In particular, this Court has approved incentive fees substantially in excess of that sought in the present case. *See id.* (approving $25,000.00 incentive fee). *See also Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) (approving $20,000.00 incentive fee). As such, this Court should approve the incentive fee amount of $5,000.00 to Plaintiff Alderfer.

### 3.   Reimbursement of other expenses are fair and reasonable.

Lastly, the other expenses sought from the Settlement Fund are fair and reasonable. Specifically, Plaintiffs seek reimbursement of Plaintiff Alderfer's retainer fee in the amount of $7,5000.00 previously paid to Class Counsel, the administrative expenses pertaining to the providing of Notice, and collective costs which amount to $7,197.06 There is no objection to such requests nor any indication that such amounts are in any way unreasonable. As such, this Court should approve these other expenses set forth in the Settlement.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully requested that this Honorable Court grant Plaintiffs' Motion for Final Approval of Settlement Agreement in its entirety.

_____
Steven B. Barrett
HAMBURG, RUBIN, MULLIN,
    MAXWELL & LUPIN, P.C.
375 Morris Road
Lansdale, PA 19446
(215) 661-0400


_____
Michael J. Burns
BOWENS & BURNS
530 Street Road
Southampton, PA 18966
(215) 322-9030

*Co-Lead Class Counsel*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GERALD ALDERFER AND ALL THOSE    :
SIMILARLY SITUATED CLEMENS       :
MARKETS, INC. RETIREMENT         :
SAVINGS AND PROFIT SHARING PLAN, :
TRUST A, PARTICIPANTS            :
                                 :
                    Plaintiffs   :        Civil Action No. 10-4423
                                 :
                                 :
     v.                          :
                                 :
CLEMENS MARKETS, INC.            :
RETIREMENT SAVINGS AND           :
PROFIT SHARING PLAN 003; et al.  :
                                 :
                    Defendants   :
                                 :

## CERTIFICATE OF SERVICE

I, Steven B. Barrett, Esquire, hereby certify that a true and correct copy of the foregoing

document was served on the date below via the court's electronic filing system, on the following:

Barak A. Bassman, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN

By: _____
        STEVEN B. BARRETT

Date: March 14, 2012

{00923593;v1 }

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD    ALDERFER    AND    ALL THOSE SIMILARLY SITUATED CLEMENS MARKETS, INC. RETIREMENT SAVINGS   AND   PROFIT   SHARING PLAN, TRUST A, PARTICIPANTS : : : : : : : : | |
| Plaintiffs : | **Civil Action No. 10-4423** |
| v. : | <u>CLASS ACTION</u> |
| CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003; et al. : : : : | |
| Defendants : : | |

<u>**AFFIDAVIT OF EDWARD J. SINCAVAGE REGARDING DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS**</u>

I, Edward J. Sincavage, being first duly sworn according to law, depose and say as follows:

1.      I am a partner in the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P. ("HR&S"), the main offices of which are at Suite 1700, 1515 Market Street, Philadelphia, Pennsylvania 19102.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, I could and would competently testify to these matters under penalty of perjury.

2.      HR&S performed the services listed herein under my supervision under the direction of Class Counsel relating to preparation, printing and dissemination of the

"Notice of Class Action Determination and Proposed Settlement" dated December 23, 2011, along with the "Claim Form" (the "Notice and Claim"). A copy of the Notice and Claim form is attached hereto as Exhibit A.

3.    HR&S received two listings from Counsel. The first listing contained the names of participants with a balance as of November 19, 2010. The second listing contained the names and addresses of 452 participants during the period September 1, 2006 through November 19, 2010.

4.    HR&S compiled the above address records into a database and electronically sent the 452 names and addresses described above to a licensee of the United States Postal Service ("USPS") to request updated mailing addresses based on the USPS's National Change of Address ("NCOA") database. Each record for which we received an updated address had the new address incorporated into our database, which was used in the mailing described below. We routinely go through this process with the USPS when we administer class action settlements.

5.    Each of these 452 name and address records was printed onto a label and affixed to an envelope. A personalized Claim form was also printed for each potential Class Member contained in the mailing list. HR&S then inserted a personalized Claim form and a Notice into the addressed envelope and mailed the addressed envelopes via first class mail on December 23, 2011.

6.    Of the 452 Notice and Claim forms mailed, HR&S received a total of 4 undeliverable Notice and Claim forms through March 2, 2012. Each of these undeliverable forms was researched through Lexis/Nexis and/or Equifax and a new

address was found.  The 4 undeliverable Notice and Claim forms were all mailed to updated addresses and have not been returned as undeliverable a second time.

     7.    HR&S has received a total of 266 Claim forms through March 2, 2012.


                                   *Edward J Sincavage*
                                  EDWARD L SINCAVAGE, CPA

Sworn to and subscribed before me
this 7th day of March 2012

*Andrea J. Monaghan*

NOTARIAL SEAL
Andrea J Monaghan
NOTARY PUBLIC
City of Philadelphia, Philadelphia County
My Commission Expires 10/06/2014

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD ALDERFER AND ALL THOSE SIMILARLY SITUATED CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN, TRUST A, PARTICIPANTS | : : : : : : | |
| Plaintiffs | : : | **Civil Action No. 10-4423** |
| v. | : : : | CLASS ACTION |
| CLEMENS MARKETS, INC. RETIREMENT SAVINGS AND PROFIT SHARING PLAN 003; et al. | : : : : : | |
| Defendants | : : | |

## NOTICE OF CLASS ACTION DETERMINATION AND PROPOSED SETTLEMENT

**WHY WAS I SENT THIS NOTICE:** You have been mailed this Notice because you were a participant in the Clemens Markets, Inc. 401(k) Plan, Trust A, which Plan held Clemens Markets, Inc. stock as a part of your investment in this Plan since September 1, 2006. Although you may no longer be a participant or maintain an account in this 401(k) Plan, and although the Plan has been terminated and no longer owns any Clemens Markets, Inc. stock, you may be entitled to share in a sum of money that may be paid to you as part of a proposed settlement. Please read the rest of this Notice to learn how you may recover that share for you and to learn about submitting a claim or objecting to the settlement.

**WHAT IS THIS LAWSUIT ABOUT:** The lawsuit claims that the Defendants, Jack Clemens; Robert Derstine; Robert M. Lavin; Gerald R. Spencer; and Douglas C. Moyer, who were Trustees of the Clemens Markets, Inc. 401(k) Plan, Trust A, breached certain fiduciary duties under the Employee Retirement Income Security Act (ERISA). The lawsuit alleged breach of fiduciary duty under ERISA with respect to the handling and monitoring of the Plan's investment in Clemens Markets, Inc.'s stock and failure to take appropriate steps to protect this Plan's assets, which resulted in Clemens Markets, Inc.'s stock becoming dependent on a significantly decreasing value of real estate owned by Clemens Markets, Inc. The lawsuit further alleged that the Trustees of the Plan failed to keep Plan participants, such as yourself, properly informed of the status and nature of your investment in Clemens Markets, Inc.'s stock. Finally, the lawsuit claims damages for the loss of value of your investment in the Clemens Markets, Inc. stock fund.

Defendants, Clemens, Derstine, Lavin, Spencer and Moyer, as Trustees of the Plan, deny these claims and allegations, deny that they had committed any violations of ERISA or any other law, assert that such claims and allegations are unfounded and without merit, and deny all

charges of wrongdoing or liability. Defendants further deny that the participants in the Plan suffered any damage for which they are responsible.

Counsel for the Class, and counsel for the Trustees have agreed to a proposed settlement of the lawsuit, the terms of which are summarized in this Notice. On December 15, 2011, the Court preliminarily approved the settlement of the lawsuit. The Court also conditionally certified the following "Class" for settlement purposes:

> Excluding Defendants, all persons located in the United States who are or were participants in the Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003, Trust A, since September 1, 2006, who held Clemens Markets, Inc. stock as a component of their investment in this Plan.

The Court ruled that this Notice should be sent out to all members of the Class. The Court did not rule on any of the parties' claims. This Notice is not to be understood as an expression of any opinion by the Court as to the merits of any of the claims or defenses asserted by either side.

**WHAT IS THE SETTLEMENT**: The terms of the settlement, which will become effective only if approved by the Court, are set forth in detail in the Settlement Agreement dated December 2, 2011, which has been filed with the Court. The principal terms and conditions of the Settlement Agreement are summarized below:

The Defendant Trustees have agreed to pay Six Hundred Forty-Two Thousand Five Hundred Dollars ($642,500.00) to settle all claims for persons who owned Clemens Markets, Inc. stock, either directly or indirectly, in their individual Plan accounts. From this amount, it would be necessary to pay attorneys' fees, as approved by the Court, costs of administration, a Five Thousand Dollar ($5,000.00) contribution toward the cost of an independent fiduciary, cost of printing and mailing these Notices, Court costs and reimbursement of costs due Hamburg, Rubin, Mullin, Maxwell & Lupin and Bowen & Burns, and reimbursement to Plaintiff, Gerald Alderfer, who paid the initial retainer fee to the attorneys of Seven Thousand Five Hundred Dollars ($7,500.00), and a Five Thousand Dollar ($5,000.00) incentive award to Mr. Alderfer, as Class Representative, which amount has to be approved by the Court. If all holders of shares are found and participate, they will receive six dollars and eighty-two cents ($6.82) (reduced by attorneys' fees, expenses and costs) for each share of Clemens Markets, Inc. stock that the Plan owned and that was allocated to your account.

In order to determine the number of shares of Clemens Markets, Inc. stock that your Plan account owned as of the date of termination of the Plan on September 30, 2010, multiply the number of units of Clemens Stock Fund that you held on that date times 2.61695 (the conversion factor). For any Class Member who received a distribution before the Plan termination date (September 30, 2010), please contact (Notice Administrator) for the conversion factor to use to determine the number of shares of Clemens Markets, Inc. stock.

2

You are **NOT** personally responsible to pay attorneys' fees, fiduciary fees, incentive fees or other costs or expenses in connection with the settlement. Any such fees or costs will be awarded by the Court and will be deducted from the settlement fund.

**HOW WILL THE SETTLEMENT FUND BE DISTRIBUTED:** If the settlement is approved by the Court and becomes effective, the Settlement Fund, after the deduction of Court approved fees and expenses, will be distributed on a per share basis to members of the Class who are found and have filed accepted Proof of Claim Forms ("Claim Form"). It is possible, but not probable, that each share of stock will receive more than Six Dollars and Eighty-Two Cents ($6.82) per share (less attorneys' fees, expenses and costs) if stockholders owning less than 94,147.637 shares are not found or fail to submit valid Claim Forms. Then the Class Members would share any excess money available in the Settlement Fund that was not claimed by persons participating in the Plan, on a pro rata basis.

**HOW DO I SUBMIT MY CLAIM FORM:** The Claim Form is attached to this Notice. To submit a claim and be eligible to share in the Settlement Fund, you must complete and mail the Claim Form to the address set forth on the Claim Form. The Claim Form must be postmarked on or before February 21, 2012.

**WHAT CLAIMS AM I RELEASING:** If the settlement is approved, you will release your claims under the Employment Retirement Income Security Act (ERISA) for breach of fiduciary duty by the Trustees with respect to the handling and monitoring of the Plan's investment in Clemens Markets, Inc. stock. If approved by the Court, every member of the Settlement Class will be bound to the settlement and Release. The terms of the Release would permanently bar and enjoin every member of the Settlement Class, and every member of the Settlement Class' predecessors, successors, agents, representatives, attorneys and affiliates, and any heirs, executors, administrators, successors and assigns from asserting, instituting or bringing any cause of action against the Defendant Trustees in state of federal court. If the Court approves the settlement and enters an Order and Final Judgment, then every member of the Settlement Class shall be deemed to have fully, finally and forever released, relinquished and discharged all of the Defendant Trustees for all claims, whether they be currently unsuspected, unknown or partially known, even if the Releasor does not know or did not know or suspect to exist, a claim in his or her favor at the time of executing the Release, which if had been known by him or her, would or may have materially affected a settlement with the Defendant Trustees.

**HOW CAN I STAY IN THE CLASS AND SHARE IN THE SETTLEMENT FUND:**

If you are a member of the Class, you need not do anything if you desire to remain a member. You will share in the Settlement Fund proceeds, provided you complete and mail a Proof of Claim form to the address set forth in the Claim Form. The Proof of Claim Form is attached to this Notice. **YOU HAVE A RIGHT TO OBJECT TO THE SETTLEMENT, BUT YOU CANNOT BE EXCLUDED FROM THE CLASS IF THE SETTLEMENT IS APPROVED BY THE COURT.** If you do not object to the settlement: (1) you may share in the proceeds of the Settlement Fund; (2) your rights in this litigation will be represented by Class Counsel; and (3) you will be bound by the judgment entered in this litigation, whether favorable or not.

Class Counsel are:

Michael J. Burns, Esquire          Steven B. Barrett, Esquire
BOWEN & BURNS                      HAMBURG, RUBIN, MULLIN,
530 Street Road                      MAXWELL & LUPIN, P.C.
Southampton, PA  18966             375 Morris Road
                                   Lansdale, PA  19446

If you wish, you may enter an appearance in the lawsuit through your own counsel at your own expense.  As a member of the Class, you will not be personally responsible for any attorneys' fees or costs of litigation or expenses of administering the Settlement Fund, unless you retain your own counsel, in which case you may be responsible for his or her fees.

**In order to share in the Settlement Fund, you must completed and mail your Proof of Claim Form to the address set forth in the Claim form by February 21, 2012. The Proof of Claim Form is attached to this Notice.**

**HOW ARE ATTORNEYS' FEES AND EXPENSES PAID:** In connection with the Settlement, Class Counsel will ask the Court to pay attorneys' fees, expenses and an incentive award of Five Thousand Dollars ($5,000.00) to the Class Representative from the Settlement Fund.  In addition, Class Counsel will ask the Court to reimburse from the Settlement Fund a retainer fee of Seven Thousand Five Hundred Dollars ($7,500.00) which was paid by Gerald Alderfer, the Class Representative.  Class Counsel have pursued this litigation and have advanced expenses to the Plaintiff and the Class, without receiving any compensation for their services.  They have done so on the understanding that, if they obtained a recovery, their expenses would be reimbursed and they would receive fees from the Fund recovered.  Class Counsel will apply for an award of attorneys' fees and expenses.  The attorneys' fees requested shall not exceed the sum of One Hundred Ninety-Two Thousand Seven Hundred Fifty Dollars ($192,750.00) which is 30% of the total recovery, plus the incentive award for the Class Representative, reimbursement of retainer fee to the Class Representative, court costs, Five Thousand Dollars ($5,000.00) cost toward the fee of the independent fiduciary, and costs of administration, which include printing, mailing, notice, preparation of tax forms, withholding of taxes, accounting and mailing of settlement checks to each Class Member.

**WHEN AND WHERE IS THE SETTLEMENT/FAIRNESS HEARING:** The Court has directed that a Settlement Hearing (Fairness Hearing) on the proposed settlement be held before the Honorable Berle M. Schiller, of the United States District Court, in Room 13613, at the United States Courthouse, 601 Market Street, Room 13613, Philadelphia, Pennsylvania 19106 on March 16, 2012, commencing at 10:00 a.m. to determine whether the proposed settlement is fair, reasonable and adequate and should be approved, and to consider related matters, including the fairness of the proposed plan of distribution of the Settlement Fund, the application of Class Counsel for an award of attorneys' fees and reimbursement of expenses, and the request for an incentive award to the named plaintiff.  Without further written notice to the Class, the Court may adjourn and reconvene the Settlement Hearing from time to time by oral announcement.  Also, without further notice, the Court may approve the Settlement Agreement and the plan for distribution with or without modification and may enter, accordingly, a Final Order and Judgment dismissing this action as to the settling Defendant Trustees.

4

**RIGHT TO BE HEARD:**  Any Class Member may appear at the Settlement Hearing in person or by counsel, if an appearance is filed and served as hereinafter provided, and be heard to the extent allowed by the Court in support, or in opposition to, the settlement, the proposed plan of distribution, the request for an award of attorneys' fees and reimbursement of expenses or the request for an incentive award to the named plaintiff.  However, no person shall be heard in opposition thereof and no papers or briefs submitted by any such person will be accepted or considered unless, on or before February 15, 2012, such person:  (a) has filed with the Clerk of this Court a Notice of Intention to Appear, together with a statement of the basis for opposition or objection and any supporting documentation, including evidence indicating that he or she is a member of the Class; and (b) has served copies of such notice, statement and documentation, together with copies of any other papers or briefs filed with the Court, either in person or by mail, upon the following counsel:

Michael J. Burns, Esquire
BOWEN & BURNS
530 Street Road
Southampton, PA  18966

Steven B. Barrett, Esquire
HAMBURG, RUBIN, MULLIN,
   MAXWELL & LUPIN, P.C.
375 Morris Road
Lansdale, PA  19446

Unless the Court otherwise directs, no Class Member shall be entitled to object to the approval of the settlement, the plan of distribution, the request for any award of attorneys' fees and expenses, the request for an incentive award, the judgment to be entered herein, or otherwise to be heard, except by serving and filing written objections, as described above.  Any person who fails to object in the manner provided above shall be deemed to have waived such objection and shall be forever barred from raising such objection in this or in any other proceeding concerning the settlement.

**ADDITIONAL INFORMATION:**  This Notice contains a summary of the litigation, the proposed settlement, and related matters.  For more detailed information, you or your attorney may examine the Settlement Agreement, as well as the pleadings and other documents filed in this action at the Office of the Clerk of the Federal Court for the Eastern District of Pennsylvania located at 601 Market Street, Philadelphia, Pennsylvania 19106, during regular business hours.

Inquiries may be directed, in writing, to Class Counsel, at the addresses shown above.  You may also wish to consult with your own attorney, at your own expense.

Dated: December 23, 2011

*Gerald Alderfer, et al. v Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003, et al.*

**Class member name and address**

## CLAIM FORM

### INSTRUCTIONS FOR COMPLETING CLAIM FORM

<u>All</u> Class Members <u>must</u> complete this Claim Form. Eligibility to receive settlement payments will be determined in accordance with the terms of the Settlement Agreement, as described in the enclosed *Notice of Class Action Determination and Proposed Settlement* summarizing the terms of the settlement as well as the information you provide on the Proof of Claim Form.

Your completed Claim Form must be mailed to the following address and must **be postmarked no later than February 21, 2012.**

> **Alderfer v Clemens Markets, Inc. Retirement Plan, et al.**
> **P.O. Box 58994**
> **Philadelphia, PA 19102-8994**

If you have any questions about this Claim Form, please call the Settlement Administrator at 1-877-852-8873. You may also want to consult with your financial or tax advisor.

---

**IMPORTANT INFORMATION ON COMPLETING THE CLAIM FORM**

Please read the Notice and Claim Form entirely as your decision may affect the taxability of any payment you receive, if you are due a payment from the settlement.

All Class Members **must** complete Section One –Information About You and Section Three-Signature, Substitute W-9 Form and Certification in their entirety.

All Class Members must select only **one** of the two disbursement options listed in Section Two:

Option 1:  Check the box and complete this section if you choose to receive any applicable settlement payment directly by requesting that a check be made payable to you personally. If you choose this option, do not complete Option 2's informational request or questions 7 and 8.

Option 2: Check the box and complete this section if you want to elect a direct Rollover of the settlement payment to either an IRA or a qualified employer-sponsored plan. If you choose this option, you must also complete the applicable additional information requested in either question 7 or 8. If you choose this option, do not complete Option 1's informational request.

---

1

**SECTION ONE – INFORMATION ABOUT YOU**

1.    Person who worked for Clemens Markets, Inc. as an employee

_____     _____     _____
Full Name                                      Date of Birth              Social Security Number

2.    Is the person identified in response to Question No. 1 still living? Yes ____ No ____

If your answer is "No", provide the following information:

Date of Death _____

Full name of Clemens Markets, Inc. 401(K) Plan Beneficiary _____

_____

Please check one of the following regarding the Plan Beneficiary:

☐    The Plan Beneficiary is the surviving spouse of the person identified in response to Question No. 1 (**"the Spouse Beneficiary"**).

☐    The Plan Beneficiary is not the surviving spouse of the person identified in response to Question No. 1 (**"the Non-Spouse Beneficiary"**).

3.    If you are completing this form as an alternate payee under a Qualified Domestic Relations Order ("QDRO") applicable to the Clemens Markets, Inc. 401(K) Plan, please indicate if you are a:

☐    spouse/former spouse

☐    child/dependent

Full name of the Alternate Payee _____

4.    Is the address shown in the mailing label on page 1 of this Claim Form your correct address?  If not, please make corrections in the space provided beside the mailing label on page 1.

5.    Your Telephone Number

Day: _____
Evening: _____

6.    Your Email address: _____

2

**SECTION TWO -- PAYMENT ELECTION**

As explained more fully in *Notice of Class Action Determination and Proposed Settlement* sent with this Claim Form, if you are a Class Member who is entitled to a settlement payment, the amount of that payment has not yet been calculated. The payment is conditioned on your meeting the eligibility requirements under the Settlement Agreement and the Settlement Agreement receiving final court approval that is not reversed or modified on appeal.

If you are a Class Member (other than a Non-Spouse Beneficiary) who is entitled to a settlement payment you can choose to receive your payment either (1) by check payable to you personally, or (2) as a direct "rollover" to either a traditional Individual Retirement Account/Annuity ("IRA") that you have established, or to a qualified employer plan *provided that the other employer plan will accept this rollover contribution.* For both types of direct rollover, a check will be delivered to you but made payable to the financial institution (such as a bank or mutual fund company) that acts as the Trustee, Custodian, or Issuer of your IRA or the qualified employer plan that will accept your rollover contribution. (If you are a child/dependent payee under a QDRO, you do not have a right to rollover the payment.)

If you are a Class Member who is a Non-Spouse Beneficiary who is entitled to a settlement payment you can choose to receive your payment either (1) by check payable to you personally, or (2) as a direct "rollover" to a traditional Individual Retirement Account/Annuity ("IRA") that you have established.

**IMPORTANT TAX NOTE REGARDING DIRECT SETTLEMENT PAYMENTS TO CLASS MEMBERS: Under Internal Revenue Service rules, direct payments to Class Members (other than Non-Spouse Beneficiaries or child/dependent payees under QDROs) are taxable and 20% of the settlement payment must be withheld as an advance payment of the tax due on this payment. Under Internal Revenue Service rules, direct payments to Class Members who are Non-Spouse Beneficiaries (or child/dependent payees under QDROs) are taxable and 10% of the settlement payment must be withheld as an advance payment of the tax due on this payment unless they elect no federal tax withholding below. (State tax withholding may also apply to direct payments to any Class Member.) In contrast, direct rollovers to an IRA or an employer plan are not immediately taxable and are not subject to federal income tax withholding. If payment is made directly to a Class Member under 59½ years of age and not directly deposited into an IRA or qualified plan, a 10% withholding will be deducted as a 10% penalty for early distribution.**

Please check only *one* of the following payment options (although your election will only be processed if it is determined you are entitled to a settlement payment):

OPTION 1 - **DIRECT PAYMENT TO YOU**

☐ CHECK THIS BOX IF YOU WANT TO RECEIVE YOUR SETTLEMENT PAYMENT BY CHECK PAYABLE TO YOU PERSONALLY. COMPLETE THE STATE TAX WITHHOLDING ELECTION BELOW IF YOU WANT ANY OPTIONAL STATE

3

INCOME TAX WITHHELD FROM YOUR PAYMENT. IF YOU REQUEST A CHECK PAYABLE TO YOU PERSONALLY AND YOU ARE UNDER 59 1/2 YEARS OF AGE, A 10% WITHHOLDING WILL BE DEDUCTED AS A 10% PENALTY FOR EARLY DISTRIBUTION. IF YOU CHECK THIS BOX, YOU DO **NOT** NEED TO COMPLETE QUESTIONS 7 OR 8.

***Optional* State Tax Withholding Election**

In addition to any mandatory federal and state income tax withholding that otherwise applies to a direct payment to me (i.e., a check payable to me personally), I would like:

An additional $_____ or _____% withheld for _____
Income Tax.                                    (names of state where you reside)

**Applicable only to Non-Spouse Beneficiaries or Child/Dependent Payee under a QDRO:  Federal Tax Withholding Election**

If you are a Non-Spouse Beneficiary or a child/dependent payee under a QDRO receiving a settlement payment in the form of a check made payable to you personally, it will be subject to 10% federal income tax withholding, unless the box below is checked:

☐     I elect no federal income tax withholding.  I understand that the payment is taxable if received by me and I am liable for tax penalties if insufficient withholding/estimated tax payments have been made.

_____          _____
Signature                                                  Date


**OPTION 2 - PAYMENT TO BE ROLLOVERED INTO AN IRA OR EMPLOYER PLAN**

☐     CHECK THIS BOX IF YOU WANT TO ELECT A DIRECT ROLLOVER OF THE SETTLEMENT PAYMENT TO EITHER:

       (I)     AN IRA, YOU MUST COMPLETE ALL PARTS OF QUESTION 7 BELOW; OR

       (II)    ANOTHER QUALIFIED EMPLOYER PLAN, YOU MUST COMPLETE ALL PARTS OF QUESTION 8 BELOW.

7.     To arrange a **rollover** of your settlement payment to **an IRA** that you have already established, provide the following information.  By completing this part of the Claim Form you are directing that your settlement payment be distributed to you in this way: the check will be made payable to the financial institution identified in 7a below, but the check will be sent to you and *you will be responsible for delivering the check to the*

*financial institution to be placed in your IRA.* (This option is **not** available to Class Members who are child/dependent payees under QDROs.

    a.    Full name of the financial institution (such as a bank or mutual fund company) that acts as the Trustee, Custodian, or Issuer of your IRA: _____

_____

    b.    The full account number for your IRA _____

8.    To arrange a **rollover** of your settlement payment to **a qualified employer-sponsored plan**, provide the following information. *(Be sure to first confirm with the administrator of that plan that the plan will accept the rollover contribution. If you elect a rollover to that plan but it turns out that it will not accept a rollover, receipt of your settlement payment will be delayed.)* By completing this part of the Claim Form you are directing that your settlement payment be distributed to you in this way: the check will be made payable to the trustee of the plan identified in 8a below, but the check will be sent to you and you *will be responsible for delivering the check to the plan trustee to be placed in your account.* This option is only available if you are a qualifying Class Member other than a Non-Spouse Beneficiary. (This option is **not** available to (a) Class Members who are Non-Spouse Beneficiaries and (b) Class Members who are child/dependent payees under QDROs.)

    a.    Full legal name of the qualified employer plan that will receive your rollover contribution: _____

    b.    Name of employer: _____

    c.    The full account number for your plan account (optional – check with your plan administrator to determine whether an account number is required):

_____

## SECTION THREE – SIGNATURE, SUBSTITUTE W-9 FORM AND CERTIFICATION

### Request for Taxpayer Identification Number

YOU MUST ENTER YOUR TAXPAYER IDENTIFICATION NUMBER AND SIGNATURE BELOW IN THE APPROPRIATE PLACE.

Social Security Number \_\_\_ \_\_\_ \_\_\_-\_\_\_ \_\_\_-\_\_\_ \_\_\_ \_\_\_ \_\_\_

Please enter here the name of the taxpayer whose identification number is written above as it exactly appears in the records of the Social Security Administration or the Internal Revenue Service:

_____
**(Print your FIRST NAME, MIDDLE INITIAL OR NAME, and LAST NAME)**

☐    Check here if you are a U.S. Taxpayer with a foreign mailing address.

I certify that I am **NOT** subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am exempt from backup withholding, or (b) I have not been notified by the I.R.S. that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the I.R.S. has notified me that I am no longer subject to backup withholding. NOTE: If you have been notified buy the I.R.S. that you are subject to backup withholding, please strike our the language that your are not subject to backup withholding in the certification above.

      NOTE: If you need the Instructions sheet for Completing Substitute Form W-9, please make a written request to us at the address indicated below. Your accountant should also be able to provide you with the Instructions. Or you can obtain the Instructions at the IRS website, www.irs.gov.

UNDER PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, I CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS FORM IS TRUE, CORRECT AND COMPLETE AND THAT I SIGNED THIS CLAIM FORM IN

_____

(Insert city/state/country) ON THE DATE LISTED BELOW.

_____

**(Signature of taxpayer whose tax identification number is written above)**

_____

**(Date)**

## REMINDER CHECKLIST

1.  Please carefully review the *Notice* and *Claim Form* that explains the settlement and distribution/rollover options, if you are entitled to receive a settlement payment.

2.  Provide all of the requested information and complete, sign and date the Claim Form in the spaces above.

3.  DO NOT SEND ANY ADDITIONAL DOCUMENTS. If additional information is needed to process your Claim Form, you will be contacted.

4.  If you change your address after sending in your Claim Form, please send your new address to the address below.

5.  Keep a copy of all of the pages of your Claim Form, including page 1 with the address label, for your records.

6.  **YOU MUST MAIL YOUR COMPLETED CLAIM FORM BY U.S. MAIL POSTMARKED NO LATER THAN FEBRUARY 21, 2012 TO THE FOLLOWING ADDRESS:**

    > **Alderfer v Clemens Markets, Inc. Retirement Plan, et al.**
    > **P.O. Box 58994**
    > **Philadelphia, PA 19102-8994**

7.  **TIMING OF PAYMENTS TO ELIGIBLE CLASS MEMBERS:** Please note that settlement payments are subject to the Settlement Agreement receiving final court approval. If the Settlement Agreement is approved and if you are entitled to a settlement payment under the terms of the settlement, *such payments will be distributed no earlier than May 16, 2012 due to the need to process and verify information for all Class Members who are entitled to a payment and to complete calculations of the amount of each payment.* Payments may be further delayed if any appeals are filed in connection with the federal district court's approval of the settlement.

8.  Information about the status of the approval of the settlement, the settlement administration and claim processing is available on the lawsuit website, www.clemens.hrsclaims.com.

9.  If you want to get confirmation that your Claim Form has been received, send your Claim Form by a postal method that provides a confirmation of receipt.

# EXHIBIT 2

**Alderfer v Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003, et al.**
**Estimated Claimant Per Share Recovery**
**As of March 14, 2012**

| | | Units | 2.61695 Conversion of Units to Shares |
|---|---|---|---|
| Number of Claims Matched to Class Listing with Units | 258 | 29,362.821 | 76,841.034 |
| Add:  1 Claim On list with a Closing Value but no Units Listed | 1 [2] | 66.154 | 173.122 |
| Potential Claims to be Paid | 259 | 29,428.975 | 77,014.156 |
| | | | |
| Claims  Currently not to be paid | | | |
|     4 Claims Not on Mail List | 4 | 0.000 | 0.000 [1] |
|     4 Claims with No Holdings | 4 | 0.000 | 0.000 [1] |
| Total Number of Claims Received, Units and Shares | 267 | 29,428.975 | 77,014.156 |

Estimated Net Settlement Fund:

| | | | |
|---|---|---|---|
| Gross Settlement Fund | | | $   642,500.00 |

Less: Estimated Expenses to be Paid

| | | | |
|---|---|---|---|
| Counsel Fees (30%) | $   192,750.00 | | |
| Counsel Expenses | 6,655.00 | | |
|    Total Counsel Fees and Expenses | | $   199,405.00 | |
| | | | |
| Gerald Alderfer - Retainer Reimbursement Fee | $     7,500.00 | | |
|           - Incentive Award | 5,000.00 | | |
| | | 12,500.00 | |
| | | | |
| Independent Fiduciary Contribution | | 5,000.00 | |
| | | | |
| Claims Administrator Fees and Expenses: | | | |
|    Fees and Expenses Incurred to Date | $    11,032.81 | | |
|    Fees and Expenses through Distribution and Post-Distribution Services | 8,967.19 | | |
|     Total Estimated Claims Administrator Fees and Expenses | | 20,000.00 | |
|       Estimated Total Expenses | | | (236,905.00) |
| | | | |
| Net Settlement Fund Available for Claimant Distributions | | | $   405,595.00 |

| | | | | |
|---|---|---|---|---|
| Net Settlement Fund Available for Claimant Distributions | = | $  405,595.00 | = | **$5.26649934 Estimated Per Share Recovery** |
| Total Number of Estimated Shares of Claimants | | 77,014.156 | | |

Proof of Allocation:
| | | | |
|---|---|---|---|
|   Shares | | 77,014.156 | |
|   x Per Share Rate | x | $5.26649934 | |
|   Net Settlement Funds to Distribute. | | $   405,595.00 | |

Note 1:  Adjustments to the Units, Shares and Per Share Recovery may be
        made if confirmation is received that the 4 claimants with no values
        or the 4 claimants not matched to the list of Class Members  are
        determined to be valid payable claims.

Note 2: Units determined by dividing Total Value by Average Unit Value

Prepared by EJS of Heffler, Radetich & Saitta LLP

# EXHIBIT 3



**Financial Advisors, LLC**

A registered investment advisor

November 3, 2011

**REVIEW of the "Stipulation of Settlement" for: Clemens Markets, Inc.
Retirement Savings and Profit Sharing Plan**

I, Richard S. Waldron, an employee of Sterling Financial Advisors, LLC, of Wyomissing, PA, have been retained by the administrator of the Clemens Markets Inc. Retirement Savings and Profit Sharing Plan, "The Plan" as an independent fiduciary. I have been retained to review and either approve or reject the proposed settlement in the action captioned, "Alderfer versus Clemens Markets Inc. Retirement Savings Plan"; "Stipulation of Settlement". As an Independent Fiduciary, I am: independent, unrelated to Clemens Markets Inc., the Plan, its Trustees, the Plaintiff and any other party to the subject settlement. Further, I am a fiduciary appointed to act solely on the behalf of the Plan and its participants.

I have been provided information on the Plan and the Settlement as of <u>October 5, 2011</u> from the office of Barak Bassman and his firm Pepper Hamilton et.al.(Please see attached "A".) That information was in four binders that includes the documentation from: Vanguard Fiduciary Trust; The "Pleadings Bible"; and two volumes of "Document Productions". Included was the fully executed class settlement agreement signed by both parties.(Attached "B".) Also included was the "Plan of Allocation" of the settlement fund with an explanation of the expenses and the approximate amount to each class member.(Attached "C".)



1330 Broadcasting Road

P.O. Box 6321

Wyomissing, PA 19610

phone: (610) 376-9561

fax: (610) 898-8159

The records for the Plan go back over six years and were available to me.

Two major questions will be answered:

I.      Does the settlement fall within Class Exemption 2003-39 so as to enable the
        Plan and the fiduciaries to accept the proposed settlement?

II.     Does the settlement constitute a prohibited transaction under Section 406(a)
        of ERISA?

November 3, 2011
Page Two

The case has been certified as a class action by the court.  Six conditions must be met:

1-   Is the settlement no less favorable to the Plan than comparable arm's length terms and conditions that would have been agreed to by unrelated parties under similar circumstances?
2-   Is the settlement reasonable as to the likelihood of full recovery by the Plan and its participants?
3-   Does the settlement consider the further costs and risks of litigation? (i.e. Is it saving the Plan money?)
4-   Is the settlement designed to benefit a party in interest?
5-   Do the fiduciaries of the Plan acknowledge their fiduciary status?
6-   Do the proceeds of the settlement benefit employers, fiduciaries, or other parties in interest with respect to the Plan?

First, the terms of the settlement have been specifically described in a written agreement.  The valuation of the Clemens Stock Fund has also been valued along with the approximate gross and net settlement to the Plan and the participants.

The Trustees of the Plan have acknowledged their fiduciary status to the Plan.  The named Trustees are NOT part of the Settlement Class and will not benefit from the "Plan of Allocation."

The settlement has been certified by the court as a class action; no finding of genuine controversy is required.

Only cash will be received in the settlement, as outlined in the "Plan of Allocation."

The **approximate** gross Settlement, as outlined in the "Plan of Allocation", revalues the units and shares of the Clemens Stock Fund to a <u>premium of 35%</u> over the last valuation provided by an independent certified public accounting firm (Attached "D"); from $19.61/share to $26.43.  The **approximate** net valuation, after fees and expenses, comes in at a <u>premium of 22%</u> over the last approved valuation.  In essence, the valuation of the shares in the Clemens Stock Fund returns to the **approximate valuation** of the shares in November 2009, prior to the devaluation of shares as a result of market conditions.  In this case the Settlement is very reasonable and fair and would constitute full recovery by the Plan and the participants. (Attached "E".)

November 3, 2011
Page Three

Section 406(a) of ERISA prohibits various types of transactions between the Plan and persons who are parties in interest with respect to the Plan.  In this case, the <u>Settlement does not constitute a prohibited transaction.</u>  The settlement does not benefit a party in interest.  Further, the Trustees are excluded from the Settlement Class, even though they also hold shares of the Clemens Stock Fund in their individual participant accounts.

The Settlement also considers the cost, to the Plan, of further litigation in time and money.

In conclusion, as Independent Fiduciary, I approve and authorize the Settlement on behalf of the Plan.  It meets all the criteria for Prohibited Transaction Exemption 2003-39.  Further, the Settlement would not constitute a prohibited transaction under ERISA 406(a).

Submitted:  November 3, 2011

By: _____

Richard S. Waldron, Independent Fiduciary



"C"

Rec'd
10-5-20 11        23766-001

## PLAN OF ALLOCATION

This Plan of Allocation shows how the Settlement Fund of $642,500.00 will be distributed if the Court approves the fees and expenses and incentive award as proposed by Gerald Alderfer, the class representative:

| | | |
|---|---|---|
| Settlement Fund | | $642,500.00 |
| Proposed Attorneys' Fees (30%) | | 192,750.00 |
| | | $449,750.00 |
| | | |
| Reimbursement of Costs | | |
| HRMML (See Exhibit "A") | $1,587.82 | |
| Bowen & Burns (See Exhibit "B") | 532.06 | |
| | $2,119.88 | |
| | | |
| | | $447,630.12 |
| | | |
| Proposed Incentive Award | $ 5,000.00 | |
| Reimbursement of Retainer Paid | | |
| by Gerald A. Alderfer | 7,500.00 | |
| | $12,500.00 | |
| | | $435,130.12 |
| | | |
| Payment Toward Fee of Independent Fiduciary | | 5,000.00 |
| | | $430,130.12 |
| | | |
| Estimated Costs of Administration | | |
| (Printing and mailing notices, tabulating responses, | | |
| preparation of tax returns, withholding taxes, | | |
| accounting, distributing settlement checks.) | | |
| (See Exhibit "C") | | 20,000.00 |
| | | |
| Balance Available for Distribution to Class Members | | $410,130.12 |

If the Court approves this Plan of Allocation, and if every eligible class member submits a valid claim, then for each share of CMI stock that you owned since September 1, 2006, you will receive $4.36 per share after deducting attorneys fees, costs, incentive award, refund of retainer to class representative, and cost toward the independent fiduciary.

{00820589;v1}

In order to determine the number of shares that you owned as of the date of termination of the Plan (9/30/2010), multiply the number of units of <u>Clemens Stock Fund</u> that you held on that date times <u>2.61695</u> (the conversion factor).  Then, multiply that number of shares by $4.36 to determine your approximate recovery in this case.

For any class member who received a distribution before the Plan termination date, please contact (<u>Notice Administrator</u>) for the conversion factor to use to determine your approximate recovery.

6.82
4.36
-------
2.46 = 36% reduction
         30% lawyers fee



"C"

Rec'd
10-5-2011

23766-001

## PLAN OF ALLOCATION

This Plan of Allocation shows how the Settlement Fund of $642,500.00 will be distributed if the Court approves the fees and expenses and incentive award as proposed by Gerald Alderfer, the class representative:

| | | |
|---|---|---|
| Settlement Fund | | $642,500.00 |
| Proposed Attorneys' Fees (30%) | | 192,750.00 |
| | | $449,750.00 |
| Reimbursement of Costs | | |
|     HRMML (See Exhibit "A") | $1,587.82 | |
|     Bowen & Burns (See Exhibit "B") | 532.06 | |
| | $2,119.88 | |
| | | $447,630.12 |
| Proposed Incentive Award | $ 5,000.00 | |
| Reimbursement of Retainer Paid | | |
|   by Gerald A. Alderfer | 7,500.00 | |
| | $12,500.00 | |
| | | $435,130.12 |
| Payment Toward Fee of Independent Fiduciary | | 5,000.00 |
| | | $430,130.12 |
| Estimated Costs of Administration | | |
|     (Printing and mailing notices, tabulating responses, | | |
|     preparation of tax returns, withholding taxes, | | |
|     accounting, distributing settlement checks.) | | |
|     (See Exhibit "C") | | 20,000.00 |
| Balance Available for Distribution to Class Members | | $410,130.12 |

If the Court approves this Plan of Allocation, and if every eligible class member submits a valid claim, then for each share of CMI stock that you owned since September 1, 2006, you will receive $4.36 per share after deducting attorneys fees, costs, incentive award, refund of retainer to class representative, and cost toward the independent fiduciary.

{00820589;v1}

In order to determine the number of shares that you owned as of the date of termination of the Plan (9/30/2010), multiply the number of units of <u>Clemens Stock Fund</u> that you held on that date times <u>2.61695</u> (the conversion factor).  Then, multiply that number of shares by $4.36 to determine your approximate recovery in this case.

For any class member who received a distribution before the Plan termination date, please contact (<u>Notice Administrator</u>) for the conversion factor to use to determine your approximate recovery.

6.82
4.36
─────
2.46 = 36% reduction
        30% lawyers fee

**Pepper Hamilton LLP**
_____
Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

"A"

Joseph H. DuBray
direct dial: (215) 981-4093
direct fax: (215) 689-4654
dubrayj@pepperlaw.com

September 2, 2011

**VIA FEDERAL EXPRESS**

Richard S. Waldron
Sterling Financial Advisors, LLC
1330 Broadcasting Road
Wyomissing, PA  19610

Re:   **Alderfer v. Clemens Markets, Inc.**
      **Retirement Savings & Profit Sharing Plan 003, et al.**

Dear Mr. Waldron:

Per the request of Barak Bassman, enclosed please find the following materials associated with the above-referenced matter:

- Binder of all Court filings (One Volume).

- Binders of documents produced by Defendants, bates-labeled DEF000001 – DEF001903 (Two Volumes) and CD of same files in electronic form.

- Binder of Excel spreadsheets generated by Vanguard, including participant month-end balance reports for the plan from May 2006 through November 2010 (One Volume) and CD of same files in electronic form.

- Department of Labor regulations related to independent fiduciary review (attached to this letter).

If you have any questions, please do not hesitate to contact me.  Thank you.

Pepper Hamilton LLP
Attorneys at Law

Sincerely,

Joseph H. DuBray
Senior Litigation Paralegal

JHD

Enclosures

cc:     Barak A. Bassman, Esq. (*w/out encl.*)



# Clemens Markets, Inc.

Kulpsville, Pennsylvania

**Business Valuation**
as of
**September 30, 2010**

Report Dated: November 16, 2010

DEF001545

# Reinsel Kuntz Lesher LLP

*Certified Public Accountants and Consultants*

1330 Broadcasting Road
P.O. Box 7008
Wyomissing, PA 19610-6003
Phone 610.376.1595
Fax 610.376.7340
www.rklcpa.com
Reading • Lancaster • Harrisburg

November 16, 2010

Board of Directors of Clemens Markets, Inc.
c/o William R. Wanger, Esquire
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001

To the Board of Directors of Clemens Markets, Inc.:

At your request Reinsel Kuntz Lesher LLP was retained to prepare a valuation engagement, conclusion of value and summary report ("report") to assist you in the determination of the fair market value of 100% of the outstanding common stock of Clemens Markets, Inc. ("Clemens" or the "Company") as of September 30, 2010 on a non-marketable basis in connection with the termination of the Clemens Markets, Inc. Profit Sharing and Retirement Savings Plan. A non marketable interest has no readily accessible market and is thus non-marketable. The value conclusion is considered as a cash or cash equivalent value. The valuation date is September 30, 2010. This valuation and report are to be used only as of this date and are not valid as of any other date.

We have performed a valuation engagement and present our report in conformity with the *Statement of Standards for Valuation Services No. 1* (SSVS) of the American Institute of Certified Public Accountants. SSVS defines a valuation engagement as "an engagement to estimate value in which a valuation analyst determines an estimate of the value of a subject interest by performing appropriate procedures, as outlined in the AICPA Statement on Standards for Valuation Services, and is free to apply the valuation approaches and methods he or she deems appropriate in the circumstances. The valuation analyst expresses the results of the valuation engagement as a conclusion of value, which may be either a single amount or a range."

SSVS addresses a summary report as follows: "The *summary report* is structured to provide an abridged version of the information that would be provided in a detailed report, and therefore, need not contain the same level of detail as a detailed report." A summary report has certain minimum requirements as presented in paragraphs 71-72 of SSVS.

DEF001546

This valuation was performed in connection with the termination of the Clemens Markets, Inc. Profit Sharing and Retirement Savings Plan, and the resulting estimate of value should not be used for any other purpose or by any other party, without our express written consent.

Our analysis is also in conformance with various revenue rulings, including Revenue Ruling 59-60, which outline the approaches, methods and factors to be considered in valuing shares of capital stock in closely held corporations for federal tax purposes. Revenue Ruling 65-192 extended the concepts in Revenue Ruling 59-60 to income and other tax purposes as well as to business interests of any type.

The standard of value is fair market value defined in Section 25.2512-1 of the U.S. Treasury regulations as: "the price at which the property would change hands between a willing buyer and a willing seller neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Revenue Ruling 59-60 defines the willing buyer and seller as hypothetical as follows: "Court decisions frequently state in addition that the hypothetical buyer and seller are assumed to be able, as well as willing, to trade and to be well informed about the property and concerning the market for such property." Furthermore, fair market value assumes that the price is transacted in cash or cash equivalents.

The premise of value is liquidation value. We assumed an orderly liquidation which is defined in *The International Glossary of Business Valuation Terms* as "Liquidation value at which the asset or assets are sold over a reasonable period of time to maximize proceeds received."

In our conclusion of value, we considered the following relevant factors, which are specified in Revenue Ruling 59-60:

- The history and nature of the Company;
- The economic outlook of the United States and that of the specific industry in particular;
- The book value of the subject Company's stock and the financial condition of the business;
- The earning capacity of the Company;
- The dividend-paying capacity of the Company;
- Whether or not the Company has goodwill or other intangible value;
- Sales of the stock and size of the block of stock to be valued; and
- The market price of publicly traded stocks or corporations engaged in similar industries or lines of business.

Our analysis included, but was not limited to, the above-mentioned factors.

ii

Fresh Thinking. Solid Solutions.

DEF001547

iii

## Scope of Work

To gain an understanding of the operations of Clemens we reviewed Company financial information and operational data as detailed in Appendix A and interviewed Company management. To understand the environment in which the Company operates, we researched the status of and trends in the commercial real estate industry. We also studied economic conditions as of the valuation date and their impact on the Company and the industry. To understand the Company's financial condition, we analyzed its financial statements.

We considered all valuation approaches and methods and applied the most appropriate methods from the income, asset and market approaches to value to derive an opinion of value of the subject equity interest (non-marketable, non-controlling interest). Our conclusion of value reflects these findings, our judgment and knowledge of the marketplace, and our expertise in valuation. Our valuation is set out in the attached report, which contains the following sections:

I. History & Nature of the Business
II. Economic & Industry Outlook
III. Financial Statement Analysis
IV. Approaches to Value
V. Valuation Methods Selected
VI. Discount Studies & Applications
VII. Conclusion of Value
VIII. Assumptions, Limiting Conditions & Valuation Representation/Certification

In performing our work, we were provided with and/or relied upon various sources of information, including (but not limited to):

- U.S. Corporation Income Tax Returns (Form 1120) for the years ended September 29, 2008, September 27, 2009 and September 30, 2010;
- Information regarding the management and shareholders of Clemens Markets, Inc.;
- Information regarding the Company's history and current operations;
- Data from Ibbotson Associates, *Stocks, Bonds, Bills, and Inflation Yearbook 2009, Valuation Edition;*
- Federal Reserve statistical releases;
- Current and future economic conditions as forecast by various sources, listed in the Appendix; and
- Miscellaneous other information.

Fresh Thinking. Solid Solutions.

The procedures employed in valuing the subject interest in the Company included such steps as we considered necessary, including (but not limited to):

- An analysis of Clemens' financial statements;
- An analysis of management's expectations and other information supplied by management;
- Discussions with management;
- An analysis of the commercial real estate industry;
- An analysis of the general economic environment as of the valuation date, including investors' equity and debt-return expectations;
- An analysis of applicable discounts, including the discount for lack of marketability; and
- An analysis of other pertinent facts and data resulting in our conclusion of value.

There were no restrictions or limitations in the scope of our work or data available for analysis. Reinsel Kuntz Lesher LLP staff, under the direct supervision of the lead appraiser on this engagement, assisted in performing research, populating models with data, and providing other general assistance.

Based on our analysis as described in this valuation report, and the facts and circumstances as of the valuation date, **the estimate of value of 100% of the outstanding common stock of Clemens Markets, Inc. as of September 30, 2010, on a non-marketable, basis was $ 13,906,083 or $ 19.61 per share.** This conclusion is subject to the Statement of Assumptions and Limiting Conditions and the Valuation Analyst's Representation/Certification found in Section VIII of this report. We have no obligation to update this report or our conclusion of value for information that comes to our attention after the date of this report.

Distribution of this letter and report and associated results, which are to be distributed only in their entirety, is intended and restricted to you, your accountants and attorneys, solely in connection with the termination of the Clemens Markets, Inc. Profit Sharing and Retirement Savings Plan and is valid only as of September 30, 2010. This letter and accompanying report are not to be used, circulated, quoted or otherwise referred to in whole or in part for any other purpose, or to any other party for any purpose, without our express written consent.

iv

Fresh Thinking. Solid Solutions.

DEF001549

v

The approaches and methodologies used in our work did not comprise an examination or any attest service in accordance with generally accepted accounting principles, the objective of which is an expression of an opinion regarding the fair presentation of financial statements or other financial information, whether historical or prospective, presented in accordance with generally accepted accounting principles or auditing standards. We express no opinion and accept no responsibility for the accuracy and completeness of the financial information (audited, reviewed, compiled, internal, prospective or tax returns), or other data provided to us by others, and we have not verified such information unless specifically stated in this report. We assume that the financial and other information provided to us is accurate and complete, and we have relied upon this information in performing our valuation.

We appreciate this opportunity to be of service to you. If you have any questions regarding our report or require any additional information pertaining to the valuation, please do not hesitate to contact us.

Sincerely yours,

REINSEL KUNTZ LESHER LLP

Paula K. Barrett

Paula K. Barrett, CPA/ABV, CVA

Fresh Thinking. Solid Solutions.

DEF001550

-vi-

## Executive Summary

**Purpose of Valuation:** To assist you in the determination of 100% of the outstanding common stock of Clemens Markets, Inc. as of September 30, 2010 on a non-marketable basis.

**Standard of Value:** Fair market value.

**Premise of Value:** Orderly liquidation.

**Conclusion:** Based on the assumptions and limiting conditions as described in this report, as well as the facts and circumstances as of the valuation date, we conclude that the fair market value of 100% of the outstanding common stock of Clemens Markets, Inc. as of September 30, 2010 on a non-marketable basis was **$ 13,906,083 or $ 19.61 per share.**

DEF001551

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| Transmittal Letter | | i |
| Executive Summary | | vi |
| I. | History & Nature of the Company | 1 |
| II. | Economic & Industry Factors Affecting Clemens Markets, Inc. | 4 |
| III. | Financial Statement Analysis | 7 |
| IV. | Approaches to Value | 9 |
| V. | Valuation Methods Selected | 11 |
| VI. | Discount Application | 14 |
| VII. | Conclusion of Value | 15 |
| VIII. | Assumptions, Limiting Conditions & Valuation Representation/Certification | 16 |

**Schedules**

| | | |
|---|---|---|
| 1 | Consolidated Historic Balance Sheets | 21 |
| 2 | Consolidated Historic Income Statements | 22 |
| 3 | Consolidated Adjusted Balance Sheets | 23 |
| 4 | Appraised Value Land & Building | 24 |
| 5 | Calculation of Transaction & Other Costs - Sale of Land & Building | 25 |
| 6 | Conclusion of Value | 26 |

**Appendices**

| | |
|---|---|
| Shareholders as of September 1, 2010 | A |
| Summary of Information and Data Sources | B |
| Valuator's Professional Qualifications | C |
| Summary Appraisal Report – 1555 Bustard Road, Unit 3 | D |
| Summary Appraisal Report – 1555 Bustard Road, Unit 2 | E |

DEF001552

Clemens Markets, Inc.
Summary Valuation Report

## Section I
## History & Nature of the Company

### Overview

Clemens Markets, Inc. operated a chain of family-owned supermarkets in the Philadelphia, Pennsylvania area for over 60 years. In 2006, the Company sold its 22 stores. Clemens was originally founded in 1939 by John C. Clemens and had been controlled by members of the Clemens family since its inception. Clemens' is managed by a Board of Directors led by its CEO, Jack Clemens. At the valuation date, Clemens' operated solely as an asset-holding company. Its principal assets were as follows:

- 100% ownership interest in Clemens-Del, Inc.
- 100% ownership interest in CMKBC, Inc.;
- 52% limited partnership ownership in Clemtree KVL Associates ("KVL"); and
- 45% limited partnership ownership in Clemtree KVB-1 Associates ("KVB").

CMKBC, Inc. held a 2% general partnership interest and a 46% limited partnership interest in KVL and a 2% general partnership interest and a 53% limited partnership interest KVB.

KVB owned a 53,384 square feet, multi-story office building in Towamencin Township, Montgomery County, Pennsylvania. The property is partially tenant-occupied (12,033 sf) and partially vacant (41,351 sf). The majority of the vacant space was occupied by Clemens until 2007. At the valuation date, the following leases were in place:

| Date | Square Feet | Rent/ Square Feet | Expiration Date | Other |
|---|---|---|---|---|
| 5.1.2010 | 5,812 sf | $ 15.88 | 05.11.2013 | Rent increases to $ 18.20/sf Year 2<br>Rent increases to $ 19.20/sf Year 3 |
| 9.1.2010 | 2,187 sf | $ 16.40 | 12.31.2015 | Rent increases to $ 21.00/sf Year 2<br>Rent increases to $ 21.50/sf Year 3<br>Rent increases to $ 22.00/sf Year 4<br>Rent increases to $ 22.50/sf Year 5<br>Rent increases to $ 23.50/sf Year 6 |
| Information Not Available | 4,034 sf | $ 21.83 | Information Not Available | Information Not Available |

Reinsel Kuntz Lesher LLP

Page 1

DEF001553

KVL owned 218,000 square feet of vacant land adjacent to the office building in Towamencin Township, Montgomery County, Pennsylvania.

Management has made the decision to terminate the Clemens Markets, Inc. Profit Sharing and Retirement Savings Plan as of September 30, 2010.

## Ownership

Clemens is organized as a C-corporation. At the valuation date, Clemens had 708,986.72 common shares outstanding. Stock ownership information at the valuation date is presented as Appendix A.

## Shareholders' Agreement

The shareholders of Clemens are subject to an Amended and Restated Stockholders' Agreement Re: Common Stock of Clemens Markets, Inc. (the "Agreement") dated July 26, 1990 that sets forth the rights and responsibilities of the shareholders. A summary of key provisions of the Agreement follows.

Section 1 of the Agreement indicates "Except as otherwise provided in this Agreement, [the Shareholders] agree that none of them shall, during his or her lifetime, sell, assign, give, donate, transfer, encumber or otherwise dispose of any portion or all of his, her or its Stock, now owned or hereafter acquired."

Section 2 allows certain shareholders (Abram Clemens, Jack Clemens and Matilda Clemens) to "sell, assign, give, donate, transfer, encumber or otherwise dispose of any portion or all of his or her Stock, either during his or her lifetime or by will, provided that the recipient(s) or beneficiary(ies) of the Stock shall be the spouse, child, children, and/or a trust for the sole benefit of a spouse, child or children of such party. In such case, the transferee(s) of the Stock shall receive and hold the Stock under the terms and conditions of this Agreement, as if the transferee(s) was(were) an original party(ies) hereto, and there shall be no further dispositions of such stock, except in accordance with the terms and conditions of this Agreement."

DEF001554

**Clemens Markets, Inc.**
**Summary Valuation Report**

Section 6 discusses the determination of the purchase price for transfers of stock and states "...it is agreed that for the purpose of determining the purchase price to be paid for the Stock of the Stockholders hereunder, the value of each share of the Stock as of the date of this Agreement shall be set forth on the form of Certificate of Valuation attached as Exhibit A.... No later than the 31st day of January each year, the Stockholders and the Corporation shall redetermine the value of each share of the Stock and shall indicate such redetermined value by execution of a new Certificate of Valuation on the form attached as Exhibit A hereto and made a part hereof. If the Stockholders are unable for any reason to agree on a new valuation...then, in that event, the value of each share of the Stock shall be the value of each share of the Stock (i) theretofore determined by the outside independent certified public accounting firm then retained by the Corporation and (ii) certified by the Board of Directors of the Corporation as such."

Reinsel Kuntz Lesher LLP

Page 3

DEF001555



Clemens Stock Information By Month from 1/31/2005-12/31/2010

| Date | No. of Shares | Value per share | Units | Conversion Factor |
|---|---|---|---|---|
| 1/31/2005 | 97,247 | $15.12 | 99,952.676 | 0.97293 |
| 2/28/2005 | 97,247 | $15.12 | 99,479.713 | 0.97756 |
| 3/31/2005 | 97,247 | $15.12 | 99,061.577 | 0.98168 |
| 4/30/2005 | 97,247 | $15.12 | 97,140.647 | 1.00109 |
| 5/31/2005 | 97,247 | $15.12 | 97,108.157 | 1.00143 |
| 6/30/2005 | 97,247 | $15.12 | 96,974.972 | 1.00281 |
| 7/31/2005 | 97,247 | $15.12 | 96,556.610 | 1.00715 |
| 8/31/2005 | 97,247 | $15.12 | 96,483.446 | 1.00791 |
| 9/30/2005 | 97,247 | $15.12 | 96,185.985 | 1.01103 |
| 10/31/2005 | 97,247 | $15.12 | 95,907.648 | 1.01397 |
| 11/30/2005 | 97,247 | $15.12 | 95,222.577 | 1.02126 |
| 12/31/2005 | 97,247 | $15.12 | 94,939.771 | 1.02430 |
| 1/31/2006 | 97,247 | $15.12 | 94,153.411 | 1.03286 |
| 2/28/2006 | 97,247 | $15.40 | 94,008.213 | 1.03445 |
| 3/31/2006 | 97,247 | $15.40 | 92,422.165 | 1.05220 |
| 4/30/2006 | 97,247 | $15.40 | 92,302.301 | 1.05357 |
| 5/31/2006 | 97,247 | $15.40 | 92,267.699 | 1.05397 |
| 6/30/2006 | 97,247 | $15.40 | 91,629.005 | 1.06131 |
| 7/31/2006 | 97,247 | $15.40 | 90,841.475 | 1.07051 |
| 8/31/2006 | 97,247 | $15.40 | 90,767.572 | 1.07138 |
| 9/30/2006 | 97,247 | $15.40 | 90,758.815 | 1.07149 |
| 10/31/2006 | 97,247 | $15.40 | 90,406.933 | 1.07566 |
| 11/30/2006 | 97,247 | $15.40 | 90,406.933 | 1.07566 |
| 12/31/2006 | 97,247 | $15.40 | 90,379.569 | 1.07598 |
| 1/31/2007 | 97,247 | $59.20 | 90,379.569 | 1.07598 |
| 2/28/2007 | 97,247 | $36.33 | 55,487.195 | 1.75260 |
| 3/31/2007 | 97,247 | $36.33 | 55,473.385 | 1.75304 |
| 4/30/2007 | 97,247 | $36.33 | 55,473.385 | 1.75304 |
| 5/31/2007 | 97,247 | $33.33 | 50,897.759 | 1.91063 |
| 6/30/2007 | 97,247 | $33.33 | 50,882.668 | 1.91120 |
| 7/31/2007 | 97,247 | $33.33 | 50,882.303 | 1.91121 |
| 8/31/2007 | 97,247 | $33.33 | 50,882.303 | 1.91121 |
| 9/30/2007 | 97,247 | $33.33 | 50,864.439 | 1.91189 |
| 10/31/2007 | 97,247 | $33.33 | 50,864.439 | 1.91189 |
| 11/30/2007 | 97,247 | $33.33 | 50,864.439 | 1.91189 |
| 12/31/2007 | 97,247 | $30.33 | 50,845.158 | 1.91261 |
| 1/31/2008 | 97,247 | $30.33 | 46,270.977 | 2.10168 |
| 2/29/2008 | 97,247 | $30.33 | 46,270.977 | 2.10168 |
| 3/31/2008 | 97,247 | $30.33 | 46,259.119 | 2.10222 |
| 4/30/2008 | 97,247 | $30.33 | 46,270.977 | 2.10168 |
| 5/31/2008 | 97,247 | $30.33 | 46,270.977 | 2.10168 |
| 6/30/2008 | 97,247 | $30.33 | 46,270.977 | 2.10168 |
| 7/31/2008 | 97,247 | $27.33 | 46,270.649 | 2.10170 |
| 8/31/2008 | 97,247 | $27.33 | 41,696.475 | 2.33226 |
| 9/30/2008 | 97,247 | $27.33 | 41,696.475 | 2.33226 |

| Date | No. of Shares | Value per share | Units | Conversion Factor |
|---|---|---|---|---|
| 10/31/2008 | 97,247 | $27.33 | 41,696.475 | 2.33226 |
| 11/30/2008 | 97,247 | $27.33 | 41,696.475 | 2.33226 |
| 12/31/2008 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 1/31/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 2/28/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 3/31/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 4/30/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 5/31/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 6/30/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 7/31/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 8/31/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 9/30/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 10/31/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 11/30/2009 | 97,247 | $24.33 | 37,122.300 | 2.61964 |
| 12/31/2009 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 1/31/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 2/28/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 3/31/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 4/30/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 5/31/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 6/30/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 7/31/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 8/31/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 9/30/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 10/31/2010 | 96,897 | $18.90 | 37,026.748 | 2.61695 |
| 11/30/2010 Stock left on 11/19/10 | | | | |
| 12/31/2010 | | | | |

# EXHIBIT 4

## ESCROW AGREEMENT

This Escrow Agreement dated February 1, 2012, is made among (a) Steven B. Barrett, Esquire of Hamburg, Rubin, Mullin, Maxwell & Lupin, PC and Michael J. Burns, Esquire of Bowen & Burns, ("Co-Lead Class Counsel"), (b) Barak A. Bassman, Esquire of Pepper Hamilton LLP, ("Defense Counsel"), and (c) Edward J. Sincavage on behalf of Heffler, Radetich & Saitta LLP as escrow agent ("Escrow Agent") and as the Administrator for Taxes ("Tax Administrator").

### Recitals

A.     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the settlement agreement, between representative plaintiff Gerald Alderfer ("Plaintiff"), and the proposed Class (as defined in the settlement agreement) and defendants Clemens, Jack Clemens, Robert Derstine, Robert M. Lavin, Gerald R. Spencer, and Douglas C. Moyer (collectively, "Defendants") dated October 5, 2011 (the "Settlement Agreement") attached hereto as Exhibit "A" and incorporated herein by this reference.

B.     This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement Agreement, will be paid to settle the class action captioned *Gerald Alderfer, et al. v Clemens Markets, Inc. Retirement Savings and Profit Sharing Plan 003, et al.*, (the "Class Action") Civil Action No. 10-4423, pending in the United States District Court for the District for the Eastern District of Pennsylvania (the "Court"), with respect to the Defendants.

C.     Plaintiffs and the Class on the one hand, and Defendants on the other hand, by and through their respective counsel, have entered into the Settlement Agreement wherein they have agreed, subject to the final approval of the Court, that the claims asserted by Plaintiffs and the Class against Defendants in this Class Action be dismissed with prejudice in exchange for, *inter alia*, payment by Defendants of $642,500 in cash (the "Settlement Amount").

D.     The Settlement Amount, together with interest, if any, accrued thereon, is to be deposited into an escrow account and used to satisfy payments to: a) the Settlement Class who submit valid and timely claim forms; b) payments for attorneys' fees, costs and expenses awarded; c) any incentive awards; d) payments for tax liabilities; and e) other costs pursuant to the terms of the Settlement Agreement.

### Agreement

1.     **Appointment of Escrow Agent**.  Heffler, Radetich and Saitta, LLP is hereby appointed as the Escrow Agent to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in Court orders, and to the extent consistent with such Court orders, this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.  Heffler, Radetich & Saitta LLP accepts such appointment.

2.     **The Escrow Account**.  The Escrow Agent shall establish and maintain an escrow account titled as Alderfer v Clemens Markets, Inc. Retirement Plan et al., (Account Number 01892870159 (hereinafter the "Escrow Account") in Huntington Bank.   Pursuant to the Settlement Agreement, the Defendants shall cause the Settlement Amount to be transferred for deposit into the Escrow Account within thirty (30) business days of the entry of a Court order preliminarily approving the Settlement. Escrow Agent shall receive the Settlement Amount from the Defendants and deposit such funds into the Escrow Account. The Settlement Amount and all interest accrued thereon, as defined in the Settlement Agreement, shall be referred to herein as the "Settlement Fund."  The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions set forth in this Escrow Agreement, in the Settlement Agreement, and in orders of the Court approving the disbursement of the Settlement Fund.

3.     **Investment of Settlement Fund**.    Escrow Agent may invest or deposit the Settlement Fund in an interest bearing account exclusively in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund, if such funds are generating a reasonable interest rate or in its absence, in a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.   The Escrow Agent may reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

4.     **Redemption**. The Escrow Agent, subject to the Escrow Agent's discretion, may sell or present for redemption any investment described in paragraph 3 above, whenever it is necessary to provide funds to meet any payment required under this Escrow Agreement.

5.     **Escrow Funds Subject to Jurisdiction of the Court**.  The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

6.     **Tax Treatment & Report**.  The Court has preliminarily approved the Settlement Agreement. The Tax Administrator shall comply with all requirements applicable to the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 1.468B-1 of the Treasury Regulations.   The Tax Administrator's obligations under this paragraph 6 include, without limitation, the following:

(a)     The Tax Administrator will prepare a "Regulation Section 1.468B-3 Statement" pursuant to Treasury Regulation Section 1.468B-3(e) on behalf of Defendants and provide copies to Defendants' Counsel for review and approval on a timely basis pursuant to the regulation.

(b)     The Tax Administrator will prepare and attach to the Settlement Fund's first income tax return a "Regulation Section 1.468B-1 Relation Back Election" pursuant to Treasury Regulation Section 1.468B-1(j) for execution by Defendants and the Tax

2

Administrator. The Tax Administrator will promptly forward a copy of the "Regulation Section 1.468B-1 Relation Back Election" to Defendants' Counsel within 30 days after the date hereof.

(c)     The Tax Administrator shall timely prepare and file on behalf of the Settlement Fund (i) federal tax returns in accordance with Section 1.468B-2 of the Treasury Regulations and the other provisions of the Internal Revenue Code of 1986, as amended (the "Code") and (ii) all necessary state, local and foreign tax returns, in accord with the terms of the Settlement Agreement.

(d)     Notwithstanding any effort, or failure, of the Tax Administrator and the parties to treat the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 1.468B-1 of the Treasury regulations effective as of the date hereof, any additional tax liability, interest or penalties incurred by Defendants resulting from income earned by the Settlement Fund (or the receipt of any payment under this paragraph 6(d)) shall be reimbursed from the Settlement Fund in the amount of such additional tax liability, interest or penalties upon Defendants' written request to the Tax Administrator. The Escrow Agent shall withdraw from the Settlement Fund (i) at the request of the Tax Administrator, monies to pay all the applicable federal, state, local, and foreign taxes which the Settlement Fund owes or is estimated to owe, as well as related expenses, and (ii) monies to pay any reimbursements to Defendants as described in this subparagraph (d).

7.     **Tax Payments of Settlement Fund**. All taxes with respect to the Settlement Fund, as described in the Settlement Agreement shall be treated as and considered to be a cost of administration of the Settlement Fund and the Escrow Agent shall timely pay such taxes out of the Settlement Fund, as appropriate, without prior order of the Court, but with approval by Co-Lead Class Counsel. Escrow Agent shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. The Settlement Fund shall indemnify and hold the Defendants harmless for any taxes that may be deemed to be payable by the Defendants by reason of the income earned on the Settlement Fund, and Escrow Agent shall establish such reserves as are necessary, in the Escrow Agent's reasonable discretion and in accord with the Escrow Agent's business judgment, to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendants pursuant to the terms of the Settlement Agreement, the Defendants shall provide Escrow Agent with a properly completed Form W-9. Co-Lead Class Counsel will promptly review and sign any such documents submitted to them for their execution by the Escrow Agent.

8.     **Disbursement Instructions**.

(a)     Before the Effective Date as defined in the Settlement Agreement, the Settlement Fund may be used only to pay for costs and expenses of notice to the Class, costs of the Tax Administrator, and expenses payable by the Escrow Agent on behalf of the Settlement Fund. After the Effective Date, such authorization may be granted by Co-Lead Class Counsel alone. Co-Lead Class Counsel is authorized, after obtaining approval of Defense Counsel, to

3

appoint, and shall appoint, a tax administrator (and any successors) for the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3). The parties have appointed Heffler, Radetich & Saitta LLP ("Heffler") as the Tax Administrator. Co-Lead Class Counsel shall be responsible for assuring that the Tax Administrator qualifies as an "administrator" of the Settlement Fund within the meaning of Treasury Regulation 1.468B-2(k)(3) and is performing its duties hereunder. Defendant shall have no responsibility for any fees of the Tax Administrator, nor shall Defendant have any other liability for or on account of the performance of the Tax Administrator.

(b) Other than those distributions contemplated herein to pay taxes and costs of notice and administration as described in paragraph 7 and subparagraph 8(a) hereof, distributions from the Settlement Fund may be made only after the Effective Date, as authorized by Court order. In addition upon the Effective Date, with due cause, Co-Lead Class Counsel shall have the authority, in accordance with paragraph 11(g), to appoint a Successor Escrow Agent and direct that all funds be transferred to the Successor Escrow Agent, which Successor Escrow Agent shall not be a Defendant or an affiliate of a Defendant . Upon the Effective Date, Defendants' interest in the Settlement Fund shall cease in its entirety.

(c) In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Escrow Agent may record such call backs. If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved to the satisfaction of the Escrow Agent, and such satisfaction shall only be subject to the Escrow Agent's discretion and business judgment. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent. Co-Lead Class Counsel and Defense Counsel agree to notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

9.    **Termination of Settlement**. In the event that the Settlement Agreement does not become effective or final or is terminated or rescinded for any reason, the Escrow Agent shall, subject only to expiration of any time deposit investment(s) , return the remaining balance of the Settlement Fund, together with any interest, if any earned thereon, less any Notice and

4

Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Co-Lead Class Counsel and the Defendants in accordance with instruction from the Defendant's Counsel.

10.     **Fees**.  For all services rendered by Heffler solely as the Tax Administrator pursuant to this Escrow Agreement, the Tax Administrator shall charge a flat annual fee of $3,500.00.  All fees and expenses of Tax Administrator shall be paid solely from the Settlement Fund.  All such fees and expenses shall constitute a direct charge against the Settlement Fund. The Tax Administrator may pay itself such fees from the Settlement Fund only after such fees have been approved for payment, in writing, by Co-Lead Class Counsel. Co-Lead Class Counsel shall approve or deny any such request for payment, in writing, within five business days of Counsel's receipt of such request. For all services rendered by the Escrow Agent pursuant to this Escrow Agreement, the Escrow Agent shall charge for services at its current hourly rates and shall furnish copies of all related invoices and other statements to Co-Lead Class Counsel. The Escrow Agent may pay itself such fees and expenses from the Settlement Fund only after such fees and expenses have been approved for payment, in writing, by Co-Lead Class Counsel. If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments issued to class members who submit a valid and timely claim form, a separate agreement and fee schedule will be entered into.  After the Effective Date, such approval notification need be provided only to Co-Lead Class Counsel.

11.     **Duties, Liabilities and Rights of Escrow Agent**.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

(a)     The Escrow Agent has been appointed in compliance with the Settlement Agreement and is subject to Orders of the Court.

(b)     The Escrow Agent is and shall be independent, provided that as parties hereto, Plaintiffs, the Class and Defendants shall be entitled to institute actions to compel or require performance by the Escrow Agent of its obligations hereunder.  The Escrow Agent hereby agrees to submit to jurisdiction and venue of the Court with respect to issues relating to the Settlement Fund for purposes of enforcement, clarification, or amendment of the provisions of this Escrow Agreement, and to comply with all directions given by the Court.

(c)     The Escrow Agent shall, upon request of any party, advise counsel for the parties of any maturities, conversion privileges, and other matters of a like manner concerning the investments held in accordance with this Escrow Agreement.

(d)     The Escrow Agent shall, upon request of any party, furnish to counsel for the parties statements of transactions, which statements shall be certified by the Escrow Agent.

(e)     The parties reserve the right to modify this Escrow Agreement upon written agreement of all parties other than the Escrow Agent, except any modification which shall affect the duties or responsibilities of the Escrow Agent may be made only upon written agreement of all parties including the Escrow Agent.

5

(f)     The Escrow Agent shall treat the fact of the settlement and Settlement Agreement referred to herein, as well as all facts or other information pertaining to the Settlement Agreement, as confidential and shall not disclose or use such information in any way other than as necessary to fulfill its role as Escrow Agent (or as Tax Administrator).

(g)     The appointment of the Escrow Agent under this Escrow Agreement may be revoked at any time, and the Escrow Agent shall thereby become discharged from the obligations hereby created subsequent to the date of discharge, by notice in writing given to the Escrow Agent not less than 30 days before such removal is to take effect.  Prior to the Effective Date, such notice of revocation or appointment must be given by undersigned counsel acting jointly; after the Effective Date, such notice may be given by Co-Lead Class Counsel alone. Upon approval of the Court, and subject to the arrangements being made for a replacement Escrow Agent as specified in the next sentence, the Escrow Agent may terminate this Escrow Agreement by notice in writing given to the undersigned counsel not less than 30 days before such termination is to take effect, and thereby become discharged from the obligations hereby created subsequent to the date of termination.  In the event that the Escrow Agent's appointment is revoked or the Escrow Agent terminates this Escrow Agreement, arrangements shall be made for a replacement Escrow Agent, who shall assume the Escrow Agent's duties hereunder as of the date and time that the replacement is to take effect.  Before the Effective Date, such arrangements shall (absent written agreement otherwise by all undersigned counsel); after the Effective Date, such arrangements may be made by Co-Lead Class Counsel alone.

(h)     Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Co-Lead Class Counsel or the Defense Counsel (listed in paragraph 14), as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to sign and represent Co-Lead Class Counsel or the Defense Counsel.

(i)     Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.

(j)     Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement, except for liability, damage or losses arising out of its negligence or misconduct as adjudicated by a court of competent jurisdiction.

(k)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved

6

of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically provided herein.

(l) Within 10 business days of Defendants' depositing the Settlement Funds with the Escrow Agent, and at the end of each calendar year quarter thereafter, the Escrow Agent shall provide documentation to Defendants' Counsel and Plaintiffs' Co-Lead Counsel showing that the Escrow Account has been established and is being maintained in the form specified, and the Settlement Funds invested as specified, in paragraph 3 above.

(m) If the Escrow Agent is uncertain as to its duties or rights under this Escrow Agreement, or receives instructions, claims or demands from a party to the Escrow Agreement or any third party, that in its opinion, conflict with the terms of this Escrow Agreement, it may refrain from taking action in connection with the Settlement Fund with respect to which such uncertainty or conflict exists, until it is able to obtain a resolution of the issue pursuant to this Section. The Escrow Agent shall notify Co-Lead Class Counsel and Defendants' Counsel of the duties or rights to which it is uncertain. During the period in which the issue remains unresolved, the Escrow Agent's sole obligation with respect to the portion of the Settlement Fund that is the subject of the dispute shall be to keep safely such funds and related books and records it holds under this Escrow Agreement; provided, that with respect to any portion of the Settlement Fund as to which there is no dispute, the Escrow Agent shall be bound by the terms and conditions of this Escrow Agreement.

(n) The Escrow Agent shall be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence. Provided, however, that this provision does not give the Escrow Agent any rights against the Defendants, who shall have no obligation or responsibility to the Escrow Agent.

12. **Non-Assignability by Escrow Agent**. Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed before the Effective Date without the written consent of Defense Counsel and Co-Lead Class Counsel. After the Effective Date, such assignment or assumption shall require only the written consent of Co-Lead Class Counsel.

13. **Resignation of Escrow Agent**. Escrow Agent may, in its sole discretion, resign and terminate its position by providing 120 days prior written notice to the parties to the Escrow Agreement herein. On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement. If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the

7

appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

      14.   **Notices**.  Copies of all notices and correspondence sent pursuant to this Escrow Agreement shall be served by mail and email upon all undersigned counsel, the Tax Administrator and the Escrow Agent.  After the Effective Date, such notices and correspondence need only be provided to Co-Lead Class Counsel.  Such Notice should be addressed as follows

    *If to Co-Lead Class Counsel*:

| | |
|---|---|
| Steven B. Barrett<br>Hamburg, Rubin, Mullin,<br>   Maxwell & Lupin, PC<br>375 Morris Road<br>Lansdale, PA 19446<br>(215) 661-0400<br>SBarrett@HRMML.com | Michael J. Burns<br>Bowen & Burns<br>530 Street Road<br>Southampton, PA 18966<br>(215) 322-9030<br>mjburnslaw@verizon.net |

    *If to Defense Counsel*:

Barak A. Bassman
Pepper Hamilton LLP
3000 Tow Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
bassman@pepperlaw.com

    *If to Escrow Agent or to the Tax Administrator*:

Edward J. Sincavage, Partner
Heffler, Radetich & Saitta LLP
Heffler Claims Administration
1515 Market Street, Suite 1700
Philadelphia, PA  19102
Office:  215-972-5048
E-mail:  esincavage@heffler.com

8

15.   **Patriot Act Warranties**.   Co-Lead Class Counsel hereby acknowledges receiving from the Defendants the representations and warranties, substantially similar in form and in substance to the following, concerning the Settlement Funds that the Defendants will deliver for deposit with the Escrow Agent:

(a)   The Defendants hereby acknowledge that they seek to comply with all applicable laws concerning money laundering and related activities.   In furtherance of those efforts, the Defendants hereby represent, warrant, and agree that, to the best of their knowledge:

(i)   none of the cash or property that they paid, will pay or will contribute to the Settlement Fund has been or shall be derived from, or related to, an activity that is deemed criminal under United States law; and

(ii)   no contribution or payment by them to the Escrow Account shall cause Escrow Agent to be in violation of the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986 or the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001.

(b)   The Defendants agree to promptly notify Escrow Agent if any of the foregoing representations cease to be true and accurate.   Each of the Defendants agrees to provide to Escrow Agent any additional information regarding itself or any insurers contributing to the Settlement Fund which is reasonably necessary or appropriate for the Escrow Agent to ensure its compliance with all applicable laws concerning money laundering and similar activities, subject to any confidentiality obligations (recognized or permitted by law) that may restrict or prohibit each Defendant from providing such information.   Escrow Agent agrees to keep any information provided by the Defendants pursuant to this paragraph confidential, and will not disclose such information to any other party except to the extent necessary or appropriate to ensure compliance with all applicable laws concerning money laundering and similar activities; provided, however, that Escrow Agent shall give notice to the Defendants as soon as practicable in the event it expects that such a disclosure will become necessary.

(c)   The Defendants agree that if at any time Escrow Agent determines that any of the foregoing representations are incorrect with respect to it, or if otherwise required by applicable law or regulation related to money laundering and similar activities, Escrow Agent may undertake whatever actions are reasonably appropriate to ensure compliance with applicable law or regulation.   In the event there is a breach of any of these warranties and representations, then the Escrow Agent must be held harmless and indemnified by Settlement Fund or otherwise.

16.   **Entire Agreement**.   This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.   Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.   To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

9

17.   **Governing Law**.  This Escrow Agreement shall be governed by the law of the State of Pennsylvania in all respects, without reference to choice-of-law principles.  The parties hereto agree that any action relating to this Escrow Agreement, including without limitation any action in the nature of interpleader or any proceeding the Escrow Agent may commence for the appointment of a successor escrow agent, shall be subject to the jurisdiction of this Court.  The parties hereto further submit to the jurisdiction of this Court in connection with any such proceedings for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

18.   **Termination of Escrow Account**.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

19.   **Miscellaneous Provisions**.

(a)   Counterparts.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b)   Further Cooperation.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c)   Non-Waiver.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

10

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


*HEFFLER, RADETICH & SAITTA, LLP, as Escrow Agent and Tax Administrator*


By: _____

      Edward J Sincavage, Partner
      Heffler, Radetich & Saitta, LLP
      Heffler Claims Administration
      1515 Market Street, Suite 1700
      Philadelphia, PA 19102
      Office: 215-972-5048

      Barak A. Bassman
      PEPPER HAMILTON
      3000 Two Logan Square
      18th & Arch Streets
      Philadelphia, PA 19103
      (215) 981-4000

      *Counsel for Defendants*


_____

      Steven B. Barrett
      HAMBURG, RUBIN, MULLIN,
        MAXWELL & LUPIN, P.C.
      375 Morris Road
      Lansdale, PA 19446
      (215) 661-0400


_____

      Michael J. Burns
      BOWENS & BURNS
      530 Street Road
      Southampton, PA 18966
      (215) 322-9030

      *Co-Lead Class Counsel*


#15572007 v1

11

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

*HEFFLER, RADETICH & SAITTA, LLP, as Escrow Agent and Tax Administrator*

By: *Edward J. Sincavage*
Edward J Sincavage, Partner
Heffler, Radetich & Saitta, LLP
Heffler Claims Administration
1515 Market Street, Suite 1700
Philadelphia, PA 19102
Office: 215-972-5048

Barak A. Bassman
PEPPER HAMILTON
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

*Counsel for Defendants*

Steven B. Barrett
HAMBURG, RUBIN, MULLIN,
    MAXWELL & LUPIN, P.C.
375 Morris Road
Lansdale, PA 19446
(215) 661-0400

Michael J. Burns
BOWENS & BURNS
530 Street Road
Southampton, PA 18966
(215) 322-9030

*Co-Lead Class Counsel*

#15572007 v1

11